Anna Reeves Olson, #6-3692
Park Street Law Office
242 So. Park Street
Casper, WY 82601
(307) 265-3843
(307) 235-0243 *facsimile*
aro@parkstreetlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, | ) |
| | ) Docket No. 19-CV-48-F |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN H. SCHNEIDER, JR.; | ) |
| MICHELLE R. SCHNEIDER; | ) |
| And MEDPORT, LLC, | ) |
| | ) |
| Defendants. | ) |

**JIMMIE G. BILES' MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS DEFENDANT JOHN H. SCHNEIDER'S COUNTERCLAIM**

Plaintiff, Jimmie G. Biles ("Dr. Biles"), by and through his counsel, Anna Reeves Olson of Park Street Law Office, and pursuant to F.R.C.P. 12(b)(6), move this Court for an order dismissing Defendant John H. Schneider's *Counterclaim* on the basis that he has failed to state a claim for relief "that is plausible on its face," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

INTRODUCTION

On March 8, 2019, Plaintiff, Jimmie G. Biles, M.D., filed his *Complaint, Request for Temporary Restraining Order and Preliminary Injunction and Demand for Jury Trial* ("Complaint") against, *inter alia,* Defendant John H. Schneider. *See generally* Doc. 1. The *Complaint* provides that on May 12, 2012, Defendant Schneider and Dr. Biles executed a

confidential Settlement Agreement that resolved the pending litigation between them, namely: *Biles v. Schneider,* No. 2:11-cv-00366-NDF and *Biles v. Fallon,* No. 2:11-cv-00294-NDF. *Id.* at ¶¶2, 29, 30, 31, 42-43. Dr. Biles also alleges that approximately seven years later, in early 2019, Defendant Schneider intentionally breached the Settlement Agreement by proceeding to post disparaging and defamatory material regarding Dr. Biles on Facebook and on a website entitled "Healthcare-Malpractice.com."[1] *Id.* at ¶¶33-34; 43-57. Dr. Biles seeks both general and specific damages for Defendant Schneider's conduct. *Id.* at ¶¶76-77.

On April 12, 2019, Defendant Schneider, proceeding *pro se,* answered the *Complaint* and filed a *Counterclaim* against Dr. Biles. *See generally* Doc. 21 (*Answer to Complaint and Counterclaims*). In his *Answer*, Defendant Schneider denied that the Settlement Agreement resolved the previous litigation and also denied that Dr. Biles had set forth the material terms of the Settlement Agreement. Doc. 21 at p. 4; ¶17. With regard to his *Counterclaim,* Defendant Schneider did not plead specific causes of action against Dr. Biles, but the following claims may be gleaned from his pleading:

COUNTERCLAIM 1: INVASION OF PRIVACY/INTRUSION UPON SECLUSION. Defendant Schneider claims that on some unknown date, Dr. Biles, through his attorneys, R. Daniel Fleck and M. Kristeen Hand, committed "electronic document intrusion and auditory surveillance of private property." Defendant Schneider believes that Dr. Biles should be held "civilly and criminally liable" therefore. Doc. 21 at p. 5; ¶2.

COUNTERCLAIM 2: BREACH OF CONTRACT. Defendant Schneider claims that on some date unknown, Dr. Biles breached the confidentiality provisions of the Settlement Agreement by discussing its terms with "Cody medical staff and his former employees and family members."

---

[1] Defendant Schneider, directly and by innuendo, admits in his Answer that he also disseminated this material in violation of the Contract to other physicians, within the bankruptcy courts, to the U.S. District Court, District of Montana, and to the United States Court of Appeals, Ninth Circuit. *See* Doc. 21, ¶¶12, 13 & 23 (Answer to Complaint and Counterclaims).

*Id.* at p. 6; ¶3.

        COUNTERCLAIM 3:    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED").

Defendant Schneider claims that on some unknown date, Dr. Biles "intentionally" inflicted emotional harm on Dr. Schneider by breaching the Settlement Agreement and presenting "distorted 'facts,' false claims and conclusions . . . to the media, civilian non-parties, legal and administrative panels." *Id.* at p. 6; ¶4.

Dr. Schneider also alleges that he is entitled to general and specific damages as a result of Dr. Biles' conduct. *Id.* at Counterclaim ¶¶7-8(a)-(i).

<u>STANDARD OF REVIEW</u>

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Legitimate, non-conclusory factual allegations, to satisfy the plausibility requirement, must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct that is alleged." *Id.* at 678.

"Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss; rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead, "a complaint must allege facts suggestive of [the prohibited] conduct." *Id.* at 588, n. 8.

Regardless of whether a plaintiff is represented or is appearing *pro se,* the plaintiff's complaint must allege specific facts sufficient to state a claim. When a *pro se* plaintiff does not

set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Twombly*, 550 U.S. at 569 (overruling *Conley v. Gibson*, 355 U.S. 41 (1967)).

