Anna Reeves Olson, #6-3692
Park Street Law Office
242 South Park Street
Casper, WY 82601
(307) 265-3843
(307) 235-0243 *facsimile*
aro@parkstreetlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, | ) |
|          Plaintiff, | )   Docket No. 19-CV-48-F |
| v. | ) |
| JOHN H. SCHNEIDER, JR.; MICHELLE R. SCHNEIDER; And MEDPORT, LLC, | ) |
|          Defendants. | ) |

**JIMMIE G. BILES' REPLY IN SUPPORT OF HIS
MOTION TO DISMISS DEFENDANT JOHN H. SCHNEIDER'S
FIRST AMENDED COUNTERCLAIM**

Plaintiff, Jimmie G. Biles ("Dr. Biles"), by and through his counsel, Anna Reeves Olson of Park Street Law Office, replies to Mr. Schneider's *Response*, *see* Doc. 41, as follows:

INTRODUCTION

Instead of addressing Dr. Biles' *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) arguments, Mr. Schneider proceeds to launch personal attacks against Plaintiff's Counsel -- R. Daniel Fleck and M. Kristeen Hand -- referring to them as "Fleck and his cronies." Doc. 41 at 2-3. Mr. Schneider also proceeds to request a postponement of these proceedings until he is released from federal prison, but he fails to set

forth adequate grounds for the stay. Accordingly, as set forth below, Mr. Schneider's First Amended Counterclaim must be dismissed and his request for a stay should be denied.

ARGUMENT

I. THIS COURT MUST EXCLUDE THE STATEMENTS MADE BY MR. SCHNEIDER IN HIS *RESPONSE* BECAUSE TO CONSIDER THE STATEMENTS WOULD CONVERT DR. BILES' MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT.

A motion to dismiss challenging the legal sufficiency of the complaint is properly considered under Rule 12(b)(6) if the court analyzes only the complaint itself. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."). When a party presents matters outside of the pleadings for consideration, "the court must either exclude the material or treat the motion as one for summary judgment." *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). When a party submits materials outside of the pleadings in in opposition to a Rule 12(b)(6) motion, the court has broad discretion in determining whether to consider or exclude them. *See Dobson v. Anderson*, 319 F. App'x 698, 702 (10th Cir. 2008).

Here, the new allegations presented in Mr. Schneider's *Response* should not be considered by this Court because those allegations are beyond the scope of the relevant pleadings. Dr. Biles' *Motion to Dismiss* is singularly focused on the fact that Mr. Schneider's Amended Counterclaim falls short of the requirements mandated by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), among other civil rules of procedure. If the Court were to consider these new allegations, that would only serve to convert Dr. Biles' *Motion to Dismiss* into a motion for summary judgement and, as this Court has broad

discretion in determining whether to accept materials submitted outside of the pleadings, the Court should reject Mr. Schneider's baseless attacks.

The fact remains that even though Mr. Schneider was given the opportunity to amend his Counterclaim, his Amended Counterclaim fails to comply with federal law because he has failed to plead facts sufficient to maintain a breach of contract action. Indeed, Mr. Schneider makes no attempt to explain why his Amended Counterclaim complies with *Iqbal* and *Twombly*. It is likely that Mr. Schneider cannot plead a proper factual basis because no basis exists.[1]

II. IF THE COURT DOES CONSIDER MR. SCHNEIDER'S ADDITIONAL STATEMENTS, SUMMARY JUDGMENT MUST BE GRANTED TO DR. BILES.

One of Mr. Schneider's primary complaints regards an article entitled "Damning emails from Dr. Schneider Uncovered," which was drafted by CJ Baker, a reporter for the Powell Wyoming Tribune. *See* Doc. 41 at 2. Mr. Schneider alleges that Mr. Fleck and Ms. Hand breached the Settlement Agreement when they spoke with Mr. Baker after the Agreement was executed. *Id.* However, a cursory review of the article provides that Mr. Baker received the information for his article from a transcript of the April 26, 2012 hearing, which was released to the public shortly after May 11, 2012. *See Biles v. Schneider,* No. 2:11-cv-00366-NDF, Doc. 47 (Order Denying Motion to Seal Transcript).

