Granite Peak Law, PLLC
Gregory G. Costanza, Esq.
P.O. Box 635
Bozeman, MT 59771
Gregory@GranitePeakLaw.com
(o) (406) 404-6533

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., MD, <br><br>     Plaintiff <br><br> v. <br><br> JOHN H. SCHNEIDER; and MEDPORT, LLC, <br><br>     Defendants | CAUSE NO. 19-CV-48-F <br><br><br> **MEDPORT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR STAY OF PROCEEDINGS** |
| JOHN H. SCHNEIDER, <br><br>     Counter-Claimant <br><br> v. <br><br> JIMMIE G. BILES, JR., <br><br>     Counter-Defendant | |

COMES NOW Defendant Medport, LLC ("Medport"), by and through counsel of Granite Peak Law, PLLC ("Granite Peak"), hereby submits this memorandum in support of its Motion for Stay of Proceedings in this matter.

## I.  BACKGROUND

On March 8, 2019, Plaintiff JIMMIE G. Biles ("Biles") filed a complaint alleging a breach of contract from a prior settlement agreement entered between Plaintiff Biles and Defendant John H. Schneider M.D. ("Schneider"). [Doc. 1]. Biles' complaint alleges that Defendants Schneider and

Medport breached the agreement by publishing remarks regarding Plaintiff Biles on the website https://healthcare-malpractice.com ("Malpractice Website") and other internet sites. [Doc. 1] at ¶¶ 33, 43. The preliminary injunction filed in this matter caused the offending content to be removed. [Doc. 19], dated April 9, 2019 and Declaration of Adam H. Owens, ¶ 5.

Schneider has appeared as a *pro se* litigant in this matter. Owens Decl., ¶ 8. On February 19, 2019, Schneider self-surrendered to the Metropolitan Correction Center in San Diego, California to serve a 24-month sentence after pleading guilty to a single count of bankruptcy fraud in the Federal District Court of Montana, Billings Division. Owens Decl., ¶ 7. Schneider, through his attorney Steven Preziosi, currently has an appeal and request for re-sentencing pending before the Ninth Circuit Court of Appeals. *See* Court of Appeals Docket # 18-30187 (the "Schneider Appeal").

The Schneider Appeal was fully briefed on June 13, 2019. It is reasonable to expect that the Schneider Appeal will be decided around the median response time in the 9th Circuit for all criminal appeals, which at this stage in the proceedings is 6.5 to 7.3 months from June 13, 2019, or until between December 27, 2019 and January 23, 2020 for a final decision on the merits from the 9th Circuit. *See* Owens Decl., ¶ 30 and Request for Judicial Notice, Exhibit D, Table of Median Appeal Length. A temporary stay will not be prejudicial to Biles and will allow the parties to resume proceedings by no later than April 24, 2020.

## II.   LEGAL STANDARD

The U.S. Supreme Court stated in *Landis v. North American Co.*, 299 U.S. 248 (1936):

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

299 U.S. 248, 254-55, 257, 57 S.Ct. at 166, 81 L.Ed. at 158. *See also Enelow v. New York Life Ins. Co.*,293 U.S. 379, 382, 55 S.Ct. 310, 79 L.Ed. 440 (1935) (recognizing that a district court may

stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice"). The decision whether to grant a stay "calls for the exercise of judgment [by the district court], which must weigh competing interests and maintain an even balance" between "[b]enefit and hardship." *Landis*, 299 U.S. at 254-55, 259, 57 S.Ct. 163.

That power to issue a stay may be appropriately exercised where a separate proceeding bearing upon the case is pending. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) (noting "district courts' discretion to defer ... proceedings pending the prompt conclusion of arbitration" (citing *Landis*, 299 U.S. at 254-55, 57 S.Ct. 163)); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863-64 (citing, *Landis*, 299 U.S. at 254-55, 57 S.Ct. 163); *see also Landis*, 299 U.S. at 254, 57 S.Ct. 163 ("[W]e find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical.").

In the case of independent proceedings, a stay may be warranted where the resolution of other litigation will likely "narrow the issues in the pending cases and assist in the determination of the questions of law involved." Landis, 299 U.S. at 253, 57 S.Ct. 163. Nevertheless, "[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Id.* at 257, 57 S.Ct. 163. Put another way, "[t]he scope of the stay and the reasons for its issuance determine whether a stay is immoderate." *Belize Soc. Dev. Ltd. v. Gov't of Belize (Belize I)*, 668 F.3d

724, 732 (D.C. Cir. 2012). For example, "a court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" Id. at 731-32 (quoting *Landis*, 299 U.S. at 255, 57 S.Ct. 163). A stay pending resolution of other proceedings may be deemed indefinite where it "includes no provision for status updates or further review." *Id.* at 732.

