IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

JIMMIE G. BILES,

    Plaintiff,

vs.

JOHN H. SCHNEIDER, JR.; MICHELLE R. SCHNEIDER; and MEDPORT, LLC,

    Defendants,

Case No. 19-CV-48-F

## ORDER DENYING MOTION TO STAY

This matter is before the Court on Defendant Medport, LLC's Motion to Stay (Doc. 45). The Court has considered the motion and is fully informed in the premises. For the following reasons, Medport's Motion is DENIED.

## BACKGROUND

Roughly seven years ago, this Court entertained a set of cases titled *Biles v. Schneider*, No. 2:11-cv-00366-NDF ("*Biles v. Schneider I*"); and *Biles v. Fallon*, No. 2:11-cv-00294-NDF. Both cases featured allegations that Defendant John Schneider and his wife, Michelle Schneider, had conspired with Lisa Fallon to defame Dr. Jimmie Biles. Specifically, Biles claimed those defendants paid Fallon to mail defamatory fliers to 14,239 homes in various Wyoming communities. (*Biles v. Schneider I*, Doc. 1 at ¶ 41; *Biles v. Fallon*, Doc. 1 at ¶ 22). Ultimately, the parties settled these matters, and the Court dismissed both cases with prejudice. (*Biles v. Schneider I*, Doc. 53; *Biles v. Fallon*, Doc. 62).

1

The settlement agreement resolving the prior litigation forms the basis for this suit. Biles claims John Schneider or his surrogates have been posting defamatory remarks on Facebook and the internet, in violation of that agreement. (Doc. 1 at ¶¶ 37, 39). Based on these events, Biles filed suit in this Court for breach of contract, intentional infliction of emotional distress, and joint enterprise. He named three defendants: 1) John Schneider, 2) Michelle Schneider, and 3) Medport, LLC, an entity owned by Schneider. (*Id.*). Biles later voluntarily dismissed Michelle Schneider, while he continues to pursue claims against the other defendants. (Doc. 40). Interestingly, Schneider is proceeding *pro se*, while his entity, Medport, enjoys representation.

Around the time Biles filed suit, Schneider began serving a 24-month prison sentence after pleading guilty to a single count of bankruptcy fraud in the United States District Court for the District of Montana. (Doc. 48 at ¶ 7). On July 5, 2019, Medport moved to stay this case pending Schneider's release from prison.[1] (Docs. 45, 46). Essentially, Medport contends the Court should stay the case because Schneider's incarceration renders Medport's communication with its only member difficult.[2] (Doc. 46

---

[1] Medport failed to confer with Biles per U.S.D.C.L.R. 7.1(b)(1)(A). Additionally, Medport exceeded the page-limit allowed by U.S.D.C.L.R. 7.1(b)(1)(C). While Biles claims these failures justify denial, Medport claims its failure to confer was justified, as Biles' counsel had already expressed opposition to a stay in response to one of Schneider's filings in this case. Additionally, it contends the Court should ignore its failure to adhere to page limitations, as it attached a corrective motion to its reply brief. While the Court wants litigants to follow Local Rules, it will not consider procedural defects associated with Medport's motion in determining whether a stay is proper. Biles already responded to Medport's motion, and Medport filed a reply. Thus, the Court has ample briefing to consider the merits of a stay in this case. It sees no reason to delay decision in this matter.

[2] In advocating for a stay, Medport frames its arguments in the context of factors from *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D. Pa. 1980). (Doc. 46 at 4-12). The Tenth Circuit has not adopted these factors, and the Court is not obligated to follow them. Accordingly, the Court will not consider arguments that Medport apparently only makes to satisfy those factors. Primarily, Medport seems to advocate for a stay because Schneider's incarceration makes the litigation process difficult for Medport. Since this argument seems to be the focus of Medport's motion, this is the argument the Court will discuss in considering whether a stay is proper.

at 4-9). Accordingly, Medport argues that Schneider's incarceration hinders its discovery efforts and general ability to defend its interests in this case.[3] (*Id.*). Medport claims its proposed stay would allow the parties to resume proceedings in 2020 (*Id.* at 2, 9-11). Schneider's exact date of release depends on a variety of factors described in Medport's motion, including the success of Schneider's criminal appeal, which is currently pending before the Ninth Circuit. (*Id.*). Biles filed a response in opposition to the motion on July 18, 2019 (Doc. 52), and Medport filed a reply on July 25, 2019. (Doc. 53). The matter is now fully briefed and ready for disposition.

## DISCUSSION

A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The party seeking a stay has the burden of establishing its need. *Id.* at 708. This burden is high. "[W]here a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)). Thus, where "a 'fair possibility' exists that [a] stay would damage another party," a movant "must show 'a clear case of hardship or inequity.'" *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (quoting *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th

---

[3] Medport cites several cases in which courts considered whether to stay civil cases pending the outcome of parallel criminal proceedings. (Doc. 46 at 3-4). However, since Medport never suggests that Schneider's criminal proceedings in the Ninth Circuit are somehow parallel to the breach of contract suit pending in this Court, the Court assumes that it does not intend to make such an argument.

Cir. 2000)). In determining whether to grant a stay, courts must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255.

