R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., M.D.,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN HENRY SCHNEIDER, JR.; and MEDPORT, LLC,<br><br>    Defendants. | Civ. No. 19-CV-48-F |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

Plaintiff, by and through his counsel, R. Daniel Fleck, M. Kristeen Hand, and Sarah A. Kellogg of THE SPENCE LAW FIRM, LLC, hereby files Plaintiff's Motion for Partial Summary Judgment, and states as follows:

In 2011 Plaintiff Jimmie G. Biles, M.D. sued Defendant John Henry Schneider, Jr. and Lisa Fallon after they conspired to defame Dr. Biles. The lawsuits, *Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) and *Biles v. Fallon,* No. 2:11-cv-00294-NDF

(D. Wyo. dismissed June 18, 2012), alleged that Mr. Schneider and Ms. Fallon mailed a flier to 14,239 homes in northwestern Wyoming defaming Dr. Biles.  Both cases were resolved after the discovery of correspondence from Mr. Schneider offering bribes to Ms. Fallon and instructing her on how to testify.  The parties entered into a settlement agreement that included promises to refrain from disparaging each other and to keep information relating to the litigation confidential. The parties also agreed to liquidated damages of $██████[1] in the event of a breach of the confidentiality clause.

This case arises because Mr. Schneider breached the confidentiality and non-disparagement clauses of the settlement agreement by publically posting online sixty-three pages of interview notes from his attorneys' files and other disparaging content.  Plaintiff now moves for partial summary judgment on Mr. Schneider's breaches of the confidentiality clause,[2] asking the Court to: (1) find that Mr. Schneider violated the confidentiality clause by posting notes from his attorneys' files and by posting a document quoting from those same notes; (2) award $250,000 in liquidated damages against Mr. Schneider for his violations of the confidentiality clause; and (3) issue a permanent injunction prohibiting Mr. Schneider from disseminating or publicizing confidential information.

## I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

On May 9, 2012, Mr. Schneider entered a settlement agreement with Dr. Biles.  Ex. A, Settlement Agreement[3]; Ex. B, RFA No. 1 (admitting the authenticity of the agreement).  Mr. Schneider had the opportunity to consult with counsel prior to signing the agreement.  Ex. B, at RFA No. 2.  After the agreement was signed, Mr. Schneider performed his payment obligations

---

[1]    Pursuant to the Court's order, ECF # 71, dated March 23, 2020, an un-redacted version of this Motion is filed under seal.

[2]    This Motion does not yet seek relief under the non-disparagement clause.

[3]    Pursuant to the Court's order, ECF # 71, this exhibit is filed under seal.

and Dr. Biles complied with paragraph 10 of the settlement agreement by dismissing the claims against Mr. Schneider in the case *Biles v. Schneider*, No. 11-CV-366-F.  *Id.* at RFA Nos. 3–4. The settlement agreement has never been amended.  *Id.* at RFA No. 5.

The settlement agreement includes a confidentiality clause under which the parties agreed to keep "all matter not currently in the public record" confidential, and also agreed to a liquidated damages amount of $███████ for each revelation of a confidential matter.  Ex. A, Settlement Agreement at ¶ 3.  The confidentiality clause reads:



*Id.*

Despite agreeing to this clear language, after Mr. Schneider signed the settlement agreement, he repeatedly posted confidential information into the public record.  Following the settlement, Mr. Schneider was criminally prosecuted in the case *United States v. Schneider*, 1:17-CR-00077-SPW, (D. Wyo. filed Sept. 4, 2018) (hereinafter *"Schneider"*).  During that criminal

case, on September 4, 2018, for no good reason,[4] Mr. Schneider publically filed a copy of

witness interview notes from the law firm, Bonner Stinson, LLC, that defended him in the civil

defamation case (hereinafter "Bonner Stinson Interviews").  *See* Ex. C, *Schneider*, ECF # 58-12,

at ECF p. 2.[5, 6]  Mr. Schneider represented to the criminal court that the documents were true and

accurate copies of his attorneys' files from the defense of Dr. Biles' defamation case, stating:

> The following document is from interviews performed by Sarah Thomas,
> paralegal for Bonner Stinson and reflects the quality of healthcare and
> administrative action in the Big Horn County, Wyoming.  **The interviews are
> directly from Ms. Thomas's investigation during the Biles [v.] Schneider
> dispute in 2011/2012**.

*Id.* (emphasis added).[7]  The Bonner Stinson Interviews include notes from interviews with

twenty-six different individuals.  *Id.*  All of the interviews are disparaging of Dr. Biles.  *See id.*

Mr. Schneider's dissemination of the Bonner Stinson Interview notes by filing them as a

meaningless, yet public, exhibit to a criminal proceeding provides a sufficient basis for the Court

to award liquidated damages under the confidentiality clause — but Mr. Schneider continued to

---

[4]      Mr. Schneider filed the Bonner Stinson interviews as an exhibit to his reply brief in
support his motion to stay his sentence. Ex. E, *Schneider*, ECF # 58.  Essentially, Mr. Schneider
argued that his sentence should be stayed because his conviction was likely to be overturned on
appeal due to a ineffective assistance of counsel argument.  *Id.*  In support of that position, Mr.
Schneider argued that his former counsel should "have demonstrated that Defendant Schneider
did not engage in any criminal activity in the *Biles v. Schneider* lawsuit."  *Id.* at 7.  However, the
Bonner Stinson Interviews do not reasonably relate to the issue of whether or not Mr. Schneider
engaged in criminal conduct during the defamation suit.  Moreover, it appears that Mr. Schneider
filed this reply brief *after* the court had already issued its order denying Mr. Schneider's motion
and holding "[b]ecause the defendant's only objection is a claim of ineffective assistance of
counsel, the court determines that the defendant does not qualify for a stay under 18 U.S.C. §
3143(b)(1)(B)." Ex. E, *Schneider,* EFC # 56.
[5]      Pursuant to the Court's order, ECF #71, this exhibit is filed under seal.
[6]      It appears that Mr. Schneider also filed the Bonner Stinson Interviews in other litigation.
*See* ECF # 21, Schneider Answer at ¶ 13 (alleging that the document was also published in the
"bankruptcy proceedings of John H. Schneider in 2014; the subsequent litigation within the
bankruptcy (see Womack v. Schneider, et al, Monday District Bankruptcy Court) in 2015; the
criminal discovery and public arguments, including the current pending Ninth Circuit court
review in U.S.A. v. John H. Schneider, Montana District Court.").
[7]      *But see* Ex. B, RFA 13 (denying that this document is "a true and accurate copy" of notes
created by his attorneys).

publish and disseminate the Bonner Stinson Interviews and widely publicize them.   Mr. Schneider next posted the Bonner Stinson Interviews directly to his website "healthcare-malpractice.com."  Ex. F, Screen Shot 2019-03-05 at 3.04.59PM.

Mr. Schneider later posted to healthcare-malpractice.com a document entitled "Biles Escapes Justice," which quotes directly from the Bonner Stinson Interviews.   Ex. G, Biles Escapes Justice[8]; ECF # 21, Schneider Answer, at ¶ 13 (alleging that the postings on healthcare-malpractice.com contained "paraphrased testimonials"); *compare* Ex. G, Biles Escapes Justice *and* Ex. C, *Schneider*, ECF # 58-12, at ECF p. 4, 8, 33 (demonstrating that "Biles Escapes Justice" quotes from the confidential Bonner Stinson Interviews).[9]

In short, despite signing a confidentiality agreement, Mr. Schneider injected his attorneys' confidential interview notes into the public record and then set out on a campaign to publicize those notes.  Mr. Schneider and Dr. Biles agreed nearly eight years ago that damages for such breaches of the confidentiality clause would be $███████, and Dr. Biles is now entitled to these damages and to a permanent injunction, preventing Mr. Schneider from continuing to publicize information contained in the Bonner Stinson Interviews.

---

[8]     Pursuant to the Court's order, ECF # 71, this exhibit is filed under seal.
[9]     Mr. Schneider posted numerous other documents to the website healthcare-malpractice.com.  This Court previously reviewed these documents and issued a preliminary injunction, requiring Mr. Schneider to remove these materials.  *See* ECF # 19, Order Granting Request for Preliminary Injunction.  While the materials are certainly disparaging to Dr. Biles, for purposes of this Motion, Plaintiff will focus only on the documents divulging confidential matters.

## II.   Legal Standards

**1.   Standards governing summary judgment**

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.
>
> The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett,* 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).
>
> Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute.  *See id.*
>
> * * *
>
> When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

*Nat'l Union Fire Co. of Pittsburgh, PA. v. Toland*, 164 F.Supp.3d 1330, 1333–34 (D. Wyo. 2016).

Importantly, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there is no *genuine* issue of *material* fact." *Daniels v. Kerr McGee Coal Corp.*, 841 F. Supp. 1133, 1134 (D. Wyo. 1993) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## 2.  Standards governing the interpretation of a settlement agreement

"A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract." *Western Mun. Const. of Wyo., Inc. v. Better Living, LLC*, 234 P.3d 1223, 1227 (Wyo. 2010) (quoting *Mueller v. Zimmer,* 124 P.3d 340, 350 (Wyo. 2005)). "The elements are the same as the elements of any contract: offer, acceptance, and consideration, and establishment of the existence of these elements leads the courts to conclude that mutual assent has occurred." *Id.* at 1228. "A compromise and settlement agreement is, also like other contracts, subject to construction as a matter of law." *Id.* Courts "will not look behind a settlement agreement to see who would have prevailed in a dispute out of which the settlement agreement arises. If the settlement agreement itself meets contractual requirements, it will be enforced." *Id.*

To that end, Wyoming applies the following rules of contract interpretation:

The Court's "primary focus in contract interpretation is the parties' intent." *Carlson v. Flocchini Invs.*, 2005 WY 19, ¶ 15, 106 P.3d 847, 854 (Wyo.2005). The "language of the parties expressed in their contract must be given effect in accordance with the meaning which that language would convey to reasonable persons at the time and place of its use." *Moncrief v. Louisiana Land Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993).

In following this guidance, therefore, the first inquiry is whether the contract is clear and unambiguous, and if it is, the Court must confine its review to the four corners of the document to determine the parties' intent. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993). A contract is ambiguous if the agreement is obscure in its meaning because of indefiniteness of expression or because a double meaning is present. *Brockway v. Brockway*, 921 P.2d 1104, 1106 (Wyo. 1996) (quoting *Carlson v. Water Unlimited, Inc.*, 822 P.2d

1278, 1281 (Wyo.1991)). In making such determination, the court considers the
contract as a whole and reads each provision in light of all the others to find the
plain meaning of the words. *Martin v. Farmers Ins. Exchange*, 894 P.2d 618, 620
(Wyo.1995).

In addition, "[c]ommon sense and good faith are leading precepts of contract
construction, and the interpretation and construction of contracts is a matter of
law for the courts." *Double Eagle Petroleum & Min. Cor. v. Questar Exploraion
& Production Co.*, 78 P.3d 679, 681 (Wyo. 2003) (citation omitted). "We have
also recognized that the language of a contract is to be construed within the
context in which it was written, and the court may look to the surrounding
circumstances, the subject matter, and the purpose of the contract to ascertain the
intent of the parties at the time the agreement was made." *Id.* (citing, *Polo Ranch
Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo. 1998)). However, a court
may not consider extrinsic evidence to contradict the plain meaning of an
unambiguous contract, and the intent of the parties, as stated in their agreement,
must be given effect. *J and J Ventures, Inc.*, 859 P.2d at 1271 (citing *Wyoming
Bd. of Certified Public Accountants v. Christensen*, 800 P.2d 853, 856 (Wyo.
1990)).

*Belmont v. BP Am. Prod. Co.*, No. 13-CV-63-F, 2014 WL 11456765, at *3 (D. Wyo. Mar. 13,

2014).

### 3.   Standards governing liquidated damages

Under Wyoming law, liquidated damages clauses are "valid and enforceable, unless the

damages are punitive in nature or the provisions are contrary to public policy."  *Wolin v. Walker*,

830 P.2d 429, 433 (Wyo. 1992).  "The general principle to be applied is that, in the absence of

overreaching or unconscionability, the parties should be left within the framework of the terms

of the agreement that they negotiated."  *McMurray Oil Co. v. Deucalion Research, Inc.,* 842 P.2d

584, 587 (Wyo. 1992); *Studer v. Rasmussen,* 344 P.3d 990, 998 (Wyo. 1959) ("If there is an

express contract in connection with the damages, that contract, of course, must govern.").

Liquidated damages "promote a public policy favoring settlement and avoidance of litigation,

and allow parties to make and live by their own contracts." *Wahlcometroflex, Inc. v. Westar

Energy, Inc.*, 773 F.3d 223, 229 (10th Cir. 2014) (applying Kansas law).

The Wyoming Supreme Court has adopted the Restatement (First) of Contracts § 339 to determine if liquidated damages provisions are enforceable:

> (1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless:
>
> (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
>
> (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

*G.C.I., Inc. v. Haught*, 7 P.3d 906, 910–11 (Wyo. 2000).  When, as here, losses are of a nature that would be difficult to prove, courts are likely to find the amount of liquidated damages to be reasonable.  *Marcam Mortgage Corp. v. Black,* 686 P.2d 575, 581 (Wyo. 1984) ("The greater the difficulty either of proving the loss has occurred or establishing its amount with the requisite certainty, the easier it is to show the amount fixed is reasonable.").

It appears that the Wyoming Supreme Court follows the majority rule, placing the burden on the party challenging a liquidated damages clause to show that the "agreement for liquidated damages was unreasonable in light of the anticipated or actual loss covered by the breach and that the proof of actual losses would not be difficult."  *Id.* at 583; *see id.* at 582 ("[A]s a general rule, where the question is whether a contract provides for liquidated damages or for a penalty, the burden of establishing facts showing that the intention of the parties was other than appears from the face of the contract is on the party claiming such facts."); *Wolin ,* 830 P.2d at 433 ("Nothing in the record substantiates a claim that [the liquidated] damages were punitive in nature.").[10]

---

[10]     *See Wahlcometroflex, Inc.*, 773 F.3d at 229 (applying Kansas law) ("The burden of proving that a liquidated damages clause is in fact a penalty falls on the party challenging the provision."); *Bose Corp. v. Ejaz,* 732 F.3d 17, 26 (1st Cir. 2013) (applying Massachusetts law)

**4. Standards governing permanent injunctions**

"To get a permanent injunction, a party must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1011 (10th Cir. 2018) (internal quotations omitted).  Irreparable harm is shown by "a significant risk that [the plaintiff] will experience harm that cannot be compensated after the fact by money damages." *Id.*  When future damages are difficult to ascertain, the Tenth Circuit holds that the "plaintiff suffers irreparable injury." *Id.* at 1012.  Critically, "[d]amages flowing from anticipated future injury to one's livelihood or business interests are especially difficult to calculate." *Id.* ("because it is so difficult to prove the value of goodwill . . . the potential for the defendant to deal incalculable damage to that good will can constitute irreparable harm.") (internal quotations omitted).

III.   ANALYSIS

The Court should enter partial summary judgment, holding as a matter of law: (1) that Mr. Schneider violated the confidentiality clause by publishing the confidential Bonner Stinson Interviews; (2) that Mr. Schneider's actions trigger liquidated damages of $███████; and (3) that Mr. Schneider is permanently enjoined from disseminating or publicizing the Bonner Stinson Interviews.

---

(enforcing the liquidated damages clause in a settlement agreement and holding that the party arguing that liquidated damages are unreasonable bears the burden of proof on that issue).

1. **Mr. Schneider violated the confidentiality clause by posting information from his attorneys' files into the public record.**

First, Mr. Schneider's publication of the Bonner Stinson Interviews clearly violates the parties' agreement to "keep[] all matters not currently in the public record" confidential.  Mr. Schneider's attorneys' work product falls squarely within the settlement agreement's definition of "confidential."  Indeed, both the Wyoming Rules of Civil Procedure and the Federal Rules of Civil Procedure classify trial preparation materials, such as notes from witness interviews, as confidential materials.  Fed. R. Civ. P. 26(a)(3); Wyo. R. Civ. P. 26(b)(3).  Moreover, the Bonner Stinson Interviews were not published in the public record ("Court files and documents or newspapers") during the defamation case.  *See Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) (demonstrating that the witness interviews were not published in the Court files and documents) [11]; Ex. B, ROG 2 (demonstrating that Mr. Schneider cannot identify any place that "Biles Escapes Justice" existed in the public record prior the execution of the settlement agreement).  Therefore, Mr. Schneider's publication of these materials is a breach of the confidentiality clause.

2. **Mr. Schneider's violations of the confidentiality clause trigger liquidated damages in the amount of $▮▮▮▮.**

Second, Mr. Schneider's violations of the confidentiality clause trigger the clause's liquidated damages provision.

Here, the parties' liquidated damages agreement meets the Restatement's test.  First, the harm caused by a breach of the confidentiality clause is very difficult to accurately reduce to monetary damages.  *See Crowne Inv., Inc. v. United Food and Commercial Workers,* 959 F.

---

[11]     The Court may take judicial notice of its own files.  *Johnson v.* Spencer, -- F.3d --, No. 17-8089, 2020 WL 728245, *16 (10th Cir. Feb. 13, 2020) ("A district court . . . may take judicial notice of its own files and records . . . ."); Federal Rule of Evidence 201(b).

Supp. 1473, 1480 (M.D. Ala. 1997) ("It is usually difficult to determine damages for breach of an agreement to keep a settlement confidential.   It is for that reason that confidentiality agreements often include a provision specifying liquidated damages for breach.").   Dr. Biles is a practicing orthopedic surgeon in Park County, Wyoming.   The Bonner Stinson Interviews have now been in the public record since at least September 2018, and it is impossible to know how many individuals have reviewed these documents or have heard about them second hand. Perhaps even more difficult is the challenge of reducing the value of a person's reputation to monetary value.

To address these issues, the parties agreed at the time of signing the Settlement Agreement on liquidated damages representing value of confidentiality going forward.   Thus, at the time of contracting, the parties' estimate of $███████ was a "reasonable forecast of just compensation" for the harm likely to be caused by the release of confidential information.   The Restatement's comment c is instructive on this point:

> Where the amount of loss or harm that has been caused by a breach is uncertain and **difficult of estimation in money**, experience has shown that the **estimate of a court or jury is no more likely to be exact compensation than is the advance estimate of the parties themselves**. Further, the enforcement of such agreements saves the time of courts, juries, parties, and witnesses and reduces the expense of litigation. In such cases, if it is not shown that the principle of compensation has been disregarded, the liquidation by the parties is made effective.

Restatement (First) of Contracts § 339 (1932) (emphasis added).   Following this analysis, other courts hold that liquidated damages provisions are enforceable for the breach of a settlement agreement's confidentiality clause.   *See Baella-Silva v. Hulsey,* 454 F.3d 5, 12 (1st Cir. 2006) (holding that a district court did not "abuse its discretion in assessing $50,000 in liquidated damages" after a party publically filed a confidential settlement agreement, which was sealed by the clerk after only one hour); *Healix Infusion Therapy, Inc. v. Bellos,* No. 11-02-00346-CV, 2003 WL 22411873, * 3 (Tex. Ct. App. Oct. 23, 2003) (enforcing a $10,000 liquidated damages

provision for the breach of a confidentiality clause); *see also Moreno v. Tringali*, No. 14-4002 (JBS/KMW), 2017 WL 2779746, * 11 (D. N.J. June 27, 2017) (awarding liquidated damages of $55,000 for breaches of a settlement agreement's non-disparagement clause); *Omicron Systems, Inc. v. Weiner,* 860 A.2d 554, 565 (Penn. 2004) (awarding liquidated damages of $238,000 for breach of a covenant not to compete).

Accordingly, Plaintiff requests that the Court award $███████ in liquidated damages for Mr. Schneider's breaches of the confidentiality clause.

3.  **The Court should issue a permanent injunction, requiring Mr. Schneider to refrain from disseminating or publishing confidential information, such as the Bonner Stinson Interviews.**

Finally, in order to prevent future harm to Dr. Biles, Plaintiff respectfully requests that the Court extend its preliminary injunction, to permanently enjoin Mr. Schneider from disseminating or publicizing the confidential materials at issue in this case.  Absent injunctive relief, Plaintiff fears that Mr. Schneider may continue to publicize information from the Bonner Stinson Interviews.  This would result in irreparable harm to Dr. Biles' professional and personal reputation.

The Court has already addressed the need for equitable relief in this case, holding an evidentiary hearing and finding that three out of the four elements required for a permanent injunction were met.  ECF # 19, Order on Prelim. Inj. at 2 (setting forth the elements for a preliminary injunction). The Court found: (1) that Dr. Biles faced a threat of irreparable harm; (2) that Dr. Biles' interest in enforcing the settlement agreement outweighed Mr. Schneider's interest in breaching the agreement; and (3) that public had no interest in access to these statements.  *Id.* at 2-3.  If the Court agrees that Mr. Schneider's dissemination of Bonner Stinson Interviews violates the confidentiality clause, the final element, success on the merits, is also

satisfied. *See Prarie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir. 2007) (explaining that the standard for a permanent injunction is "remarkably similar to the standard for a preliminary injunction" and "[t]he only measurable difference between the two is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits.").

Therefore, Plaintiff respectfully requests that the Court extend its preliminary injunction, ordering that Mr. Schneider refrain from future posting, publicizing, or disseminating of confidential information, including the Bonner Stinson Interviews, information contained in the Bonner Stinson Interviews, or materials quoting or referencing the Bonner Stinson Interviews.

## IV.   CONCLUSION

In 2012, Dr. Biles and Mr. Schneider entered a settlement agreement to resolve Mr. Schneider's defamatory publications against Dr. Biles.   The parties expressly agreed to a confidentiality provision, with liquidated damage of $██████.   The clear intent of the confidentiality clause was to avoid further harm to the parties' reputations.  Despite agreeing to the confidentiality and liquidated damages provisions, on multiple occasions and in multiple formats Mr. Schneider chose to publish damaging and confidential notes from his attorneys' files.

Therefore, Dr. Biles respectfully requests that this Court grant partial summary judgment and hold as a matter of law: (1) that Mr. Schneider breached the confidentiality clause; (2) that Mr. Schneider is liable for these breaches in the amount of $██████; and (3) that Mr. Schneider is permanently enjoined from posting, publicizing, or disseminating the Bonner Stinson Interviews, information contained in the Bonner Stinson Interviews, or materials quoting or referencing the Bonner Stinson Interviews.

Dated this 26th day of March, 2020.

/s/ Sarah A. Kellogg
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2020 I electronically filed the foregoing Motion

for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will

send notifications of such filing to the following addresses:

> Adam H. Owens
> Gregory G. Costanza
> Granite Peak Law LLC
> PO Box 635
> Bozeman, MT 59771
> 406-530-9119
> adam@granitepeaklaw.com
> gregory@granitepeaklaw.com
>
> *Attorneys for MedPort, LLC*

I also served all materials filed under seal to the above address by email.

And also, I certify this, and all materials filed under seal, was sent via U.S. Mail to:

> John H. Schneider, Jr.
> Reg # 64084298
> Metropolitan Correction Center
> 808 Union Street
> San Diego, CA 92101
>
> *Pro Se*

> /s/ Sarah A. Kellogg _____
> R. Daniel Fleck (WSB # 6-2668)
> M. Kristeen Hand (WSB # 6-3544)
> Sarah A. Kellogg (WSB # 7-5355)
> THE SPENCE LAW FIRM, LLC
> 15 South Jackson Street
> P.O. Box 548
> Jackson, WY 83001
> (307) 733-7290
> (307) 733-5248 (Fax)
> fleck@spencelawyers.com
> hand@spencelawyers.com
> kellogg@spencelawyers.com