R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, JR., M.D.,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN HENRY SCHNEIDER, JR. and MEDPORT, LLC,<br><br>    Defendants. | Civ. No. 19-CV-48-F |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MEDPORT, LLC'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM**

Plaintiff Jimmie G. Biles, Jr. M.D., by and through his counsel, R. Daniel Fleck, M. Kristeen Hand, and Sarah A. Kellogg of THE SPENCE LAW FIRM, LLC, hereby files his Response in Opposition to Defendant MedPort, LLC's Motion for Extension of Time to Respond to Plaintiff's Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim, and states as follows:

Plaintiff Jimmie Biles filed a Motion for Partial Summary Judgment on March 26, 2020, asking the Court to find that Defendant John H. Schneider breached the confidentiality clause in to the parties' Settlement Agreement.  ECF # 74, Motion for Partial Summary Judgment.  Giving Mr. Schneider the benefit of the three-day mailing rule, the **deadline for Mr. Schneider to respond to that motion expired on April 13, 2020** — but Mr. Schneider filed no opposition and no motion for an extension.  U.D.S.D.C.L.R. 7.1 (b)(2).  **Defendant MedPort, LLC's response was due seven days ago, on April 9, 2020** — MedPort also failed to file a response and waited almost a week to file the present Motion.  *See id.*

MedPort now moves the Court for a retroactive thirty-seven (37) day extension of its own response deadline (through Saturday, May 16, 2020) *and* for an extension of Mr. Schneider's response deadline (also through Saturday, May 16, 2020), based on MedPort's misunderstanding that these deadlines have not yet expired.  *See* ECF # 76, Motion for Extension, at 1 (stating "MedPort has twenty-one days to respond to this Motion . . ."); *but see* U.S.D.C.L.R. 7.1(b)(2) (granting parties fourteen (14) days to oppose a dispositive motion).  Because MedPort has not addressed Federal Rule of Civil Procedure 6(b)(1)(B)'s "excusable neglect" requirement and has not established good cause for the proposed extension, Plaintiff respectfully opposes this Motion.

I.   Legal Standards

**Local Rule 7.1(b)(2)** states the deadline for responding to a dispositive motion is fourteen (14) days after the motion is filed.  The Court may "consider the failure of a responding party to file a response within the fourteen (14) day time limit . . . as a confession of the motion."  U.S.D.C.L.R. 7.1(b)(2)(A).

MedPort argues for an extension under **Federal Rule of Civil Procedure 6(b)**'s good cause standard.  However, Rule 6(b)(1)(B), states that an already expired deadline may only be extended based on a finding of "good cause" <u>and</u> "excusable neglect."  *Utah Republican Party v.*

2

*Herbert,* 678 F. App'x 697, 700 (10th Cir. 2017) ("In other words, an extension can only be granted for good cause regardless of when the extension was requested.  But if the extension request was filed after the original deadline, the court must also determine whether the failure to timely meet the deadline was due to excusable neglect.").

The Tenth Circuit describes the interrelationship of the "good cause" and "excusable neglect" standards as follows:

> " '[G]ood cause' requires a greater showing than 'excusable neglect.' " *Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 175 (10th Cir. 1996). The two standards, although "interrelated," are not identical. *Id*. Excusable neglect requires "some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified." *Id*. (internal quotation marks omitted). We have said that "[w]ithout attempting a rigid or all-encompassing definition of 'good cause,' it would appear to require *at least as much* as would be required to show excusable neglect." *Id*. (internal quotation marks omitted). "Good cause comes into play in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant." *Bishop*, 371 F.3d at 1207 (internal quotation marks omitted) (interpreting good cause for an extension of time to appeal under Fed. R. App. P. 4(a)(5)). It requires the moving party to show **the deadline "cannot be met despite the movant's diligent efforts**." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (brackets and internal quotation marks omitted) (interpreting good cause to modify a scheduling order under Fed. R. Civ. P. 16(b)(4))

*Utah Republican Party,* 678 F. App'x at 700–01 (emphasis added).

As used in Rule 6(b)(1)(B), excusable neglect is a "somewhat elastic concept." *Pioneer Inv. Serv. Co. v. Brunswick Associ. Ltd. P'ship,* 507 U.S. 380, 392 (1993).  Nevertheless, "[i]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)." *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (10th Cir. 2005); *see U.S. v. Torres,* 372 F.3d 1159, 1163–64 (10th Cir. 2004) ("[M]isinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief unless the word 'excusable' is to be read out of the rule.").

II.   ANALYSIS

Here, MedPort has not identified any facts to show how excusable neglect caused MedPort and Mr. Schneider to miss their respective response deadlines.[1] Rather, the sole basis for MedPort's motion is that the COVID-19 outbreak has impeded MedPort's Counsel's ability to communicate with Mr. Schneider, who is incarcerated. While Plaintiff is sympathetic to the difficulties created by the COVID-19 outbreak, the outbreak does not justify retroactively extending Defendants' response deadlines under the good cause or excusable neglect standards.

First, it is not clear why the ability to communicate with counsel would impact Mr. Schneider's timely response to Plaintiff's Motion for Partial Summary Judgment because Mr. Schneider has elected to defend himself in this action *pro se.* To the extent, that Mr. Schneider was intending to rely on counsel to respond to this Motion, as explained below, Counsel should have timely filed a request for extension on Mr. Schneider's behalf. Defendants offer no facts to show that Mr. Schneider was confused about his response deadline or to explain how the COVID-19 outbreak in any way impacted Mr. Schneider's ability to respond on his own behalf.

It is also unclear how COVID-19 is to blame for MedPort's failure to timely seek an extension of the deadline. The COVID-19 outbreak was well underway on March 27, 2020, when Plaintiff filed his Motion for Partial Summary Judgment, so presumably MedPort could have anticipated difficulties posed by the change in Bureau of Prisons ("BOP") policies and could have timely conferred with Plaintiff and/or timely moved the Court for an extension.

---

[1] To the extent MedPort believes that its response is required within twenty-one (21) days of the date Plaintiff filed his motion — that misunderstanding of the local rules not meet the requirements for excusable neglect. The local rules clearly state that a response to a motion for summary judgment is due within fourteen (14) days of the date of filing. U.D.C.L.R. 7.1(b)(2) ("Each party opposing the motion shall have fourteen (14) days from the filing of the motion to file a brief containing a short, concise statement of the argument and authorities in opposition to the motion.").

MedPort identifies no facts to explain why it waited until nearly a week after its response deadline expired to raise these issues with the Court.

Moreover, aside from citing to a change in BOP policy, MedPort has not made a factual showing that its communications with Mr. Schneider were actually impeded, so as to prevent MedPort from filing a timely response. For example, MedPort describes no instances when it attempted to contact Mr. Schneider but was denied access to him. Instead, MedPort cites generally to BOP policy changes, such as limits to in-person visits and reduced access to CorrLinks. However, according to the BOP materials cited by MedPort, it appears that counsel continues to enjoy phone access to Mr. Schneider. The BOP policies specifically state, "**access to legal counsel remains a paramount requirement and will be accommodated to the maximum extent practicable**." https://www.bop.gov/coronavirus/covid19_status.jsp (emphasis in original). The policies further state "confidential calls will be allowed in order to ensure access to counsel" and ordinary inmate "telephone system minutes will be **increased** by 500 minutes . . . ." *Id.* (emphasis added). In short, MedPort relies on theoretical ways that COVID-19 related policy changes could impact its ability to communicate with Mr. Schneider — but MedPort offers no examples of how these policies have actually impacted its ability to timely respond to Plaintiff's Motion for Partial Summary Judgment.

Finally, even assuming *arguendo* that counsel was prevented from communicating with Mr. Schneider, MedPort's response to Plaintiff's Motion for Partial Summary Judgment would most likely center on *legal* arguments that do not require substantial input from Mr. Schneider. After all, the facts that provide the basis for Plaintiff's motion are not disputed by Mr. Schneider: (1) the parties signed a settlement agreement and the parties have stipulated to the authenticity of the agreement attached to Plaintiff's motion (*see* ECF # 74-2, at RFA 1, 5); (2) the settlement

5

agreement contained a confidentiality clause, the content of which is not in dispute (*see id.* at RFA 1); and (3) Mr. Schneider published interviews from his attorneys' files on the website healthcare-malpractice.com and publically filed these documents on PACER (*See* ECF # 74-3, ECF # 74-6).

There is no doubt that COVID-19 is severely impacting communications all around the country and making the practice of law more difficult. Plaintiff is sympathetic to the serious impact this must have on Mr. Schneider as an inmate in federal prison. Nevertheless, MedPort has not carried its heavy burden under Rule 6(b)(1)(B) for retroactively extending Defendants' response deadlines.

### III.   CONCLUSION

MedPort's request for an extension comes nearly a week after MedPort's deadline to respond to Plaintiff's Motion for Partial Summary Judgment expired and days after Mr. Schneider's deadline expired. Because MedPort has not stated any facts to support a showing of good cause, and has failed to address Rule 6(b)(1)(B)'s excusable neglect standard, Plaintiff respectfully requests that the Court deny this Motion and enter Summary Judgment in his favor.

Dated this 16th day of April, 2020.

  /s/ Sarah A. Kellogg
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Response in Opposition to Defendant MedPort, LLC's Motion for Extension of Time to Respond to Plaintiff's Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim with the Court using the CM/ECF system which will send notifications of such filing to the following addresses:

>Adam H. Owens
>Gregory G. Costanza
>Granite Peak Law LLC
>PO Box 635
>Bozeman, MT 59771
>406-530-9119
>adam@granitepeaklaw.com
>gregory@granitepeaklaw.com
>
>*Attorneys for MedPort, LLC*

And also, I certify this was sent via U.S. Mail to:

>John H. Schneider, Jr.
>Reg # 64084298
>Metropolitan Correction Center
>808 Union Street
>San Diego, CA 92101
>
>*Pro Se*

Dated this 16th day of April, 2020.

>   /s/ Sarah A. Kellogg
>R. Daniel Fleck (WSB # 6-2668)
>M. Kristeen Hand (WSB # 6-3544)
>Sarah A. Kellogg (WSB # 7-5355)
>THE SPENCE LAW FIRM, LLC
>15 South Jackson Street
>P.O. Box 548
>Jackson, WY 83001
>(307) 733-7290
>(307) 733-5248 (Fax)
>fleck@spencelawyers.com
>hand@spencelawyers.com
>kellogg@spencelawyers.com