R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street, P.O. Box 548
Jackson, WY 83001
(307) 733-7290/ (307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., M.D., <br><br> Plaintiff, <br><br> v. <br><br> JOHN HENRY SCHNEIDER, JR.; and MEDPORT, LLC, <br><br> Defendants. | Civ. No. 19-CV-48-F <br><br> **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM** |

Plaintiff, by and through his counsel, R. Daniel Fleck, M. Kristeen Hand, and Sarah A. Kellogg of THE SPENCE LAW FIRM, LLC, hereby files his Reply in Support of Plaintiff's Motion for Partial Summary Judgment, and states as follows:

Plaintiff moved for partial summary judgment, asking the Court to hold that Defendant John H. Schneider violated the parties' confidentiality agreement when he publically filed in bankruptcy court and then re-published on the internet interviews conducted by his attorneys in the course of defending Mr. Schneider in the underlying litigation (hereinafter "Bonner Stinson Interviews"). In their joint response, Defendants MedPort, LLC ("MedPort") and Mr. Schneider do not dispute that Mr. Schneider filed the interviews on PACER. However, without citing to

any evidence, Defendants misrepresent that Mr. Schneider only republished "select excerpts" of the interviews on healthcare-malpractice.com.  In reality, Mr. Schneider posted a link on healthcare-malpractice.com to a document titled "recreated-from-disc-from-Bonner-Stinson-on-3.1.2015.pdf," which is <u>identical</u> to the interviews that Mr. Schneider published on PACER.

Defendants further argue: (1) that some of the information contained in the Bonner Stinson Interviews existed in the public record before the parties executed the Settlement Agreement — although it is undisputed that the interviews themselves did not exist in the public record; (2) that the phrase "public record," as used in the confidentiality clause, should be read to include all documents related to the underlying litigation, regardless of whether they were made public in court proceedings; (3) that the "Biles Escapes Justice" article falls outside the scope of the confidentiality clause; (4) that the litigation privilege shields Mr. Schneider from liability for publically filing the interviews in his criminal case — although Defendants do not argue that the litigation privilege shields Mr. Schneider's reproduction of the interviews on healthcare-malpractice.com; (5) that the liquidated damages clause is unenforceable; and (6) that the Court may not award injunctive relief because there is no duration term to the agreement.  None of these arguments raise factual questions for a jury or raise a valid legal defense to Plaintiff's request for partial summary judgment.

1. **Mr. Schneider posted the <u>complete</u> Bonner Stinson Interviews on healthcare-malpractice.com.**

Defendants' response is incorrect to the extent that it baldly asserts (without citing to testimony or evidence) that "only brief, select excerpts from these lengthy 64 pages of interviews were published on healthcare-malpractice.com." ECF # 84, at 3.  To the contrary, as of March 1, 2019, healthcare-malpractice.com included a link to a document titled "recreated-from-disc-

from-Bonner-Stinson-on-3.1.2015.pdf." *See* Ex. A, Jordan Aff., at Ex. 1 (filed under seal[1]); ECF # 74-6.  A side by side comparison of the document "recreated-from-disc-from-Bonner-Stinson-on-3.1.2015.pdf" (Ex. A, at Ex. 1) and the Bonner Stinson Interviews as filed in Mr. Schneider's criminal proceeding (ECF # 74-3 (filed under seal)), demonstrates that with the exception of the PACER filing stamp and the page numbers, the documents are identical.  Ex. A, Jordan Aff., at ¶ 3.  Further, the article, "Biles Escapes Justice" (ECF # 74-7 (filed under seal)), which was published on healthcare-malpractice.com, quotes directly from the Bonner Stinson Interviews.

   2. **It is undisputed that the Bonner Stinson Interviews did not exist in the public record at the time the Settlement Agreement was executed.**

Next, Defendants argue that because Mr. Schneider made allegations in public filings in the underlying litigation that were similar to *some* of the information contained in *some* of the Bonner Stinson Interviews, the Court should treat the interviews themselves as having existed in the public record.  Defendants have produced no evidence that the actual interview notes were ever filed, produced in discovery, or made public in any way during the underlying litigation.  The Settlement Agreement does not contemplate the disclosure of the interviews just because Mr. Schneider disclosed rumors about the substance of the interviews while trying to defend the underlying defamation claims.

Further, even if *some* of the information contained in the Bonner Stinson Interviews existed in the public record, Defendants have produced no evidence that *all* of the information contained in the interviews existed in the public record.  The Bonner Stinson Interviews include notes from interviews with twenty-six different individuals.  Defendants cherry-pick stories or themes contained in the interviews to compare to the underlying pleadings but make no effort to

---

[1]  Pursuant to the Court's March 23, 2020 Order, (ECF # 71) a true and accurate copy of "recreated-from-disc-from-Bonner-Stinson-on-3.1.2015.pdf." is filed under seal, accompanied by the affidavit of Lene Jordan.

show that all of the salacious details included in the interviews also existed in the public record. Thus, while the materials quoted in Defendants' un-sealed response brief may have furthered Mr. Schneider's mission to damage Dr. Biles' reputation, they present no issue of fact for a jury.

### 3. No reasonable interpretation of the phrase "public record" includes all documents "related to the underlying litigation."

Second, Defendants argue that the confidentiality clause's public records exemption, which specifically excludes "court documents" from the confidentiality clause, broadly encompasses "anything that was generated as a 'document' related to the underlying litigation." ECF # 84. at 10. Defendants then assert that because the Bonner Stinson Interviews are "devoid of any attorney 'work product,'" they fall within the Settlement Agreement's definition of "court documents." *Id.* at 9. The logic supporting this argument is not entirely clear.[2] Nevertheless, it illustrates an important point of agreement — at a minimum, the Settlement Agreement contemplated that attorney work product would remain confidential. Thus, even under Defendants' broad definition of "court documents," the witness interviews are confidential.[3]

But setting aside the discussion of whether the Bonner Stinson Interviews are confidential work product, Defendants' interpretation of the phrase "court documents" to include all documents "related to the underlying litigation," exceeds any reasonable interpretation of the confidentiality clause. Rather, the plain meaning of "court documents" is documents in

---

[2]   Given how broadly Defendants read the phrase "court documents," its not clear how they reason that attorney work product falls outside of the confidentiality clause. However, Plaintiff agrees that the Settlement Agreement contemplates that attorney work product would remain confidential.

[3]   Defendants include a lengthy discussion of whether the Bonner Stinson Interviews are properly categorized as attorney work product and whether they would have been subject to disclosure in the Underlying Litigation. Without traveling too far into this rabbit hole, it is worth noting that the interviews do not lose their work product status simply because they were recorded by a paralegal. *See* Professor John M. Burman, The Work Product Doctrine, Wyo. Law., April 2006, at 38, 40 (explaining that "many courts have concluded that there is no distinction between lawyer and non-lawyer work product.").

possession of the Court.  The clear intent of the parties was to ensure that damaging documents previously unavailable to the public, remained confidential.  The public record exemption only applies to the documents that were actually available to the public, be it through court documents or newspapers, at the time the Settlement Agreement was executed.

4. **The Confidentiality Clause unambiguously encompasses the Bonner Stinson Interviews and the interview quotes contained in the "Biles Escapes Justice" article.**

Defendants next argue that the confidentiality clause is overly broad and ambiguous because the phrase "all matters," threatens "to silence all speech by Schneider that even mentions Biles' name."  ECF # 84, at 11.  Defendants illustrate this argument by applying the confidentiality clause to the phrase "Biles Escapes Justice."  ECF # 84, at 11.  But Defendants misunderstand — Plaintiff does not contend that the "Biles Escapes Justice" article violates the confidentiality clause because of its *title*.  Instead, Plaintiff contends that the article violates the confidentiality clause *because it quotes directly from the Bonner Stinson Interviews*.  The use of "all matters" does not render the clause ambiguous as to the Bonner Stinson Interviews, and Defendants do not make that argument, so the Court need not consider this argument.

Nevertheless, the phrase "all matters" is not ambiguous — Defendants' own response brief proposes a straightforward definition ("the events or circumstances of a particular situation."), with which Plaintiff largely agrees.  *See* ECF # 84, at 12 (referring to the Merriam-Website).  The definition of "matters" also includes the "subject or substance of a . . . writing."  *Matters Definition,* Merriam-webster.com, https://www.merriam-webster.com/dictionary/matters (last visited May 23, 2020).  When this plain meaning of "matters" is substituted into the confidentiality clause, it is clear that the clause does not silence Mr. Schneider from "mention[ing] Biles' name."  ECF # 84, at 11.  Rather, Mr. Schneider agreed not to mention Dr. Biles in connection with an "event, circumstance, situation" or "writing" that

Reply in Support of Motion for Partial Summary Judgment     5

he learned of during the underlying litigation, not otherwise in the public record. The salacious stories and information contained in the Bonner Stinson Interviews easily meet this test.

5. **The absolute litigation privilege does apply because: (1) Schneider re-published the interviews outside of any litigation; (2) the privilege does not extend to contractual liability; and (3) there was no litigation purpose to Schneider's filing of the interviews in his criminal case.**

Defendants argue that Mr. Schneider is absolutely immune from liability for his posting of the Bonner Stinson Interviews because of a "litigation privilege." The Court need not address this issue — even if the litigation privilege provided liability immunity to Mr. Schneider when he filed the Bonner Stinson Interviews in his criminal case (which it does not), Defendants do not argue that the privilege shields Mr. Schneider's reproduction of the interviews on healthcare-malpractice.com. *See* ECF # 74-6; Ex. A, Jordan Aff. at Ex. 1. Moreover, the litigation privilege does not apply to Mr. Schneider's decision to voluntarily file the interviews in his criminal case because: (1) the privilege only applies to *tort* liability (such as defamation or libel claims), not *contract* liability; and (2) the privilege only applies if there is a litigation purpose to the defamatory filing.

Although Defendants cite to numerous cases that apply the litigation privilege as a defense to a breach of contract action, the Defendants do not cite, and Plaintiff cannot locate, any Wyoming cases applying the privilege so broadly. *See AKH Co., Inc. Universal Underwriters Ins. Co.,* 429 F.Supp. 536 (D. Kan. 2019) ("the litigation privilege applies to immunize certain statements from *tort* liability.") (emphasis in original). Even the few cases cited by Defendants fail to broadly apply the privilege as a defense to *all* breach of contract actions. For example, in *Ellis v. Kaye-Kibbey,* the Western District of Michigan applied the privilege to a breach of contract claim where the confidential information was disclosed "to comply with a subpoena." 581 F.Supp.2d 861, 881 (W.D. Mich. 2008). The court did not address whether the privilege

Reply in Support of Motion for Partial Summary Judgment                                                      6

would apply if the confidential information had been disclosed voluntarily.  *Id.*  The Court should decline to extend Wyoming's litigation immunity into a contract action.

Further, even assuming for argument's sake that the litigation privilege applies in contract actions, there was no litigation purpose to Mr. Schneider's filing of the Bonner Stinson Interviews in his criminal sentencing proceeding.  Defendants claim that the Bonner Stinson Interviews were related to Mr. Schneider's criminal sentencing because the interviews tended to refute the Judge Susan P. Watters' findings that Mr. Schneider engaged in "criminal thinking" in the Biles litigation.  ECF # 84, at 14.  This argument is misleading — Judge Watters remarked that Mr. Schneider engaged in "criminal thinking" when he bribed witnesses in the underlying litigation and when he failed to disclose assets in his bankruptcy.  *See* Ex. B, Sentencing Tr. at 55 (referencing the facts set forth in *Board of Professional Responsibility v. Stinson,* 337 P.3d 401 (Wyo. 2014)) & 56 ("[Y]ou exhibited a real lack of respect for legal process, for the law, for -- you know, you talk about being a man of honor.  Well, when you take an oath to tell the truth and then you lie, that's not honorable, Dr. Schneider."); 56–57 ("[B]y lying to the trustee, you lie to the Court and cause[d] th[e] bankruptcy estate to incur hundreds of hours of effort to try to locate all of your assets.").  Mr. Schneider's character — not Dr. Biles' character — was at issue in the sentencing hearing, and the interviews in no way relate to Judge Watters' determinations about Mr. Schneider's "level of criminal thinking" and "desire . . . to defraud [his] creditors."  *Id.* at 57.

6. **Defendants have not carried their burden to show that the liquidated damages clause is not a reasonable pre-estimate of loss.**

Defendants also argue that the liquidated damages clause is unenforceable because it is not a genuine pre-estimate of loss.  Defendants overlook that it is *their burden* to show the "agreement for liquidated damages was unreasonable in light of the anticipated or actual loss

covered by the breach and that the proof of actual loss would not be difficult." *See Marcam Mortgage Corp. v. Black*, 686 P.2d 575, 583 (Wyo. 1984). The only attempt Defendants make to tackle this burden is a bald assertion that "damages arising from the breach of the Settlement Agreement [are] readily calculable through an expert report analyzing business loss." ECF # 84, at 14. Defendants do not cite to any testimony or evidence explaining how such business loss might be accurately measured. Nor do Defendants explain why they believe that Dr. Biles' contract damages would be limited to his business loss.

Liquidated damages preserve judicial resources by avoiding the need for a jury determination of damages that are not readily susceptible to accurate estimation. *See Wahlcometroflex, Inc. v. Westar Energy, Inc.*, 773 F.3d 223, 229 (10th Cir. 2014). Reputation damage is inherently difficult to reduce to numerical measures. Fortunately, the parties determined the appropriate remedy in the event of a breach of the confidentiality clause, and "the parties should be left within the framework of the terms of the agreement that they negotiated." *See McMurray Oil Co. v. Deucalion Research, Inc.*, 842 P.2d 584, 587 (Wyo. 1992). There is no need to waste judicial resources determining the proper amount of damages in this case.

7. **A permanent injunction is necessary to protect Dr. Biles from future harm if Mr. Schneider decides to simply re-publish the Bonner Stinson Interviews at the close of this case.**

Finally, Defendants argue that a permanent injunction should not be issued because: (1) injunctive relief may only be issued in the absence of monetary damages; and (2) the Settlement Agreement has no specific duration term. These arguments misstate the law. Also, as a practical matter, absent a permanent injunction, Dr. Biles' only recourse if Mr. Schneider republishes the interviews at the close of this case, would be repeated litigation to enforce liquidated damages.

First, there is no rule against awarding injunctive relief in addition to monetary relief, such as liquidated damages. To the contrary, courts routinely award injunctive relief to protect a

person's professional goodwill, "because it is so difficult to prove the value of goodwill" and "incalculable damage to that good will can constituted irreparable harm." *Husky Ventures, Inc. v. B55 Invest., Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018). There is nothing inconsistent about enforcing the liquidated damages clause to compensate Dr. Biles for the harm already caused by the breaches of the confidentiality clause, and also, granting injunctive relief to protect against future harm if Mr. Schneider simply republishes the interviews at the close of this case.

Similarly, Defendants argue that the confidentiality clause cannot be enforced through injunctive relief because the perpetual nature of the Settlement Agreement renders it terminable at will. To support this argument, Defendants cite to Wyoming case law holding that perpetual *employment* contracts are terminable at will. ECF # 84, at 16.[4] But Defendants have not cited, and Plaintiff cannot locate, any analogous law allowing for termination at will of a perpetual settlement agreement. *See* 23 Williston on Contracts § 63:2 (4th ed.), at n. 1 ("promises of perpetual forebearance" may "be specifically enforced at law."). Indeed, it cannot be the case that *all* perpetual contracts are terminable at will. Otherwise, for example, sellers of real property could simply terminate their contracts and reclaim real estate at their will. By the same logic, here, Dr. Biles would be able to terminate, at his will, his agreement to release Mr. Schneider from the underlying defamatory conduct.

---

[4]    *See Jewell v. Big Horn Hosp. Dist.*, 953 P.2d 135, 138 (Wyo. 1998) ("Under Wyoming's **employment jurisprudence**, employment of indefinite duration is employment which may be terminated at the will of either party for any or no reason.") (emphasis added); *Police Protective Ass'n of Casper v. City of Casper,* 575 P.2d 1146, 1149 (Wyo. 1978) (addressing the perpetual nature of a collective bargaining agreement). Similarly, Defendants cite to the case *Mariano & Associates, P.C. v. Board of County Com'rs of Sublette County,* in which the Wyoming Supreme Court held that a county did not have the statutory authority to enter a contract that extended "beyond the term of office of the governmental decision makers." *See* 737 P.3d 323, 329 (Wyo. 1987).

There is simply no legal support for Defendants proposed rule that *all* perpetual contracts (i.e. all settlement agreements) are terminable at will, and thus unenforceable through injunctive relief. The Court has already found that nearly all of the elements for a permanent injunction are met. ECF # 19. Mr. Schneider agreed to refrain, indefinitely, from disclosing confidential matters from the underlying litigation. The Court should hold him to that promise by ordering Mr. Schneider not to further publish or disclose the Bonner Stinson Interviews.

I. CONCLUSION

There is no question of fact that Mr. Schneider publically filed the Bonner Stinson Interviews in his criminal case and also reproduced the interviews on his website healthcare-malpractice.com. There is no reasonable interpretation of the contract that would render the interviews anything other than confidential — they were never filed in the underlying defamation case and remained confidential work product until Mr. Schneider made the interviews public. Fortunately, the Settlement Agreement sets forth a clear remedy in the event of a breach of the confidentiality clause. Here, the parties need not waste judicial resources on a jury trial to determine the proper amount of damages. Rather, the Court should award liquidated damages and enjoin Mr. Schneider from further disseminating or publicizing the Bonner Stinson Interviews.

Dated this 26th day of May, 2020.

/s/ Sarah A. Kellogg
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290/ (307) 733-5248 (Fax)
fleck@spencelawyers.com

hand@spencelawyers.com  
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2020 I electronically filed the foregoing Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following addresses:

> Adam H. Owens
> Gregory G. Costanza
> Granite Peak Law LLC
> 201 W. Madison Ave., Ste. 450
> Belgrade, MT 59714
> adam@granitepeaklaw.com
> gregory@granitepeaklaw.com
>
> *Attorneys for MedPort, LLC & Limited Scope Attorneys for John H. Schneider*

Copies of the sealed exhibits were also sent by mail to the above address.

And also, I certify this was sent via U.S. Mail to:

> John H. Schneider, Jr.
> BOP # 64084298
> 551 S. 35th St.
> San Diego, CA 92113
>
> *Pro Se*

                                              /s/ Sarah A. Kellogg
                                              R. Daniel Fleck (WSB # 6-2668)
                                              M. Kristeen Hand (WSB # 6-3544)
                                              Sarah A. Kellogg (WSB # 7-5355)
                                              THE SPENCE LAW FIRM, LLC
                                              15 South Jackson Street
                                              P.O. Box 548
                                              Jackson, WY 83001
                                              (307) 733-7290
                                              (307) 733-5248 (Fax)
                                              fleck@spencelawyers.com
                                              hand@spencelawyers.com
                                              kellogg@spencelawyers.com