FILED

4:05 pm, 5/28/20

U.S. Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

JIMMIE G. BILES, JR., M.D.,

      Plaintiff,

      v.

JOHN H. SCHNEIDER, JR. and
MEDPORT, LLC,

      Defendants.

Civ. No. 2:19-CV-00048-NDF

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL MEDPORT, LLC TO RESPOND TO DISCOVERY

THIS MATTER comes before the Court upon Plaintiff's Motion to Compel Medport, LLC to Respond to Discovery [Doc. 81], which was filed on April 23, 2020. Medport, LLC ("Medport") filed its response on May 8, 2020 [Doc. 82], and Plaintiff filed a reply on May 18, 2020 [Doc. 83].[1] The Court has now fully considered Plaintiff's Motion and, for the reasons set forth herein, finds that the Motion should be GRANTED.

## BACKGROUND

This action arises out of an effort to enforce a contract ("the Settlement Agreement") that formalized a settlement agreement in a prior action where Defendant

---

[1] Pursuant to Local Rule 7.1(b)(1)(B), Medport's response was due on May 7, 2020, but Medport filed the response one day late without requesting permission from the Court or from opposing counsel. *See* ECF_83 at 2, n.1. However, Plaintiff states Medport's response was filed on May 11, 2020. *Id.* Plaintiff proceeded to file its reply on May 18, 2020, presumably believing that it was timely filing the reply within seven days of the response—based on the mistaken belief that Medport's response was filed on May 11, 2020. *Id.* Therefore, both Medport and Plaintiff filed briefs one business day after their respective deadlines. Local Rule 7.1(b)(1)(B) states that the Court *may* consider failure to file a response within fourteen days a confession of the motion. However, the local rules do not specify what the Court may do when a party files a reply brief later than seven days after the filing of the response. *See* U.S.D.C.L.R. 7.1(b)(1)(C). Because of the COVID-19 crisis, which has understandably led to a disruption in workflow that can cause inadvertent filing errors by counsel, the Court will proceed to overlook the mistakes of both counsel in this Motion. The Court will not treat Defendant's belated response as a confession of the Motion and the Court will use Plaintiff's reply in its analysis.

John H. Schneider allegedly conspired to defame and cause Plaintiff Jimmie G. Biles emotional distress, and to injure him personally and professionally.  ECF_1 at ¶¶ 29–30. The Settlement Agreement was signed by Defendant Schneider "on behalf of himself and other entities."  *Id.* at ¶ 31.  The Settlement Agreement contained a confidentiality agreement with a liquidated damages clause for violation of confidentiality, specified that "the parties may not disparage each other or use surrogates or other entities to disparage," and contained a clause binding "all agents and other entities associated with John H. Schneider." *Id.*  Plaintiff maintains that, despite the existence of the Settlement Agreement, Defendants "posted, or through surrogates and other entities caused to be posted," disparaging and defamatory material about Plaintiff on a website titled "Healthcare-Malparctice.com."  *Id.* at ¶¶ 33–34, 37.  Plaintiff alleges that Defendant Medport, by and through its members—which included Defendant Schneider—controlled and/or owned and operated "Healthcare-Malpractice.com."  *Id.* at ¶¶ 11, 38.  Plaintiff, therefore, brought three causes of action against Defendants Schneider and MedPort [2] for breach of contract, intentional infliction of emotional distress, and joint enterprise.  ECF_1.

Plaintiff notes that the Settlement Agreement was intended to prevent Defendant Schneider from using "his corporate and trust entities to bypass his obligations" under the Settlement Agreement, which is why all known entities were made party to the Settlement Agreement.  ECF_81 at 2.  However, Medport was not expressly referenced in the Settlement Agreement because Defendant Schneider allegedly did not disclose its existence.  *Id.* at 2–3.  Nevertheless, Plaintiff contends Medport was incorporated by reference as a "surrogate."  *Id.*  Plaintiff argues that he "believes discovery will show

---

[2] Plaintiff originally included claims against Michelle Schneider, Defendant Schneider's wife, as well. However, she has since been voluntarily dismissed from this action. ECF_40.

Medport was used as a surrogate to bypass Defendant Schneider's obligations under the Settlement Agreement" and will furthermore show that Medport is bound to the Settlement Agreement "under the doctrines of estoppel and alter ego." *Id.* at 3.

The present Motion relates to discovery requests Plaintiff served on January 24, 2020. *Id.* at 2. Medport's responses indicated that it was unable to access responsive documents or information due to Defendant Schneider's incarceration. *Id.* Plaintiff subsequently conferred with Medport regarding its discovery objections. *Id.* at 4. When conferral was not effective, Plaintiff scheduled an informal discovery conference with the Court. *Id.*; ECF_70. Much of the discussion regarding this discovery dispute has centered around the difficulties involved with obtaining discovery due to Defendant Schneider's incarceration. ECF_70; ECF_82 at 1–4. Medport did indicate that it would endeavor to supplement its responses as requested by Plaintiff, but progress has been slow. ECF_82 at 2–3. In an effort to give Medport time to comply with the Court's guidance that Defendants have "an obligation to make relevant records available," Plaintiff delayed in filing this Motion for a month after the informal discovery conference. ECF_70; ECF_81 at 4; ECF_83 at 1.

Plaintiff's Motion requests the Court to compel Medport to provide complete answers to Interrogatories 1–2 and Requests for Production 12–13. ECF_81 at 2. Medport maintains that it is diligently seeking to overcome the additional difficulties in the prison communication system created by COVID-19, but Medport raises other objections to Plaintiff's discovery requests as well. *Id.* at 1–4. The parties' arguments are set forth in detail below. However, since the date when this Motion was filed, the parties have agreed that Medport has sufficiently answered Interrogatory 1. ECF_83 at 2. Therefore, the

Court's Order will only address the disputes regarding Medport's responses to Interrogatory 2 and Requests for Production 12–13.

## DISCUSSION

The Court has broad discretion when considering discovery motions such as the one at issue here. *Sinclair Wyoming Refining Co. v. A & B Builders, Ltd.*, No. 15-CV-91-ABJ, 2017 WL 10309306, at \*5 (D. Wyo. Oct. 31, 2017). According to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Importantly, Rule 26 specifies that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The term "relevant" is broadly construed and "contemplates discovery into any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be raised in a case." *See Sinclair Wyoming Refining Co.*, 2017 WL 10309306, at \*4 (quoting *Anaya v. CBS Broad, Inc.*, 251 F.R.D. 645, 649–50 (D.N.M. 2007)). The party seeking discovery bears the burden to prove relevance. *Id.* at \*5. However, discovery can be facially relevant, at which point the burden shifts to the party resisting discovery to prove that the discovery is either (1) not relevant or (2) has such marginal relevance that its potential harm outweighs the presumption favoring broad discovery. *Id.*

As for proportionality, proportionality considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

4

Fed. R. Civ. P. 26(b)(1).  The burden of proving proportionality does not entirely lie on the party seeking discovery.  *Sinclair Wyoming Refining Co.*, 2017 WL 10309306, at \*5.  Instead, the party resisting discovery bears a burden to prove that the discovery request is disproportional.  *Id.*

The Federal Rules of Civil Procedure also specify that all discovery responses and objections must be signed by an attorney of record or the party and that, "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . it is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A); *Pearson v. Weischedel*, No. 09-CV-084-B, 2010 WL 11618778, at \*2 (D. Wyo. Nov. 5, 2010) ("Defendant has an affirmative duty to make a reasonable inquiry into the existence of the materials sought by [a discovery] request."). In sum, a party from whom discovery is sought has an obligation to provide relevant, non-privileged information that is proportional to the needs of the case, and parties providing such information certify that the information is complete and correct in every discovery response they provide.

**A.  Interrogatory No. 2**

Turning to the parties' first discovery dispute, Interrogatory No. 2 relates to Medport's initial disclosure statement, which designates eighty-four individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses."  ECF_81 at 7.  In the initial disclosure statement, no details about the type of information the individuals may have was disclosed.  ECF_81-7 at 1–5.  Consequently, Interrogatory No. 2 requests that Medport "describe the discoverable information that each individual . . . is likely to have and identify any conversations that you have had with these

5

individuals about the facts at issue in this case." ECF_81-6 at 4–5.  In Medport's initial response, it states that Defendant Schneider's incarceration made him "unable to access any files in his possession as the owner of www.healthcare-malpractice.com and former owner of Medport" so Medport could not supplement documents or cite factual and provable timelines to accurately respond to the interrogatory. *Id.* at 5.

Medport now claims its supplemental response to Interrogatory No. 2 addresses Plaintiff's concerns.  ECF_82 at 5.  However, Medport's supplemental response states only that Medport had "not had any conversations with the individuals listed in its initial disclosures."  ECF_82-1 at 4; ECF_83 at 2.  Medport's supplemental response further specifies that "[e]ach individual is likely to have information about their interactions with Dr. Biles, as reflected in the notes of conversations conducted by Sarah Thomas and in Plaintiff's possession."  ECF_82-1 at 4; ECF_83 at 2.  Plaintiff maintains that, of the eighty-four individuals listed in Medport's initial disclosures, the notes reference interviews with only twenty-six of those individuals.  ECF_83 at 2.  Plaintiff, therefore, "requests that the Court require Medport to identify how these additional fifty-eight individuals are pertinent to the claims against Medport." *Id.* at 2–3.

The Court notes that the rules regarding initial disclosures require parties to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  The language of this rule indicates that there are no exceptions to the requirement to list the subjects of the discoverable information that each individual may have.  Further, Rule 26(g)(1) requires "reasonable

inquiry" that is "complete and correct." Fed. R. Civ. P. 26(g)(1). This does not mean that "a detailed narrative of the potential witness' knowledge" is required, but initial disclosures should at least assist opposing counsel in focusing its discovery inquiries. *Lipari v. U.S. Bancorp, N.A.*, No. 07–2146–CM–DJW, 2008 WL 2874373, at *2 (D. Kan. July 22, 2008).

If Medport does not know the subject of the discoverable information all individuals listed may have, then it seemingly would not have listed those individuals in its initial disclosures as individuals that it may use to support its claims or defenses. To the extent that Medport believes it fully responded to Interrogatory No. 2 with its supplemental response, in stating that "[e]ach individual is likely to have information about their interactions with Dr. Biles," the response is ambiguous enough to leave Plaintiff—and the Court—believing that the response is still incomplete. To ensure that Medport complies with its obligation under the Federal Rules of Civil Procedure to sufficiently explain the subject of discoverable information that each individual listed in the initial disclosures may have, Medport should provide an updated list of names that sufficiently notes *individually*—not with a broad sweeping claim—the subject of the discoverable information for each of the eighty-four individuals listed in the initial disclosures.

## B. Request for Production No. 12

Request for Production ("RFP") No. 12 relates to Defendant Schneider's representations that he distributed all of Medport's assets by seeking "documents evidencing Medport's 'winding down,' including but not limited to minutes from board meetings discussing the 'winding down' process." ECF_81-6 at 7; ECF_81 at 8. In its first discovery response, Medport again stated Defendant Schneider's incarceration as the reason it was unable to access any files or supply any additional documents for RFP No.

12. ECF_81-6 at 7; ECF_81 at 8–9. Medport further directed Plaintiff to the Wyoming Secretary of State website for documents related to Medport's winding down. ECF_81-6 at 7; ECF_81 at 9.

In Plaintiff's Motion, Plaintiff maintains that the documents pertaining to RFP No. 12 are likely relevant to Medport's defense that Healthcare-Malpractice.com was "owned exclusively by" Defendant Schneider when the disparaging posts were made. ECF_81 at 9. Additionally, Plaintiff cites to the Wyoming Limited Liability Company Act to explain that, when assets of a dissolved LLC have been distributed, claims against the LLC may be enforced against the LLC's members or transferees. Wyo. Stat. Ann. § 17-29-704(d); ECF_81 at 9. Consequently, Plaintiff argues that RFP No. 12 may bring to light documents showing how and when Medport's assets were distributed, which could be relevant to identifying any other potentially liable parties in this case. *Id.*

In turn, Medport asserts that it has provided many responsive business records pertaining to Medport ownership, but that Defendant Schneider's incarceration has also slowed the dissolution and winding down process for Medport. ECF_82 at 5–6. Medport maintains that it "intends to file and create additional documents pursuant to the winding down process" but has produced everything in its possession at this time. *Id.* at 6. Medport further argues that it was appropriate to direct Plaintiff to the Wyoming Secretary of State website to obtain the last annual report filing for Medport and subsequent documents relating to dissolution and winding down—as these records were not otherwise in Medport's possession. *Id.*

In reply, Plaintiff requests that Medport confirm that it has gained access and searched its files for documents relating to RFP No. 12. ECF_83 at 4. Plaintiff

acknowledges that there are some documents available on the Wyoming Secretary of State website, but that the publicly available documents do not include any attachments for Medport's last annual report. *Id.* Additionally, older annual reports indicate Medport had cash assets, and Plaintiff explains that documents relating to the dissolution and winding down could indicate how those assets were distributed. *Id.* Moreover, Plaintiff argues that Medport's Operating Agreement indicates Medport should have had additional documents relating to winding down because the Operating Agreement set forth detailed procedures for dissolution such as appointing a liquidator, filing articles of dissolution, and providing a final accounting. *Id.* at 3. If, indeed, no additional documents exist, Plaintiff simply requests that Medport withdraw its discovery response claiming it has no access to any files and, instead, certify that Medport gained access to Defendant Schneider's files and diligently searched the files to provide a complete response to RFP No. 12.

Discovering parties may serve upon an opposing party requests for documents that are "within the scope of Rule 26(b)" and "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). Courts universally hold "that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *Pearson*, 2010 WL 11618778, at *1 (quoting *Starlight Int'l v. Herlihy*, 186 F.R.D. 626, 635 (D. Kan. 1999)). Therefore, so long as RFP No. 12 is relevant and proportional, then the request is appropriate under Rule 34 because these documents are clearly in Medport's possession, custody, or control.

Turning first to relevance under Rule 26, the documents relating to Medport's dissolution and winding down could bear on matters at issue in this case or lead to other

9

matters bearing on issues in this case in that Plaintiff is seeking to understand the relationship between Medport and Defendant Schneider as pertains to the disparaging posts that occurred here.  *See Sinclair Wyoming Refining Co.*, 2017 WL 10309306, at *5. Additionally, Medport does not appear to dispute the relevance of this request.  Therefore, RFP No. 12 is relevant.

As for proportionality, Medport carries the burden to prove that RFP No. 12 is disproportional.  *See id.*  Yet, Medport has not presented the Court with any persuasive argument that Plaintiff's request for it to diligently search through its files for any documents relating to Medport's winding down is disproportional.  To the extent that Medport maintains Plaintiff can access some publicly available documents online that are equally accessible to Medport, it was appropriate to direct Plaintiff to the Secretary of State's website.  However, that does not mean it is disproportional for Plaintiff to request any such documents from Medport that are not publicly available.

Any potential argument that RFP No. 12 is disproportional due to Defendant Schneider's incarceration is equally unpersuasive since this Court has already refused to stay the case after noting that such difficulties, including Defendant Schneider's inability to review company documents, were indistinguishable from the ordinary challenges incarcerated, *pro se* litigants face.  *See* ECF_59 at 5–6; *see also Adams v. Warren Analytical Lab., Inc.*, No. 05–cv–01536–EWN–MEH, 2007 WL 1725247, at *1–2 (requiring an incarcerated defendant to respond to discovery requests).  Further, Medport has not indicated any concern that additional expenses which may arise out of the difficulties associated with accessing the documents are undue or disproportional.  Simply

because it is difficult for Medport to access the relevant documents due to Defendant Schneider's incarceration does not make RFP No. 12 disproportional.

Having concluded that RFP No. 12 is relevant and proportional, the Court must analyze whether Medport's response to RFP No. 12 is definitively complete. Under Rule 26(g), Medport has a duty to certify that its discovery responses are complete, and certifying attorneys have a responsibility to ensure that a search for responsive information is reasonably thorough. *See* Fed. R. Civ. P. 26(g)(1); *A PDX Pro Co. v. Dish Network Serv., LLC*, 311 F.R.D. 642, 653 (D. Colo. 2015). A response stating Medport is unable to access any files relating to the winding down process merely because of Defendant Schneider's incarceration does not meet that duty. Medport's current discovery response serves as a caveat to the requirement for compete discovery responses and, until it is withdrawn, leaves opposing counsel in a state of uncertainty as to whether Plaintiff has actually received all relevant documents within Medport's possession, custody or control.

The Court appreciates Medport's claim in its Response to this Motion that Medport has provided all documents in its control relating to RFP No. 12. ECF_82 at 6. At the same time, the Court understands Plaintiff's uncertainty since Medport has not withdrawn its initial response that it cannot access files relating to RFP No. 12. If Defendant Schneider has provided Medport with access to the relevant files and Medport has diligently provided a thorough response to RFP No. 12 at this time, then Medport should supplement its initial response to RFP No. 12 by withdrawing the previous objection regarding its inability to access relevant files and certifying under Rule 26(g)(1) that its response is complete and correct. Alternatively, if Defendant Schneider has not yet provided access to files related

to RFP No. 12, then he "has an obligation to make relevant records available for production," ECF_70, because such records are relevant and proportional to the needs of this case.

### C.  Request for Production No. 13

RFP No. 13 relates to "all documents produced by Medport, LLC in the bankruptcy case *In re Henry Schneider*, Case. No. 14-61357 (Mont. Bankr.), or any associated adversary proceeding (including but not limited to Adversary No. 15-00015)." ECF_81-6 at 7–8; ECF_81 at 9.  Medport's initial response to RFP No. 13 was that it objected to the extent the information could be obtained from another more convenient and less burdensome source—the bankruptcy court.  ECF_81-6 at 8; ECF_81 at 9.  Moreover, Medport objected that the request was overly broad, unduly burdensome, disproportional to the needs of the case, and "not reasonably calculated to lead to admissible evidence" since the bankruptcy case was unrelated to the present matter.  ECF_81-6 at 8; ECF_81 at 9.  Further still, Medport's discovery response claimed that Defendant Schneider's incarceration made him "unable to access any files in his possession as the owner of www.healthcare-malpractice.com and former owner of Medport" and, thus, he could not supply additional documents.  ECF_81-6 at 8; ECF_81 at 9–10.

Plaintiff's Motion argues that it seeks information regarding a potential alter ego determination in the bankruptcy case, which is relevant to this case because it could support Plaintiff's claim that Medport is bound by the Settlement Agreement.  ECF_81 at 10.  Plaintiff also maintains that Medport did not meet its burden to prove disproportionality because such documents should be easily obtainable from Medport's files or from bankruptcy counsel.  *Id.*

In its Response to the Motion, Medport argues there was no alter ego finding against Medport in the bankruptcy proceedings.  ECF_82 at 7.  Medport points out that Trustee examined claims the estate might have against Medport and abandoned its interest in such claims, because of the minimal net benefit that would result if such claims were successful and because the claims might expose the estate to liability.  ECF_82-2 at 4; ECF_82-2 at 10, n.5; ECF_82 at 6–7.  According to Medport, the Trustee referred to "numerous complex legal issues," including alter ego and found no wrongdoing by Medport.[3]  ECF_82-2 at 8; ECF_82 at 7. For these reasons, Medport still maintains that RFP No. 13 is a "fishing expedition" that is "overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence."  *Id.*

Medport also claims that the cause of action against Medport for alter ego was property of the bankruptcy estate and "deemed fully settled, on the merits" when the bankruptcy judge entered his order approving the Compromise Settlement in the bankruptcy case.  *Id.* at 7–8.  Therefore, Medport argues that Plaintiff is barred from pursuing a claim for alter ego by the doctrines of collateral estoppel or res judicata.  *Id.* at 8.  For these reasons, Medport contends that RFP No. 13 is objectionable, and the discovery sought is either not relevant or subject to a protective order.  *Id.*  Nevertheless, Medport also notes that it can acquire access to these documents through bankruptcy counsel for Defendant Schneider once Defendant Schneider gives counsel a written authorization to release records in their possession.  *Id.* at 2–3.

---

[3] The Court wishes to qualify Medport's statement by pointing out that the Court sees nothing in the Trustee's Motion to Approve Compromise Statement to indicate the Trustee found no wrongdoing.  *See* ECF_82-2 at 8.  Rather, the Trustee simply concluded that the benefit of pursuing any potential claims against Medport was too negligible when compared to the potential costs of pursuing such claims.  ECF_82-2 at 10, n.5.

Plaintiff's reply contends RFP No. 13 is relevant because the documents are probative of whether Medport is bound by the Settlement Agreement. ECF_83 at 4. Additionally, Plaintiff argues that the Court should not determine the viability of Plaintiff's breach of contract claim regarding Medport's liability under the Settlement Agreement in this Motion. *Id.* Even if the Court were to decide in this Motion whether collateral estoppel or res judicata applies, Plaintiff argues the doctrines of res judicata and collateral estoppel do not apply to its theory that Medport is bound by the Settlement Agreement. *Id.* at 5. First, Plaintiff maintains res judicata and collateral estoppel do not apply because the bankruptcy court's order simply approved the parties' Compromise Settlement and the matter of alter ego was not actually litigated. *Id.* Second, Plaintiff contends collateral estoppel and res judicata do not apply because the bankruptcy court's order was entered in 2016—prior to any posts on Healthcare-Malpractice.com. *Id.* So, the bankruptcy court's order could not have precluded the claim or issue at stake here—which relates to the relationship between Defendant Schneider and Medport in 2018–19. *Id.* Plaintiff maintains that RFP No. 13 is relevant and not barred because the bankruptcy documentation may assist in understanding the relationship between Defendant Schneider and Medport to determining whether Medport was bound by the Settlement Agreement Plaintiff. *Id.*

The Court will again turn first to the issue of relevance. The relevancy of this discovery request seems abundantly clear on its face. Because the issue of alter ego arose during the bankruptcy case, there is a high likelihood that the documents produced by Medport in that case or the associated adversary proceedings can bear upon the relationship shared between Defendant Schneider and Medport, which would then bear upon the issue

of whether Medport is bound by the Settlement Agreement. Thus, the burden shifts to Medport to establish that these documents are not relevant or that the risks involved in disclosing the documents outweigh the benefit of the documents' relevance. *See Sinclair Wyoming Refining Co.*, 2017 WL 10309306, at \*5. Medport's arguments about relevance revolve around Plaintiff's alleged lack of standing to bring an alter ego claim. ECF_82 at 8. It is not that Medport argues the bankruptcy documents do not relate to Plaintiff's breach of contract claim, but that the claim or issue regarding alter ego is barred. Moreover, Medport does not attempt to argue that there is some risk involved in disclosing the documents. Indeed, Medport undermined any argument regarding risk of disclosing the documents in its first response to RFP No. 13—where it claimed the documents are accessible through the bankruptcy court. The Court concludes Medport has not met its burden to prove that the documents in RFP No. 13 are irrelevant to Plaintiff's claim or that there is too much risk involved in disclosing them.

As for proportionality, Medport also has not met its burden to prove disproportionality. *See Sinclair Wyoming Refining Co.*, 2017 WL 10309306, at \*5. Where discovery of public records is sought, courts consider whether such records are equally accessible to all parties. *Peter D. Holdings, LLC v. Wold Oil Props., LLC*, No. 17-CV-212-R, 2019 WL 7838432, at \*5 (D. Wyo. Oct. 23, 2019); *see also Ayyad v. Holder*, No. 05–cv–02342–WYD–MJW, 2014 WL 4084165, at \*1 (D. Colo. Aug. 19, 2014) (considering accessibility of publicly available documents in the context of a motion to strike). Publicly available records may be discoverable if the information does not seem equally accessible to both parties. *Peter D. Holdings, LLC*, 2019 WL 7838432, at \*5.

Here, although some documents related to RFP No. 13 may be publicly available, they are not equally accessible in that Plaintiff would have to gain access to such documents through the bankruptcy court. Meanwhile, Medport should have the most complete access to documents related to RFP No. 13 since the request relates to documents *produced by Medport, LLC* and Medport clearly has the legal right to obtain these documents. Medport has already explained that Mr. Dye, one of Defendant Schneider's bankruptcy counsel, will provide the documents once he receives written authorization from Defendant Schneider to release any records in his possession. ECF_82 at 2–3. Regarding potential difficulties associated with obtaining written authorization, the Court does not anticipate undue burden in acquiring authorization (if counsel for Medport has not already done so) now that Defendant Schneider has moved to a "half-way house." *Id.* at 4. As to the importance of the documents in resolving the issues in this case, there is great importance in Plaintiff's ability to determine whether Medport is bound by the Settlement Agreement. Moreover, Medport offers no indication that any potential expense in having Mr. Dye produce the documents outweighs their likely benefit. Therefore, the Court concludes that the request is proportional.

The Court will briefly address Medport's argument that Plaintiff lacks standing to bring an alter ego claim and is barred by collateral estoppel or res judicata as it relates to discoverability of these documents. At this juncture, Plaintiff's standing regarding an alter ego claim should not prevent discovery of relevant and proportional information because such information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P.

26(b)(1).[4]  So long as information is nonprivileged, relevant, and proportional, it is discoverable.

If the Court made a decision in this Motion regarding res judicata or collateral estoppel with respect to whether Plaintiff is barred from pursuing its theory that Medport is obligated to adhere to the Settlement Agreement, it would effectively make a partial ruling on the merits of one of Plaintiff's claims.  This is because res judicata and collateral estoppel are affirmative defenses.  Fed. R. Civ. P. 8(c)(1).  An argument that these affirmative defenses bar discovery on an issue would have been more appropriate in a motion for protective order.  *See, e.g.*, *Benavidez v. N.M. Dep't Transp.*, No. 12-919 MV/ACT, 2013 WL 12330028, at *5–12 (D.N.M. May 20, 2013).  Yet, even in a motion for protective order based on res judicata or collateral estoppel, the Court need not definitively consider such arguments to find that the requested information is relevant and discoverable.  *Id.* (overruling defendant's objections to discovery based on res judicata and collateral estoppel in a motion for protective order after briefly analyzing the arguments but then also noting that it would not address or consider defendant's arguments because they related to a pending motion for partial dismissal).

Even if Medport had raised these issues in a formal motion for protective order, its first response to RFP No. 13 undermined the need for a protective order—as there would be no reason to protect the documents from disclosure if they are publicly available through some other less accessible means.  Moreover, as the Court has noted, the relevance and

---

[4] Further, Medport's discovery response claiming that RFP No. 13 is not "reasonably calculated to lead to admissible evidence" is based on language from a prior version of Rule 26, which was intentionally deleted to clarify that "[d]iscovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee note to 2015 amendment.

proportionality of RFP No. 13 are abundantly clear. Therefore, while underscoring that the Court makes no decision as to whether Plaintiff's theory that Medport must adhere to the Settlement Agreement is barred, the Court concludes that the documents requested are discoverable.

## **CONCLUSION**

For the reasons stated herein, the Court concludes that Plaintiff's Motion to Compel is well-taken and should be GRANTED.

IT IS HEREBY ORDERED that:

1. Medport must supplement its response to Interrogatory No. 2 by providing a supplemented initial disclosures list of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses— along with the subjects of that information;

2. Medport must supplement its response to RFP No. 12 either (1) by withdrawing its objection that Defendant Schneider's incarceration makes him unable to access relevant files or supply any additional documents and certifying that Medport has submitted a complete response or (2) by gaining access to the relevant files and supplying the appropriate documents in a supplemental response to RFP No. 12;

3. Medport must supplement its response to RFP No. 13 with any documents produced by Defendant Schneider's bankruptcy counsel and any other documents within Defendant Schneider's possession, custody or control; and

4. Medport has until June 15, 2020 to comply with the requirements set forth in this Order.

Dated this 28th day of May, 2020.

MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE