R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, JR., M.D.,<br><br>      Plaintiff,<br><br>      v.<br><br>JOHN HENRY SCHNEIDER, JR.; and<br>MEDPORT, LLC,<br><br>      Defendants. | Civ. No. 19-CV-48-F |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MEDPORT'S MOTION FOR
SUMMARY JUDGMENT AND TO ALTER OR AMEND JUDGMENT**

Plaintiff, by and through his counsel, R. Daniel Fleck, M. Kristeen Hand, and Sarah A.

Kellogg of THE SPENCE LAW FIRM, LLC, hereby files Plaintiff's Response in Opposition to

MedPort's Motion for Summary Judgment to Alter or Amend Judgment, and states as follows:

In 2011, Plaintiff Dr. Jimmie Biles brought defamation claims against Defendant John H.

Schneider, Jr. after he mailed a flier to 14,239 residents in northwestern Wyoming defaming Dr.

Biles.  The claims were settled on May 9, 2012, when Mr. Schneider and his various affiliates,

including Schneider Limited Partnership ("Schneider LP"), signed a Settlement Agreement with Dr. Biles.  ECF # 74-1, Settlement Agreement (filed under seal).  This case arises because Mr. Schneider intentionally breached the confidentiality and non-disparagement clauses of the Settlement Agreement, in part, by publishing his attorney's confidential witness interviews ("Bonner Stinson Interviews") on a website, healthcare-malpractice.com, owned by Mr. Schneider's now defunct company, MedPort, LLC ("MedPort").  *See* ECF # 86-1, Bonner Stinson Interviews (filed under seal).  On June 18, 2020, the Court granted partial summary judgment, awarding Plaintiff liquidated damages against Mr. Schneider for his breach of the confidentiality clause, and enjoining MedPort and Mr. Schneider from further disseminating confidential information.  ECF # 92.  The following day, the Court entered judgment against Mr. Schneider for liquidated damages.  ECF # 93.

In a compound Motion, MedPort now asks the Court to: (1) grant summary judgment dismissing Plaintiff's breach of contract claims against MedPort; (2) reconsider its order enjoining MedPort from further violating the Settlement Agreement (ECF # 92); and (3) reconsider the injunction and award of liquidated damages against MedPort's *codefendant Mr. Schneider* (ECF # 93).  MedPort's motion centers on its argument that MedPort is not bound by the Settlement Agreement because it was not a signatory to the Agreement.

But MedPort fails to recognize that Mr. Schneider (MedPort's sole owner and officer since 2018, and self proclaimed "alter ego") and Schneider LP (the entity that funded MedPort with a $5,000,000 loan only days before it signed Settlement Agreement and shared a common Manager) expressly bound their "representatives," "agents," "affiliates," and "successors" and "surrogates" to the terms of the Agreement.  Moreover, in support of Plaintiff's opposition (and Plaintiff's forthcoming Motion for Summary Judgment), Kathleen Burrows, MedPort's Manager

at the time the Settlement Agreement was executed, has provided an affidavit, confirming her understanding that Mr. Schneider had the authority to bind MedPort the Settlement Agreement, and did so.

Plaintiff respectfully requests that the Court deny this Motion, grant Plaintiff's forthcoming Motion for Summary Judgment, and find that MedPort is jointly liable with Mr. Schneider for liquidated damages.

## I.   STATEMENT OF UNDISPUTED FACTS

Plaintiff previously set forth the undisputed facts supporting his Motion for Partial Summary Judgment against Mr. Schneider, which is hereby incorporated by reference.  ECF # 74.  For purposes of this Motion, the following additional undisputed facts support Plaintiff's analysis that MedPort is bound by the Settlement Agreement.

Under the plain language of the Settlement Agreement, Mr. Schneider and his family partnership, Schneider LP, agreed that the Settlement Agreement would be "binding upon" their "affiliates."  ECF # 74-1, Settlement Agreement, ¶ 12.  The Agreement states:

> The Settlement Agreement **shall be binding upon** and shall inure to the benefit of the respective representatives, wards, agents, owners, directors, officers, employees, servants, **affiliates**, successors and assigns of the parties hereto.

*Id.* (emphasis added).

Mr. Schneider and Schneider LP also agreed that they would not disparage Dr. Biles through "surrogates" or "other entities."  The agreement states:

> The parties agree not to disparage each other personally or professionally or to **use surrogates or other entities** to do the same.  This Settlement Agreement fully ends their dispute and puts this matter behind them.

*Id.* at ¶ 6 (emphasis added).  These clauses were included, precisely because Plaintiff feared that Mr. Schneider would use one of his many corporate entities as a surrogate to violate the Agreement.

It is undisputed that MedPort was the affiliate and surrogate of Mr. Schneider and Schneider LP and that Mr. Schneider and Schneider LP had the authority to bind MedPort to the Settlement Agreement.  On May 1, 2012, just eight days before the Settlement Agreement was signed, Mr. Schneider's sister, Kathleen Burrows, formed MedPort and became its Manager.  Ex. A, Articles of Organization, MED 0176–77.  The same day, Schneider LP held a family meeting.  Ex. B, Minutes, at MED 1243–46.  Ms. Burrows (MedPort's Manager) attended the meeting, as she also served as the Manager of Schneider LP.  *Id.* at MED 1245–46 (demonstrating that Ms. Burrows signed the minutes as the manager of Schneider LP).   During the meeting, Mr. Schneider, his wife, Michelle Schneider, and Ms. Burrows discussed the pending settlement of the Biles litigation and that the settlement would be funded by a loan from Schneider LP.  *Id.* Schneider LP also agreed to fund MedPort with a $5,000,000 "loan".  *Id.* at MED 1244; Ex. C, Promissory Note, MED 1273-1277; *see* Ex. D, Security Agreement, MED 1252–58 (suggesting that the amount loaned to MedPort ultimately may have been only $3.5 million); Ex. E, Amendment to Note, MED 1270–72 (demonstrating that the note was later amended so that MedPort was not required to make payments on the note until September 30, 2018).

Contrary to Mr. Schneider's representation that he had no involvement in MedPort in 2012, as of May 2012, MedPort employed Mr. Schneider as a "medical litigation consultant" and shortly thereafter (sometime between May 1, 2012 and of January 8, 2013), Mr. Schneider was appointed as MedPort's "Chief Medical Officer.  Ex. F, MED 0130-134 (medical litigation consultant); Ex. G, MED 0234 (chief medical officer); *see* Ex. H, MED 0292, Payroll Letter (demonstrating that as of March 1, 2014, Mr. Schneider was employed as "director" of MedPort).

Moreover, as the Manager of MedPort, it was Ms. Burrows' understanding "that on May 9, 2012 . . . [Mr.] Schneider, was authorized to act as an agent, affiliate, and/or representative of

MedPort, LLC." Ex. I, Burrows Aff. ¶ 3.  Ms. Burrows explained that "Mr. Schneider had the authority to bind MedPort to a contract, including any agreement to settle the lawsuits: *Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) and *Biles v. Fallon,* No. 2:11-cv-00294-NDF (D. Wyo. dismissed June 18, 2012)." *Id.* at ¶ 4.  It was Ms. Burrows' understanding that Mr. Schneider "agreed not to disparage Dr. Jimmie Biles or disseminate confidential materials from the  . . . litigation personally or through any of his entities, including MedPort." *Id.* at ¶5.

It is also undisputed that MedPort was Mr. Schneider's affiliate and surrogate in February 2019, when Mr. Schneider posted his attorney's interviews on healthcare-malpractice.com.  As of July 5, 2018, Mr. Schneider was the sole owner and officer of MedPort.  Ex. J, MedPort Resp. to RFA 1 (admitting that "at all times since July 5, 2018, Defendant Schneider has been the sole owner of MedPort."); *Id.* at RFA 2 (admitting that "at all times since July 5, 2018, Defendant Schneider has been the sole officer of MedPort.").  In that capacity, MedPort's 2018 Operating Agreement gave Mr. Schneider the express authority to bind MedPort to contracts.  ECF # 83-1, July 2018 Operating Agreement, ¶ 6.2 (stating "All third parties may rely on a document executed by the director or duly appointed officer as binding the Company.").  Indeed, earlier in this case, Mr. Schneider filed pleadings (on behalf of himself *and MedPort*) stating: "despite incorporation, MedPort, LLC is nothing more than an alter ego of John H. Schneider."  ECF # 21, Answer, at ¶ 15.  Therefore, even assuming the Settlement Agreement was not binding on MedPort in 2012, undoubtedly the Agreement became binding on MedPort in 2018 when Mr. Schneider obtained complete control over MedPort — and operated it as his "alter ego."

On May 28, 2019 the Wyoming Secretary of State administratively dissolved MedPort due to the resignation of its registered agent and its tax delinquency.  *See* Ex. K, Sec. State

Report.  More recently, on June 19, 2020, MedPort signed its own tardy articles of dissolution.[1]

ECF # 98-2, at ECF p. 7.

II.   LEGAL STANDARDS

**1.  Summary Judgment**

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

> The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett,* 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).

> Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute.  *See id.*

* * *

> When considering a motion for summary judgment, the court's role is not to

---

[1]     Under the article of dissolution, MedPort transferred MedPort's remaining assets, *including healthcare-malpractice.com* to Mr. Schneider.  ECF # 98-2, at ECF p. 7.  Yet, MedPort and Mr. Schneider have also provided an affidavit in support of their motion falsely stating that Mr. Schneider *personally* owned the website healthcare-malpractice.com at the time he disseminated the disparaging materials (i.e. February 2019).  ECF # 98-2, at ¶ 11.  Nevertheless because these facts were not raised by MedPort as an issue for summary judgment, Plaintiff will not address this disparity.

weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

*Nat'l Union Fire Co. of Pittsburgh, PA. v. Toland*, 164 F.Supp.3d 1330, 1333–34 (D. Wyo. 2016).   Importantly, local rule 7.1(b)(2) requires briefs in support of a motion for summary judgment to contain "all claimed undisputed and disputed material facts, together with a short statement of evidence . . . ."  U.D.C.L.R. 7.1(b)(2)(A).

## 2.  Motion for Reconsideration

MedPort relies on **Rule 59(e)** and **Rule 52(b)** to seek reconsideration of the Court's order granting partial summary judgment and enjoining MedPort and Mr. Schneider from further disseminating confidential materials.   Rule 59 and Rule 52 are both triggered by the filing of a motion within 28 days of the "entry of judgment."   Fed. R. Civ. P. 52(b), 59(e).   As used in both rules, "judgment" means "a decree or any order from which an appeal lies."   Fed. R. Civ. P. 54(a).   Because they resolve fewer than all claims, absent a specific statutory exception, or certification under Rule 54(b), orders granting partial summary judgment are not final appealable orders.   *See* Fed. R. Civ. P. 54(b); Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2737 (4th ed.). Thus, the Court's entry of judgment against Mr. Schneider for liquidated damages is not a "judgment" subject to review under Rules 59 and 52.   *See* Fed. R. Civ. P. 54(b) (allowing the Court to certified interlocutory orders for appeal).   There is, however, limited statutory authority supporting the interlocutory appeal of orders granting injunctive relief, even if they resolve fewer than all claims.   *See* 28 U.S.C. § 1292(a).

Although not raised by Defendant, the Court has the authority to reconsider an interlocutory order under Rule 54(b).   *Libretti v. Courtney*, No. 14-CV-0107-SWS, 2015 WL 12938931, * 1 (D. Wyo. Mar. 11, 2015).   However, a request for reconsideration is not proper

when it is based upon information which a party chose not present earlier or "to make new arguments which were previously available." *Id.* at *2. Further, "[a] motion for reconsideration is not an appropriate vehicle to reargue an issue previously addressed by the court absent an excusable reason for not presenting the information or arguments previously." *Id.*

III.    ANALYSIS

1.  **MedPort has not carried its burden on summary judgment — Schneider LP and Mr. Schneider bound MedPort to the Settlement Agreement, having actual authority to do so.**

First, arguing that it was not a signatory to the Settlement Agreement, MedPort seeks dismissal of Plaintiff's breach of contract claims and reconsideration of the Court's earlier order enjoining MedPort from further disseminating confidential information.[2] Summary judgment is not warranted because it is undisputed that: (1) Mr. Schneider and Schneider LP bound MedPort to the Settlement Agreement as their "affiliate"; and (2) Schneider LP and/or Mr. Schneider had the authority to bind MedPort to the Agreement.

MedPort argues that even though Mr. Schneider and Schneider LP agreed not to disparage Dr. Biles through "surrogates or other entities," the Settlement Agreement is not binding on those "surrogates or other entities."  This argument might be compelling if Plaintiff was seeking to enforce the Settlement Agreement against Facebook or Google — but here, MedPort's own Manager understood that Mr. Schneider entered the Agreement on behalf of MedPort.  Ex. I, Burrows Aff. ¶¶ 4–5.  Moreover, MedPort overlooks the language of paragraph 12, which specifically states that the Agreement "binds" the signatories' "affiliates."  ECF # 74-1, ¶ 12.

Black's Law Dictionary defines "affiliate" as business related through a common means

---

[2]    MedPort's request for reconsideration of the Court's injunction, and its corresponding notice of appeal on this issue, is a waste of judicial resources.  MedPort no longer has an independent legal existence — thus the injunction has no practical effect on MedPort.

person

of control:

> 1. A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.

AFFILIATE, Black's Law Dictionary (11th ed. 2019).  Merriam-Webster defines "affiliate" as someone "closely associated with another typically in a dependent or subordinate position." *Affiliate Definition,* MERRIAM-WEBSTER.COM https://www.merriam-webster.com/dictionary/affiliated (last visited July 29, 2020).  "Surrogate" is defined as "one that serves as a substitute."  *Surrogate Definition,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/surrogate (last visited July 30, 2020).   Applying these definitions, MedPort was indisputably Schneider LP's affiliate and surrogate because at the time Schneider LP signed the Settlement Agreement they shared a common manager and Schneider LP provided all of MedPort's funding.  Likewise, MedPort was Mr. Schneider's affiliate and surrogate in 2019 because he was MedPort's sole owner and officer, and self-proclaimed "alter ego" and in May 2012 because Mr. Schneider served as medical litigation consultant and was "authorized the act as an agent, affiliate, and/or representative of MedPort, LLC."  *See* Ex. I, Burrows Aff. at ¶ 3.

As to MedPort's argument that Mr. Schneider did not have the authority to bind MedPort to the Settlement Agreement, an agent may bind a principal to a contract if the agent has actual or apparent authority to do so.  *Kindered Healthcare Op., Inc. v. Boyd,* 2017 WY 122, ¶ 16, 403 P.3d 1014, 1019 (Wyo. 2017).  "An agent has express actual authority to bind the principal when the principal, orally or in writing, specifically grants the agent the power to bind the principal." *Id.*  "Implied actual authority is established by the course of dealings between the parties and the circumstances surrounding the case."  *Broderick v. Dairyland Ins. Co.*, 2012 WY 22, ¶ 17, 270 P.3d 684, 691 (Wyo. 2012).

Here, Ms. Burrows has provided her understanding, as MedPort's Manager, that Mr. Schneider had express actual authority on May 9, 2012 to bind MedPort to the Settlement Agreement. Ex. I, Burrows Aff. at ¶¶ 3–4. Moreover, the "circumstances surrounding the case" demonstrate that Schneider LP had, at the very least, implied actual authority to bind MedPort to the Settlement Agreement. MedPort's Manager attended the May 1, 2012 Schneider LP meeting, where Schneider LP discussed the upcoming settlement with Dr. Biles and how it would be funded. Finally, it is undisputed that Mr. Schneider had express actual authority to bind MedPort in 2018, when he became the sole shareholder and officer of MedPort. Ex. J, MedPort Resp. to RFA 1-2. The 2018 operating agreement specifically states "[a]ll third parties may rely on a document executed by the director [i.e. Mr. Schneider] or duly appointed officer [Mr. Schneider] as binding the Company." ECF # 83-1.

MedPort's shotgun analysis raises numerous other legal questions that the Court need not address to reach the holding that MedPort is bound by the Settlement Agreement. For example, on this Motion, the Court need not decide if MedPort was Mr. Schneider's alter ego (which Schneider admits) or if Plaintiff is estopped from raising that argument,[3] because Plaintiff did not bring a veil-piercing claim. The analysis on this Motion is far simpler — Schneider LP and Mr. Schneider expressly bound their representatives, agents, affiliates, successors, and

---

[3] Nevertheless, MedPort's res judicata and collateral estoppel arguments misapply the doctrines. *See Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1264–65 (10th Cir. 2011) (explaining the doctrines). The doctrines do not apply to Plaintiff's claim that MedPort was made a party to the settlement agreement under the principal of alter ego. First, both doctrines require an *actual adjudication* of the issue and/or claim on the merits. *Id.* at 1265. Here, the bankruptcy court merely approved the parties' settlement, but it made no findings on the issue of alter ego. *See* ECF # 82-3, Bankr. Order. Second, both doctrines require an "identity" of claims or issues. *Id.* Here, the bankruptcy court's order was entered on June 7, 2016, MedPort and Mr. Schneider's postings on Healthcare-Malpractice.com occurred in 2018–19. *See* ECF # 82-3, Bankr. Order. Plaintiff is unaware of any judicial determination relating to the relationship between Mr. Schneider and MedPort in 2018–19.

surrogates to the terms of the Agreement (i.e. MedPort) and they had actual authority to do so. Accordingly, the Court should not grant summary judgment to MedPort on Plaintiff's breach of contract claims. Instead, the Court should grant Plaintiff's forthcoming Motion for Summary Judgment and hold that MedPort is jointly liable for the liquidated damages.

## 2. The Court should not reconsider its injunction or its entry of judgment as to Mr. Schneider.

MedPort next argues that the Court should reconsider its injunction and award of liquidated damages against Mr. Schneider. The Court should decline to consider these arguments because Mr. Schneider does not join in this Motion and MedPort does not have standing to raise these arguments on Mr. Schneider's behalf. But even more fundamentally, MedPort offers no new arguments or analysis. The Court should not alter is summary judgment order (ECF # 92) or its award of liquidated damages (ECF # 93).

First, MedPort objects that the Court did not address its argument that the Settlement Agreement is void because of its perpetual duration. MedPort's analysis on this point appears to be cut and pasted directly from its underlying brief (ECF #84 at 16–17). However, there is a slight difference in MedPort's analysis — in its underlying brief MedPort only argued that the perpetual duration of the Settlement Agreement defeated Plaintiff's request for an injunction. MedPort now argues, for the first time, that the perpetual duration voids the nondisparagement clause (and perhaps the entire Settlement Agreement). *But see Taylor v. DeRosa*, No. 03-08-00199-CV, 2010 WL 1170228, *3 (Tex. App. March 24, 2010) ("[T]he injunction in the present case merely serves to enforce a bargained-for provision of the parties' settlement contract- the non-disparagement clause.") (listing cases); *Adult Corp. v Roach,* 2009 Ohio 948, ¶ 10 (Ohio App. 2009) (Slip Op.) (enforcing a nondisparagement clause through injunctive relief). Because MedPort offers no new authority on this point, Plaintiff will rest on the analysis in his underlying

brief (ECF # 86, at 9).  The key point is that MedPort offers no support for is proposition that

perpetual settlement agreements are unenforceable — rather MedPort cites to cases addressing

the perpetual nature of contracts for *employment*.[4]  *But see* 23 Williston on Contracts § 63:2 (4th

ed.), at n. 1 ("promises of perpetual forbearance" may "be specifically enforced at law.").  The

Court correctly determined that there was no merit to MedPort's perpetual duration argument

and should not reconsider its order on this point.

Second, MedPort argues that the court should stay its enforcement of the liquidated

damages award *against Schneider* until discovery is complete.  This request is problematic for a

number of reasons.  At this time Plaintiff does not understand the Court's judgment to be a final

appealable order, subject to enforcement.  *See* Fed. R. Civ. P. 54(b). But most importantly,

despite receiving more than thirty additional days to file its response to Plaintiff's Motion for

Partial Summary Judgment (ECF # 80), MedPort, nor Schneider, sought relief under Rule 56(d)

in their underlying opposition to Plaintiff's Motion.  Fed. R. Civ. P. 56(d) (allowing a party

opposing summary judgment to seek additional time for discovery when the facts are unavailable

to the non-movant).  Even now, MedPort fails to explain what facts it hopes to obtain through

additional discovery.  Plaintiff has relied on the Court's well-reasoned decision to help narrow

the issues for discovery and expert testimony.   Revisiting issues that have already been

---

[4]      *See Jewell v. Big Horn Hosp. Dist.,* 953 P.2d 135, 138 (Wyo. 1998) ("Under Wyoming's **employment jurisprudence**, employment of indefinite duration is employment which may be terminated at the will of either party for any or no reason.") (emphasis added); *Police Protective Ass'n of Casper v. City of Casper,* 575 P.2d 1146, 1149 (Wyo. 1978) (addressing the perpetual nature of a collective bargaining agreement).  Similarly, Defendants cite to the case *Mariano & Associates, P.C. v. Board of County Com'rs of Sublette County,* in which the Wyoming Supreme Court held that a county did not have the statutory authority to enter a contract that extended "beyond the term of office of the governmental decision makers."  *See* 737 P.3d 323, 329  (Wyo. 1987).

determined as a matter of law, such as the enforceability of the liquidated damages clause, so close to the discovery cutoff and Plaintiff's expert disclosure deadline, would prejudice Plaintiff.

IV.    CONCLUSION

The only issue properly before the Court on this Motion is whether MedPort has established the absence of a dispute of material fact relating to whether MedPort was a party to the Settlement Agreement.  In truth, Schneider LP and Mr. Schneider expressly bound MedPort to the Settlement Agreement and had the authority to do so.  Therefore, the Court should deny MedPort's request for summary judgment.  The Court should further decline to consider the issues raised for reconsideration by MedPort on behalf of Mr. Schneider — MedPort has no standing to raise these issues on behalf of Mr. Schneider and Defendants had ample opportunity to raise these arguments when they responded to Plaintiff's underlying Motion.  Plaintiff has relied on the Court's order to narrow his discovery and retention of expert witnesses.

For all of these reasons, Plaintiff respectfully requests that the Court deny this Motion.


Dated this 31st day of July, 2020.

/s/ Sarah A. Kellogg
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2020 I electronically filed the foregoing Motion for

Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will

send notifications of such filing to the following addresses:

> Adam H. Owens
> Gregory G. Costanza
> Granite Peak Law LLC
> 201 W. Madison Ave., Ste. 450
> Belgrade, MT 59714
> adam@granitepeaklaw.com
> gregory@granitepeaklaw.com
>
> *Attorneys for Defendants MedPort, LLC & John H. Schneider*[5]

/s/ Sarah A. Kellogg _____
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

---

[5]     Pursuant to Mr. Costanza's representation during the July 20, 2020 status conference that he represents Mr. Schneider, the Court's corresponding instructions on that topic, and Wyo. R. Prof. Conduct 4.2, Plaintiff is not serving Mr. Schneider directly.