ARGUMENT

> I. THE FACTUAL ALLEGATIONS IN DEFENDANT SCHNEIDER'S COUNTERCLAIM ARE INSUFFICIENT TO STATE CLAIMS FOR INVASION OF PRIVACY, BREACH OF CONTRACT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

As set forth above, the United States Supreme Court's *Iqbal* and *Twombly* decisions "not only [ ] weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also [ ] inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). Indeed, the *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 555 U.S. 591, n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Robbins,* 519 F.3d at 1248.

Here, liberally construing Defendant Schneider's *Counterclaim*, he alleges three causes of action: (1) Invasion of Privacy; (2) Breach of Contract; and (3) Intentional Infliction of Emotional Distress. *See* Doc. 21 at pp 5-6; ¶¶1-3. Yet, because Dr. Schneider's pleading is

entirely absent of any factual detail, it does not satisfy the *Iqbal* and *Twombly* mandates and must be dismissed.

1. INVASION OF PRIVACY/INTRUSION UPON SECLUSION

Wyoming has recently adopted the tort of Invasion of Privacy/Intrusion upon Seclusion as set forth in RESTATEMENT (SECOND) OF TORTS § 652A. The RESTATEMENT provides that one who invades the right of privacy of another is subject to liability if the right to privacy is invaded by, *inter alia,* unreasonable intrusion upon the seclusion of another, as stated in § 652B. *See Howard v. Aspen Way Enter., Inc.*, 406 P.3d 1271, 1274 (Wyo. 2017).

Section § 652B provides that "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability . . . if the intrusion would be highly offensive to a reasonable person." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 652B (1977)). A court determining the existence of "offensiveness" typically considers the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded. *See, e.g., Mallak v. Aitkin Cty.,* 9 F. Supp. 3d 1046, 1064 (D. Minn. 2014).

There is no liability unless the interference with the claimant's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. *Howard,* 406 P.3d at 1274-75 (citing § 652B cmt. d). A claim for intrusion upon seclusion is also not viable unless the claimant has an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Opperman v. Path, Inc.,* 87 F. Supp. 3d 1018, 1059 (N.D. Cal. 2014).

In this case, Defendant Schneider's Counterclaim for Invasion of Privacy fails to set forth any facts to state a claim for unreasonable intrusion, but merely alleges that Dr. Biles should be held liable "for methods of electronic document intrusion and auditory surveillance of private property . . . ." Doc. 21 at ¶2. There are also no allegations by Defendant Schneider as to what electronic documentation was obtained, how the documentation was obtained, or why the obtainment of that documentation would be offensive to a reasonable person -- let alone highly offensive. There is also no allegation that Defendant Schneider had any objectively reasonable expectation of privacy in the data that was purportedly obtained or whether the documentation was confidential. If the documentation is part of the public record, there is no invasion of privacy as a matter of law. *See* RESTATEMENT (SECOND) OF TORTS § 652B, cmt. c. ("[t]here is no liability for the examination of a public record . . . , or of documents that the plaintiff is required to keep and make available for public inspection.").

With regard to the alleged "auditory surveillance of private property," Defendant Schneider does not provide the location of the property, the means of the "auditory surveillance" or allege that he himself was actually surveilled, which is a relevant factor in analyzing intrusion upon seclusion claims. *See, e.g., Pacitti v. Durr*, 2008 WL 793875, at *26 (W.D. Pa. Mar. 24, 2008) (holding that no reasonable person would find the fact that defendant entered into plaintiff's condominium to speak with a third party highly offensive because plaintiff was not in the condominium at the time); *GTE Mobilnet of S. Texas Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 618 (Tex. App. 2001) (finding that "the mere fact that maintenance workers . . . look[ed] over into the adjoining yard is legally insufficient evidence of highly offensive conduct."). There is also no allegation that anyone actually listened or overheard any sounds or voices originating from Defendant Schneider's "private property" and/or whether this alleged surveillance would have been highly offensive to the reasonable person.

As Defendant Schneider's pleading fails to "nudge" his counterclaim "across the line from conceivable to plausible," it must be dismissed.

   2.   BREACH OF CONTRACT

Under Wyoming law, parties asserting claims for breach of contract must allege and prove that: (1) there was a binding contract; (2) the terms of the contract; (3) the opposing party breached one or more terms of the contract; and (4) the breach caused damages. *See, e.g., Schlinger v. McGhee*, 268 P.3d 264, 268 (Wyo. 2012) ("The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages.").

Defendant Schneider's breach of contract claim must also be dismissed because he has failed to adequately plead the claim. Defendant Schneider has failed to assert that there was a binding contract, what the relevant terms of the contract were, and any facts surrounding how or when Dr. Biles breached the contract. These factors are of particular importance because Defendant Schneider has himself denied the existence of a binding contract and that Dr. Biles had set forth the relevant provisions of the contract. *See* Doc. 21 at p.4; ¶17.

Instead, Defendant Schneider makes the conclusory statement that Dr. Biles is liable for breach of contract because he has had "discussions with Cody medical staff and his former employees and family members of details protected by the prior settlement confidentiality agreement." *Id.* at p. 5; ¶2. Defendant Schneider also does not provide a time frame of when the "discussions" took place, what was allegedly stated by Dr. Biles, and how Dr. Biles' purported statements violated the settlement agreement that he denies is valid. Defendant Schneider mentioned no specific time, place, or person in any of his allegations, as mandated by *Twombly*. 555 U.S. 591, n. 10. Standing alone, Defendant Schneider's conclusory statements have not

7

sufficiently plead any elements of a breach of contract claim and it must be dismissed. *See Ashcroft*, *supra,* 556 U.S. at 678 ("Labels and conclusions" do not suffice to state a claim).

    3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

With regard to Defendant Schneider's IIED claim, Wyoming has adopted the RESTATEMENT (SECOND) OF TORTS § 46, which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Kanzler v. Renner*, 937 P.2d 1337, 1341 (Wyo. 1997). To recover for intentional infliction of emotional distress, a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm. *Id.* Outrageous conduct is defined as conduct which goes "beyond all possible bounds of decency," and which is "regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing RESTATEMENT, *supra,* § 46 cmt. d).

It is not enough that the defendant acted with intent that is wrongful or even criminal, or that defendant intended to inflict emotional distress, or even that defendant's conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages. There must be more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities to constitute intentional infliction of emotional distress. The conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.*

To properly plead a claim for intentional infliction of emotional distress, a plaintiff must also allege that he suffered distress "'so severe that no reasonable person could be expected to

endure it' . . .". *Schuurman v. Shingleton*, 26 P.3d 227, 233 (Utah 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. J).

In this case, Defendant Schneider does not allege any facts sufficient to establish that Dr. Biles acted with the required "outrageous conduct" or that Dr. Schneider's purported emotional distress was severe. Rather, Defendant Schneider merely claims that Dr. Biles' breach of the Settlement Agreement and his presentation of "distorted 'facts'" to the media" and others, was designed to destroy Defendant Schneider's "livelihood and reputation." Defendant Schneider does not state when Dr. Biles purportedly breached the Settlement Agreement, what "distorted 'facts'" were presented to the media, what the media outlets did with the "distorted 'facts'" or how the conduct, if true, might be characterized as offensive. In the absence of such detail, Defendant Schneider's IIED claim must be dismissed.

> II. DEFENDANT SCHNEIDER'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COUNTERCLAIM, FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND MUST BE DISMISSED WITH PREJUDICE.

Assuming, *arguendo,* that Defendant Schneider has adequately pled his IIED claim pursuant to *Iqbal* and *Twombly,* his IIED claim must still be dismissed because it fails to state a claim upon which relief can be granted. In his Counterclaim, Defendant Schneider alleges that Dr. Biles' breach of the Settlement Agreement intentionally inflicted emotional harm on Defendant Schneider, *see* Doc. 21 at Counterclaim ¶4, but the general rule is that there is no recovery of damages for mental anguish stemming from breach of contract, unless the specific language and nature of the contract demonstrates that such emotional distress damages were contemplated at the time the contract was executed, *see Gregory & Swapp, PLLC v. Kranendonk,* 424 P.3d 897, 905 (Utah 2018) (citing RESTATEMENT (SECOND) OF CONTRACTS §353 (1981) ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional

disturbance was a particularly likely result.")).  Furthermore, breach of contract allegations generally do not meet the standard for "extreme and outrageous conduct." *See, e.g., Corley v. Watstein*, 2012 WL 1435248, at *11 (Conn. Super. Ct. Apr. 3, 2012) (defendants' alleged conduct, sounding in breach of contract, does not meet the standard for extreme and outrageous conduct).

Accordingly, as IIED claims cannot evolve from an alleged breach of contract unless the contract at issue demonstrates that such emotional distress damages were contemplated at the time the contract was executed, Defendant Schneider's IIED claim must be dismissed with prejudice.

## CONCLUSION

It is respectfully requested that Defendant Schneider's *Counterclaim* be dismissed as set forth above.

DATED this 1st day of May 2019.

/Anna Reeves Olson
Anna Reeves Olson, #6-3692
PARK STREET LAW OFFICE
242 So. Park Street
Casper, Wyoming 82601
(307) 265-3843
(307) 235-0243 *facsimile*

*Attorney for Plaintiff Biles*

## CERTIFICATE OF SERVICE

  I hereby certify that on this 1st day of May 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following addresses:

| | |
|---|---|
| The Spence Law Firm, LLC | Adam H Owens |
| R. Daniel Fleck | Gregory G Costanza |
| M. Kristeen Hand | GRANITE PEAK LAW LLC |
| 15 South Jackson | PO Box 635 |
| P.O. Box 548 | Bozeman, MT 59771 |
| Jackson, WY 83001 | 406/530-9119 |
| *fleck@spencelawyers.com* | *adam@granitepeaklaw.com* |
| *hand@spencelawyers.com* | *gregory@granitepeaklaw.com* |
| *Attorneys for Plaintiff* | *Attorneys for MedPort LLC* |

  And also certify this was sent via U.S. Mail to:

John H Schneider, Jr
Reg #64084298
METROPOLITAN CORRECTION CENTER
808 Union St
San Diego, CA 92101
   *PRO SE*

              /*Anna Reeves Olson*
              Anna Reeves Olson