Indeed, the article provides "The emails, as recounted at *the April 26 hearing* in a transcript purchased by the Tribune," and "This case is utterly and completely built on lies and deceit," said Fleck *at the April 26 hearing*." Exhibit 1 at 2 (emphasis added). Clearly, any statements made by Mr. Fleck in the article came from the released April 26 hearing transcript,

---

[1] Plaintiff refers this Court to *Biles v. Schneider,* No. 2:11-cv-00366-NDF, which contains a transcript of a hearing that was made public by the Court wherein many of the allegations now complained of by Mr. Schneider were revealed. *See* Doc. 47 (Order Denying Motion to Seal Transcript); 50 (Notice of Filing of Official Transcript).

which took place weeks before the Parties settled, not after the Parties entered into the Settlement Agreement.

    III.    MR. SCHNEIDER'S REQUEST FOR A STAY SHOULD BE DENIED.

In liberally construing Mr. Schneider's *Response,* he requests that this Court stay the case until he is released from Federal Prison. *See* Doc. 41 at 5-6. Indeed, Mr. Schneider asks this Court to "take notice" of the fact that his current incarceration is hampering his ability to litigate his case because the prison system does not allow him access to any legal resources, timely mail delivery, or the internet. *Id.* Mr. Schneider goes on to state that he anticipates that he will be released within the next 6 to 14 months, which will be followed by a 6-month house arrest term. Mr. Schneider claims that after this time he will be allowed to "participate in all timely arguments, conferences, and motions before this [C]ourt." *Id.* at 6.

While it is true that a district court has the power to stay proceedings as part of its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936), an indefinite "stay of all proceedings is tantamount to a denial of due process," *see, e.g., Wimberly v. Rogers*, 557 F.2d 671, 673 (9th Cir. 1997). Furthermore, "simply because a person is incarcerated, that does not mean that he is stripped of free access to the courts and the use of legal process to remedy civil wrongs." *Id.*

In this case, the Court should deny Mr. Schneider's request for a stay. Mr. Schneider's incarceration is due to his own wrongdoing and a stay would result in Mr. Schneider benefitting from his felonious conduct. Simply because Mr. Schneider may have fewer recourses that might otherwise be available to a non-incarcerated *pro se* litigant, Mr. Schneider chose to file this Counterclaim in the manner that he did and, therefore, he is responsible for prosecuting it in

a timely manner.  It should also be noted that the Granite Peak Law Firm, Counsel for Medport, LLC, has been sending Mr. Schneider copies of the pleadings *via* the Federal Bureau of Prisons email exchange.  *See* Doc. 41 at 2.  Presumably, Granite Peak has also informed Mr. Schneider of deadlines and has agreed to file pleadings on his behalf.  Especially with the assistance of Granite Peak, Mr. Schneider cannot complain that his access to the Court has been hampered in any way.

The interests of Dr. Biles must also be considered.  An indefinite stay of the litigation would unduly delay Dr. Biles' right to seek a resolution of the Amended Counterclaim.

CONCLUSION

It is respectfully requested that Defendant Schneider's *First Amended Counterclaim* be dismissed and that Mr. Schneider's request for stay be denied.

DATED this 19th day of June 2019.

        *s/Anna Reeves Olson*
        Anna Reeves Olson, #6-3692
        PARK STREET LAW OFFICE
        242 So. Park Street
        Casper, Wyoming 82601
        (307) 265-3843

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following addresses:

| | |
|---|---|
| The Spence Law Firm, LLC | Adam H Owens |
| R. Daniel Fleck | Gregory G Costanza |
| M. Kristeen Hand | GRANITE PEAK LAW LLC |
| 15 South Jackson | PO Box 635 |
| P.O. Box 548 | Bozeman, MT 59771 |
| Jackson, WY 83001 | 406/530-9119 |
| *fleck@spencelawyers.com* | *adam@granitepeaklaw.com* |
| *hand@spencelawyers.com* | *gregory@granitepeaklaw.com* |
| *Attorneys for Plaintiff* | *Attorneys for MedPort LLC* |

And also certify this was sent via U.S. Mail to:

John H Schneider, Jr
Reg #64084298
METROPOLITAN CORRECTION CENTER
808 Union St
San Diego, CA 92101
    *PRO SE*

                                              */Anna Reeves Olson*
                                              Anna Reeves Olson



(/)

**MAIN MENU**



(https://powellbanners.creativecirclemedia.com/www/delivery/ck.php?oaparams=2__bannerid=38__zoneid=3__cb=8c9b5ddb2e__oadest=https%3A%2F%2Fmshfh.org%2F)

⚠ You have **3 free items** remaining before a subscription is required. Subscribe now! (/subscribe/?town_id=0)

# Dr. Biles reaches settlement

Posted Tuesday, May 15, 2012 3:38 pm

**By CJ Baker (mailto:cj@powelltribune.com)**

Damning emails from Dr. Schneider uncovered

An embattled local neurosurgeon has settled allegations that he was behind a mass mailing that falsely disparaged a fellow surgeon, but court records say other investigations into his actions remain pending.Attorneys for the target of the disparaging mailing, Dr. Jimmie Biles of Cody, told a U.S. District Court judge on Friday that they have reached a settlement with the three individuals they'd accused of conspiring to mail it: Dr. John H. Schneider Jr., his wife Michelle, and Indiana resident Lisa Shaurette Fallon.

The terms of the settlement are confidential and, according to statements made in court, contingencies in the agreement won't be finalized until August.

The flyer in question was sent to more than 14,200 Big Horn Basin homes in December 2010. It was made up of embellishments and flat-out fabrications of misconduct against Biles and told people to "beware" if he was their doctor.

The mailing claimed to be sent by a dissatisfied Biles patient named "Rita," but was actually sent by Fallon, who has never met the doctor.

Fallon has claimed she acted alone in sending the flyer, but Biles' attorneys have said her long-time friends, the Schneiders, had put her up to it. Dr. Schneider has been paying for her attorney in the case, Craig Silva of Williams, Porter, Day and Neville in Casper.

Dr. Schneider has denied being involved in the mailing, filing a response to Biles' suit that accused Biles of being jealous of him.

But court records made public on Friday indicate that Biles' attorneys have uncovered emails showing Schneider was involved in the mailing, and engaged in a potentially illegal effort to hide his involvement.

The discovery of the emails prompted the Schneiders' attorneys, Laurence Stinson and Brad Bonner of Cody's Bonner Stinson firm, to withdraw their representation of the couple, court records say.

In disclosing the information to District Court Judge Nancy Freudenthal on April 26, Bonner specifically cited a series of October-November emails in which Dr. Schneider provided Fallon with a bogus doctor's note; Fallon was directed to use the note as an excuse to avoid testifying before Biles' attorneys, Bonner said. Fallon had claimed at the time that she had a serious medical condition that prevented her from being deposed.

Biles' attorneys, Bill Simpson of Simpson, Kepler and Edwards, Dan Fleck and Kristeen Hand of the Spence Law Firm, had argued at the time that Fallon did not have a serious condition and was simply trying to delay the deposition until the one-year of limitations on defamation suits had passed. Judge Scott W. Skavdahl had agreed with Biles' attorneys that there was no need or verifiable information to postpone the deposition.

The emails, as recounted at the April 26 hearing in a transcript purchased by the Tribune, indicate the medical excuse was not bona fide.

When Fallon emailed Dr. Schneider to say her doctor was going to sign the note, Dr. Schneider reportedly responded, "That should be a 250K-plus payoff for your future. Thank you."

Dr. Schneider also sent along an eight-page set of instructions explicitly telling her how to testify, Bonner said.

Schneider paid Fallon $5,000 a couple days before her deposition and $10,000 immediately afterwards, Fleck said.

"That is called a bribe," he said.

Another email from Schneider said he was going to try to create a wild goose chase for Biles' attorneys, Fleck said. Schneider, through Stinson, had filed a response denying any role in the mailing and made a series of new dramatic allegations of misconduct against Biles in the filing and a press release. He also countersued, accusing Biles of defaming him by suing for defamation; Freudenthal threw out Schneider's countersuit last month.

In another of the emails, Fleck said Schneider asked Fallon to send her cell phone and hard drive so he could "give them the microwave treatment." Micro-waving electronics can be a way to wipe them of information.

Fallon claimed her email-less computer had orange juice spilled over it, Fleck said, but an expert found no OJ. As for Schneider's computer, that was "miraculously stolen" in Billings, Fleck said.

Biles' attorneys obtained the emails from the Indiana hospital where Fallon works.

"This case is utterly and completely built on lies and deceit," said Fleck at the April 26 hearing. "It has been deceitful from the minute it started until the end. What they (the Schneiders and Fallon) did to Jimmie Biles was atrocious and horrible. They used and manipulated this very court in what they decided to do and how they decided to abuse the process here."

"It goes to the very, very heart and soul of everything we believe in as lawyers and everything we believe in as the justice system, and these people have proverbially given it the middle finger," Fleck added later. "And I am just astounded by the whole thing."

The details of the April 26 hearing were not publicly released at the time, but on Friday, Freudenthal overruled the objections of Bonner and Stinson and made the transcript public.

"The reasons proffered by Defendants do not justify depriving the public of access to the transcripts," Freudenthal wrote.

Several entities had wanted copies.

Attorneys for West Park Hospital were among those requesting a transcript copy, saying they were "very concerned" about any allegations of criminal activity or misconduct. They noted the hospital's interest in having ethical medical staff.

The Wyoming Board of Medicine also sought a copy, saying it has been investigating the flyer since early 2011 but has so far been unable to confirm who sent the document.

The facts of the cases "are highly relevant to the Board's investigation into whether the Wyoming Medical Practice Act has been violated by one or more of the Board's licensees," wrote the board's executive director, Kevin Bohnenblust. In addition to the flyers, the board is also investigating "several other matters" involving Schneider, Bohnenblust indicated.

The board suspended Schneider's Wyoming medical license in January over allegations that an unsafe prescription of a pain patch contributed to one of his patient's death, but reinstated it in March after Schneider took a class and agreed not to prescribe that patch anymore; the board also said it was investigating allegations Schneider had mischaracterized the surgery as an emergency so he could collect insurance.

Another party interested in a copy of the April 26 transcript was Weston W. Reeves, an attorney for Cody residents James and Martie Clark. Schneider is suing the couple for defamation, alleging they badmouthed him in the community, formed a hate group against him and cost him $7.25 million in lost patient revenue, according to court documents.

"Obviously, if there are other reasons for Dr. Schneider's loss of income, it is critically relevant to our (the Clarks') case," Reeves wrote.

The Clarks, meanwhile, are suing Schneider for malpractice over a surgery on James Clark. Further, they say Schneider was behind an anonymous billboard, website and advertising campaign that appeared aimed at a Casper doctor, Robert Narotsky, who Biles was referring patients to.

Last week, Park County District Court Judge Steven Cranfill ordered the individual who designed the ad campaign to turn over the identity of her employer, says Reeves' filing.

Reeves said Schneider has refused to discuss the billboard campaign. An employee at Schneider's practice in Billings said he was not available late Monday and a message was not immediately returned.

An attorney's disclosure of fraudulent or criminal conduct in a case is believed to be rare.

Bonner called it "an extraordinary and difficult circumstance" that he'd never witnessed before.

Fleck did offer some criticism of Bonner Stinson, noting the instructions and other documents were found in December and saying the disclosure was "a day late and a dollar short."

Bonner, however, noted that the documents found in December were unsigned and never explicitly said who had authored them. It was only in the recent emails, provided to the firm on April 23, that they saw Schneider had indeed sent Fallon the documents.

"We could all surmise, but until then, we didn't have the proof that we have now," Bonner said at the hearing.

Bonner, who is a part-owner of the Tribune, told Freudenthal the Schneiders are actively seeking new attorneys. He said one of the doctor's insurers may take up the defense.

Stinson and Bonner were allowed to withdraw from the case on Monday. Silva has not asked to withdraw, but has said he may.

At the April 26 hearing, Silva said he thought that going forward, Fallon "would ultimately have to take the Fifth Amendment on many of these issues because they have placed themselves in a very difficult spot."

## Comments

0 Comments

Sort by Oldest

Add a comment...

Facebook Comments Plugin

## OTHER ITEMS THAT MAY INTEREST YOU

Pipe ceremony celebrates Crow history at Heart Mountain (/stories/a-return-to-the-heart,19388)

City of Powell lowers speed limits on Seventh, Absaroka streets (/stories/city-of-powell-lowers-speed-limits-on-seventh-absaroka-streets,19386)

Vice President Pence visiting Yellowstone (/stories/vice-president-pence-visiting-yellowstone,19387)

Powell teen to advocate for diabetes research in D.C. (/stories/powell-teen-to-advocate-for-type-1-diabetes-research-in-dc,19396)

Search

Advanced search (/search.html)

## LOCAL NEWS