Courts have cited approvingly to the factors set forth in *Golden Quality Ice Cream Co v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980), when applying the *Landis* balancing analysis to stay motion. *Golden Quality Ice Cream's* five factors are as follows:

> (1)The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to the plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on the Defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*See also, Federal Savings and Loan Insurance Corporation v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)(upholding use of *Golden Quality Ice Cream* factors as non-exclusive); *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (using substantially similar factors to *Golden Quality Ice Cream*). While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution. *See SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C.Cir.1980); *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F.Supp.2d 523, 527, 529 (D.N.J.1998); *See generally, United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

## III.   ARGUMENT

Applying the *Golden Quality Ice Cream* factors to the *Landis* balancing test, it is clear that a stay in this matter until Dr. Schneider is released from confinement will not be prejudicial to Plaintiff Biles, will protect Defendants' Due Process rights under the Fifth Amendment, will allow this Court and the parties to conserve litigation resources, and will serve the public interest by promoting the resolution of cases on their merits.

A. **THE INTEREST OF THE PLAINTIFF IN PROCEEDING EXPEDITIOUSLY HAS BEEN SATISFIED BY THE GRANTING OF THE PRELIMINARY INJUNCTION, AND NO ONGOING HARM HAS BEEN ALLEGED BY PLAINTIFF, NOR IS SPOLIATION OF EVIDENCE A RISK, THUS PLAINTIFF WILL LIKELY EXPERIENCE NO PREJUDICE BY THE GRANTING OF THE STAY**

This Court's preliminary injunction [Doc. 19] caused the Malpractice Website and other internet posts cited as the sources of the alleged breach of contract to be removed. The offending posts are no longer available for the public to view. Owens Decl., ¶ 5. As a result, the granting of a stay poses almost no risk of ongoing harm to Biles, as the underlying cause behind the alleged breach of contract has been removed and no further posts have appeared. Plaintiff cites no other causes of harm in his Complaint and will therefore suffer little prejudice by the granting of a stay in these proceedings pending the decision by the 9th Circuit Court of Appeals because Biles' interest in proceeding expeditiously has already been satisfied.

Moreover, the risk of spoliation of evidence is not particularly strong in this matter because the majority of Plaintiff's evidence has been gleaned from online activity that has already been discovered. [Doc. 15]. Accordingly, a temporary stay of this matter will not be prejudicial to the parties. See Owens Decl., ¶ 31. For the foregoing reasons, this factor weighs in favor of granting a stay.

B. **THESE PROCEEDINGS HEAVILY BURDEN DEFENDANTS MEDPORT AND SCHNEIDER BECAUSE OF THEIR INABILITY TO EFFECTIVELY PARTICIPATE IN DISCOVERY AND OTHER MOTIONS PRACTICE**

Medport, as the business entity representing Dr. Schneider's consulting business, is at a distinct disadvantage in this litigation. Schneider is currently the chief executive officer and sole owner of Medport, and is therefore essential to Medport's ability to engage in discovery and

defend its interests. *See* Owens Decl., ¶ 6. As a result, Medport is wholly dependent on Dr. Schneider's ability to locate, review, discuss, produce, and generally engage in informal and formal discovery, including but not limited to internal review of company documents, responding to Plaintiff's discovery queries, and preparing for trial. *See* [Doc. 41], pg. 4.

Due to his incarceration, Schneider is unable to adequately assist in Medport's factual and legal review of the issues presented in this case. *See* [Doc. 41] at pp. 2 and 4; *see also*, Owens Decl., ¶¶ 9, 20-25. The Bureau of Prisons ("BOP") places significant restrictions on all of its inmates. For example, as an inmate within the BOP, Schneider's access to communication, discovery and other litigation resources necessary to this case has been severely restricted in the following ways:

(1) Schneider is given minimal access to electronic communication through the Bureau of Prisons email system called CorrLinks. This system does not allow attachments to be sent, and all correspondence must be typed into the body of a CorrLinks message box. This makes sending legal documents extremely difficult, and with a character limit of 13,000 words per email, multiple CorrLinks messages are required for lengthy electronic correspondence. *See* Owens Decl. ¶¶ 10-16; *see also*, Owens Decl. and Request for Judicial Notice, Exhibits A-C.

(2) Messages sent through the CorrLinks messaging system and all outgoing and incoming mail are subject to monitoring by BOP officials. Each electronic message and piece of mail received by Schneider is subject to BOP review and processing based on the timeline of BOP employees. Neither Schneider nor Medport's attorneys are notified if the BOP delays correspondence. *See* Owens Decl. ¶¶ 18-19.

(3) A two to four hour initial delay between sending and receiving CorrLinks messages is common, and Dr. Schneider is further limited in the time he may access these communications. As a result, messages exchanged through CorrLinks with Schneider are often delayed by as much as 24 hours before he will review them and respond, making it difficult to have timely communications with Schneider in this case. *See* Owens Decl. ¶¶ 17-19.

(4) Schneider has no direct access to a phone or the Corrlinks system, making it impossible for him to communicate with Medport's attorneys or with the court in a

time sensitive manner. Past attempts to reach Schneider by phone and according to BOP's own procedure were unsuccessful, possibly because the BOP places a lower priority on civil legal correspondence. *See* Owens Decl. ¶¶ 17, 20-22.

(5) Schneider must provide the majority of his hand-written correspondence via U.S. mail, which is reviewed by the BOP, leading to a significant delay in the sending and receiving of legal correspondence regarding this case. The BOP may also limit the total amount of materials Schneider possesses. Altogether, this causes significant delay and disruption in Medport's ability to respond in a timely manner and prejudices both Medport and Schneider by shortening the ordinary length of time parties have available to them to respond within the time limits required under the Federal Rules of Civil Procedure. *See* Owens Decl. ¶¶ 10, 25; *see also*, Owens Decl. and Request for Judicial Notice, Exhibits A-C.

(6) Schneider has denied receiving mail from opposing counsel, leading to the inference that counsel for Plaintiff Biles has not been following the Special Mail procedures necessary for legal mail to actually reach Schneider in a timely manner. *See* Owens Decl. ¶ 23; [Doc. 41].

Opposing counsel has already denied Schneider's reasonable initial extension request under these circumstances, further constraining his and Medport's ability to timely respond to motions and other matters. Schneider's inability to appear and participate in this matter will continue to burden Defendants by frustrating their ability to engage in discovery and respond to substantive motions filed by Plaintiff. Requiring Schneider and Medport to participate in these proceedings in the normal course while Schneider is incarcerated places an undue burden on Defendants and unfairly prejudices their ability to participate in this case.

The Due Process Clause of the Fifth Amendment is implicated where Schneider has received "no direct communication" from Biles' counsel after service of the original complaint at the Metropolitan Corrections Facility. [Doc. 41] at pg. 2. Granite Peak Law has never anticipated or expected that Biles counsel would not serve the entirety of their filings on Schneider in the

manner required by the BOP. Without these documents, Schneider is deprived of his ability to review any evidence presented by Plaintiff in their motions practice.

Schneider's Fifth Amendment rights are further implicated when Defendants Schneider and Medport are unable to review company documents and effectively participate in discovery ("Schneider cannot research, receive, locate or send specific articles and references...") that would aid them in this matter. *Id.* at pp. 2 and 4. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *See Bell v. Wolfish*, 441 U.S. 520 (1979)(citing *Jones v. North Carolina Prisoners' Labor Union*, 433 U. S. 119, 129 (1977); *Meachum v. Fano*, 427 U. S. 215, 225 (1976); *Wolff v. McDonnell*, 418 U. S. 539, 555-556 (1974); *Pell v. Procunier*, 417 U. S. 817, 822 (1974). "There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, supra, at 555-556.

U.S. Supreme Court cases have held that sentenced prisoners enjoy freedom of speech and religion under the First and Fourteenth Amendments, see *Pell v. Procunier*, supra; *Cruz v. Beto*, 405 U. S. 319 (1972); *Cooper v. Pate*, 378 U. S. 546 (1964). The Supreme Court has also held that prisoners may claim the protection of the Due Process Clause to prevent additional deprivation of life, liberty, or property without due process of law, see *Meachum v. Fano*, supra; *Wolff v. McDonnell*, supra. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Its purpose "is not only to ensure abstract fair play to the individual," but "to minimize substantively unfair or mistaken deprivations." *Freeman v. FDIC*, 56 F.3d 1394, 1403 (D.C. Cir. 1995) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80-81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). The risk of further Fifth Amendment due process issues in this matter weighs heavily in favor of granting a stay.

C. **JUDICIAL RESOURCES WILL BE CONSERVED AND THIS CASE WILL BE MORE EFFECTIVELY MANAGED BY STAYING THIS CASE INSTEAD OF POTENTIALLY NON-STOP DISPUTES REGARDING DISCOVERY AND TIME TO RESPOND**

The Court has an interest in efficiently managing its caseload. A stay in this case would promote the efficient resolution of this case by allowing Schneider and Medport to fully participate in discovery and motions practice without burdening this court with additional motions to compel discovery or extend the time to respond, as has already occurred due to Plaintiff's unwillingness to extend any extension courtesy to Schneider, despite his incarceration. *See* [Doc. 26 and Doc. 27], Defendant Medport's Motion for an Extension of Time to File Its Answer. Moreover, this stay would not be indefinite because Schneider has ascertainable minimum and maximum periods of remaining confinement, including home confinement that will reduce that time that he cannot effectively participate in this matter.

Schneider's 24-month sentence is currently pending appeal. *See* Case 18-30187, in the U.S. Court of Appeals for the Ninth Circuit. If Schneider's appeal is granted, a re-sentencing hearing would occur using sentencing factors that are likely to reduce the amount of time Dr. Schneider will be confined because of how the amount in controversy affects his length of sentencing.

However, even if Dr. Schneider's appeal is not granted, the BOP calculates that he is slated for release on either Friday, November 13, 2020[1] or Saturday, November 14, 2020[2], and likely

---

[1] "If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday." 18 U.S.C. 3624(a), Date of Release.

[2] See BOP "Find an inmate," No. 64084-298, https://www.bop.gov/inmateloc/ accessed July 3, 2019. This webpage states at the top: "[d]ue to the First Step Act, sentences are being reviewed and recalculated to address pending Good Conduct Time changes. As a result, an inmate's release date may not be up-to-date." The BOP should revise these calculations on July 19, 2019 to reflect changes made by the First Step Act. *See* 18 U.S.C. 3632(a). These changes would also advance forward the dates of home confinement estimated herein.

earlier based on changes made by the First Step Act of 2018, as discussed below. This release date, which may change on July 19, 2019, is based on the Bureau of Prison's *current but now dated* calculations for "Good Conduct Time" (referred to in 18 U.S.C. 3624(b)(1) as time credit for "exemplary compliance with institutional disciplinary regulations.")[3]. See FN 2.

In addition to this scheduled release date, and before application of additional changes made by the First Step Act, Schneider will very likely be released to home confinement on or about September 1, 2020[4] under 18 U.S.C. § 3621(c)(1). *See* Owens Decl. ¶¶ 27-29 and Request for Judicial Notice, Exhibit C, Home Confinement Memo. The Home Confinement Memo, issued in response to the First Step Act, provides that the BOP is to **maximize** the amount of time that a prisoner spends in home confinement. *See* Owens Decl. ¶ 28.

Moreover, the First Step Act[5] provides for extended, additional home confinement based on the development by the U.S. Department of Justice of a "risk and needs assessment system" (the "System"). *See* 18 U.S.C. § 3632(a). Under this new System, qualifying prisoners like Schneider, who successfully complete programming or productive activities, which Schneider is currently doing, "shall earn time credits" as follows: (i) 10 days for every 30 days of successful participation, and (ii) if the prisoner is determined by the BOP to be at a minimum or low risk for recidivating, and has not increased their risk over two consecutive assessments, shall earn an additional 5 days of time credit for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4).

---

[3] "Following sentencing and designation, the BOP calculates inmate sentences in accordance with Federal statute and the following BOP program statements: P5880.30, Sentence Computation Manual/Old Law/Pre CCCA 1984; P5880.28, Sentence Computation Manual (CCCA 1984); and P5880.32, District of Columbia Sentence Computation Manual." https://www.bop.gov/inmates/custody_and_care/sentence_computations.jsp accessed 7/3/19.
[4] This calculation subtracts 2.4 months or 73 days from the scheduled release date to account for Schneider's maximum eligible Home Confinement Period under 18 U.S.C. § 3621(c)(1).
[5] Pub. L. 115-391, title I, § 101(a), Dec. 21, 2018.

Assuming Schneider is participating in this new System as of March 1, 2019, and that he participated for 390 days through March 25, 2020, then under the System Schneider would earn an additional 130-195 days of home confinement, advancing his release date into home confinement from September 1, 2020 to either Friday, April 24, 2020 or Wednesday, February 19, 2020. *See* Owens Decl. ¶29.

As a result, the maximum stay in these proceedings would be for a period of no more than fourteen months until September 1, 2020, but likely sooner based on 18 U.S.C. § 3632(a), when Schneider would be released to home confinement, sometime between February 19, 2020 and April 24, 2020. Under these scenarios, this case would only be stayed for approximately 7-9 months until Schneider is released to home confinement, which does not represent a substantial delay to the interests of any of the parties in this matter. Automatic stays imposed on civil cases as a result of a party's bankruptcy filing are commonly of similar duration.

Absent a stay, interrogatory, production and deposition discovery would be inefficient because Medport and Schneider will likely need to seek extensions of time and potentially not be able to locate discovery because of Schneider's lack of access to his own records. These proceedings would be burdened more than necessary because of these issues, as both sides would file motions to protect their interests, forcing the court to weigh in at each juncture. Such litigation activity would be much less likely to occur once Dr. Schneider is released to home confinement, as he would then be able to participate in the aforementioned ways. Accordingly, this factor also weighs in favor of granting a stay.

## D. THE INTEREST OF PERSONS NOT PARTIES TO THE CIVIL LITIGATION FAVORS GRANTING A STAY

Specific persons not a party to this litigation likely include other medical professionals, past patients of Biles and Schneider, and the prospective pool of patients who may have an interest in

the conduct of Wyoming physicians. A stay in this matter will certainly preserve the status quo post-preliminary injunction, which has resulted in the removal of information at issue in this case. To the extent these non-party persons are interested in the outcome of this case, they are not likely to be significantly harmed by a stay that keeps information on the internet from them. This factor, although it does not weigh as much, nonetheless favors a stay.

**E.  THE PUBLIC HAS AN INTEREST IN PRESERVING CIVIL LIBERTIES IN THIS LITIGATION AND ALLOWING CASES TO BE RESOLVED ON THEIR MERITS**

The public has an enduring interest in seeing that litigation is conducted within constitutional norms, and that a person's constitutional liberties are not improperly violated, even when they are imprisoned. Because Defendants Medport and Schneider are constrained in their ability to participate, this case is at risk of not being decided on its merits, contrary to well-established legal norms. It is a well-enshrined principle of the federal civil procedure system that cases should, in the main, be decided on the merits, not on technicalities. *Rodriguez v. Village Green Realty, LLC*, 788 F.3d 31, 47 (2d. Cir. 2015)(citing *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 247 (NDNY 2014) and observing that there is a strong preference for resolving disputes on the merits). This factor also weighs in favor of granting Defendants a stay in this case.

## CONCLUSION

For the foregoing reasons, Defendant Medport seeks a limited stay of this matter for six to nine months pending the appeal of Dr. Schneider's sentencing and no later than April 24, 2020, at which point a status conference could occur to determine whether and how to further schedule this case.

Respectfully submitted this 5th day of July, 2019.

/s/ Gregory G. Costanza
Gregory G. Costanza, Esq.
Granite Peak Law, PLLC
P.O. Box 635
Bozeman, MT 59771
Gregory@GranitePeakLaw.com
(o) (406) 404-6533
(c) (307) 264-2994

Attorney for Defendant Medport LLC

<u>Certificate of Service</u>

I hereby certify that on the 5th day of July 2019, a copy of the foregoing document was

served on the following persons via CM/ECF:


Anna Reeses Olson #6-3692
Park Street Law Office
242 S. Park Street
Casper, WY 82601
T: (307) 265-3843
F: (307) 235-0243
aro@parkstreetlaw.com

Attorneys for Counter-Defendant
Jimmy Biles

R. Daniel Fleck
M. Kristeen Hand
THE SPENCE LAW FIRM, LLC
15 South Jackson
P.O. Box 548
Jackson, WY 83001
T: 307.733.7290
F: 307.733.5248

Attorneys for Plaintiff Jimmy Biles


John H. Schneider, Jr. MD
Reg #64084-298
METROPOLITAN CORRECTION CENTER
808 Union St
San Diego, CA 92101
Pro Se
Sent by USPS and BOP Special Mail

/s/Gregory G. Costanza