Here, Schneider's status poses some challenges for Medport's participation in this litigation. For example, Medport can only communicate with its sole member "through the Bureau of Prisons (BOP) messaging system known as Corrlinks, or by correspondence sent via U.S. Mail." (Doc. 48 at ¶ 10). According to Medport, these methods of communication are problematic for a few reasons. First, the Corrlinks program produces "a two to four-hour delay between sending and receiving electronic messages." (*Id.* at ¶ 13). Second, Schneider is not able to check his Corrlinks messages "until mid-afternoon, and his access is limited to around twenty minutes per day." (*Id.* at ¶ 17). Third, Corrlinks prevents Medport from attaching documents to messages sent to Schneider. Instead, it must "cut and paste [a] document's contents into a Corrlinks message." (*Id.* at ¶ 15). Since "Corrlinks limits the number of characters in each message to 13,000 . . . a sender may have to cut and paste the contents of a document into multiple messages in order to send the recipient all of the contents of the document." (*Id.* at ¶ 16). Finally, any Corrlinks messages "are subject to monitoring [by prison officials.]" (*Id.* at ¶ 18) (quoting Doc. 48-2 at 15). Similarly, Schneider's "written outgoing mail is subject to search and delay by BOP officials." (*Id.* at ¶ 19). Besides burdens related to written communication, Medport claims difficulties in scheduling phone calls with Schneider. (*Id.* at ¶¶ 20-22). While one of Medport's attorneys was able to schedule an in-person meeting with Schneider, this meeting was limited to two hours, and the attorney "could not leave any documents with Schneider." (*Id.* at ¶ 23). Medport suggests these burdens will inhibit its ability to defend its interests in this

litigation. (Doc. 48 at 5-6). Since Schneider is Medport's only member, his incarceration and limited ability to communicate with counsel make it difficult for Schneider to "locate" and "review" relevant documents, thereby hindering Medport's discovery efforts and general ability to participate in this litigation. (*Id.* at 6).

While the Court appreciates the challenges identified by Medport, it fails to understand how these burdens distinguish the case from any other matters where incarcerated, *pro se* litigants face substantial challenges representing their interests. In considering Medport's request, the Court located significant case law in which courts rejected inmate requests to stay civil proceedings pending their release from prison. *See, e.g., Manning v. Cal. Dep't of Corr. & Rehab.*, No. 2:12-cv-2440 MCE AC P, 2015 U.S. Dist. LEXIS 69521, at *1-2 (E.D. Cal. May 22, 2015) (recognizing that prisoner was not entitled to stay where he made arguments based on "his inability to access the law library and legal property"); *Kingsley v. Raddatz*, No.: 13-cv-432-bbc, 2014 U.S. Dist. LEXIS 123098, at *1 (W.D. Wis. Sep. 4, 2014) (holding that stay of trial date pending litigant's release from prison was not justified where he argued that trial preparation would be easier after his release); *Perdue v. Morgan*, No. 1:13-cv-8782014 U.S. Dist. LEXIS 138575, at *8-9 (S.D. Ohio July 8, 2014) (concluding that *pro se* litigant failed to establish "good cause" when he asked the court to stay proceedings until he was out of prison and could find an attorney). Medport's request is somewhat unique because it comes from Schneider's entity, rather than Schneider himself. However, the Court still finds these cases instructive. Since Schneider is the only member of Medport, it is difficult to understand how Medport would have a significantly different interest than Schneider

himself. Indeed, in fleshing out the burdens related to Schneider's incarceration, Medport even takes issue with Biles' alleged failure to serve documents on Schneider and Schneider's inability to "review company documents." (Doc. 46 at 7-8). Medport claims these issues implicate Schneider's due process rights under the Fifth Amendment. (*Id.*). Medport's apparent willingness to raise constitutional arguments on Schneider's behalf is telling. Medport seems to concede that its interests are intertwined with Scheider's. Thus, if Schneider is not entitled to a stay based on difficulties associated with his status as a *pro se*, incarcerated litigant, Medport should not be either. Like the litigants in the cases cited, Medport is simply arguing that ordinary difficulties associated with proceeding as a *pro se*, incarcerated litigant justify a stay. Like the courts mentioned above, this court does not believe that these burdens weigh in favor of a stay. Accordingly, the Court will not stay this case.

In making this conclusion, the Court would note that Medport's request invites a concerning precedent. As Biles asserts, Schneider is in a much better position than most *pro se* litigants. (Doc. 52 at 1-5). While Medport does not represent Schneider individually, it "has agreed to transcribe his handwritten legal documents into typed documents and then file those documents with the Court on his behalf." (Doc. 48 at ¶ 8). Indeed, Schneider has been actively participating in these proceedings to date, filing pleadings and responses to various Rule 12 motions in a relatively prompt manner. (Docs. 21, 33, 41, 49, 56). While Schneider has exceeded the Local Rules response deadline in some instances, his failures to comply have been insignificant. In deference to his alleged *pro se* status, the Court has not punished Schneider for minor failures and has considered the merits of arguments

presented in his filings, even if those filings came a bit late. Aside from filing assistance, Schneider has enjoyed some opportunity to communicate with legal counsel. While the Corrlinks program might not be ideal, Medport clearly has used that platform to communicate with Schneider. Further, as noted above, one of Medport's attorneys met with Schneider at the Metropolitan Correctional Facility on May 20, 2019. Few *pro se* litigants enjoy the benefit of communication with counsel. Ultimately, if the Court accepted Medport's arguments and stayed this case, it would have to grant stays in countless other matters where *pro se* litigants face far worse burdens than Schneider. The Court will not accept Medport's implicit invitation to stay civil proceedings whenever incarcerated, *pro se* parties encounter difficulties associated with the litigation process.

## CONCLUSION

For the reasons stated in this order, the Court will not stay this matter pending Schneider's release from prison.

IT IS ORDERED that Medport's Motion to Stay (Doc. 45) is DENIED.

Dated this 7 day of August, 2019.

_____
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE