R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., M.D., | |
| Plaintiff, | |
| v. | Civ. No. 19-CV-48-F |
| JOHN HENRY SCHNEIDER, JR.; and MEDPORT, LLC, | |
| Defendants. | |

## PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

Plaintiff, by and through his counsel, R. Daniel Fleck, M. Kristeen Hand, and Sarah A. Kellogg of THE SPENCE LAW FIRM, LLC, hereby files Plaintiff's Second Motion for Partial Summary Judgment, and states as follows:

In 2011 Plaintiff Jimmie G. Biles, M.D. sued Defendant John Henry Schneider, Jr. and Lisa Fallon after they conspired to defame Dr. Biles. The lawsuits, *Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) and *Biles v. Fallon,* No. 2:11-cv-00294-NDF

(D. Wyo. dismissed June 18, 2012), alleged that Mr. Schneider and Ms. Fallon mailed a flier to 14,239 homes in northwestern Wyoming defaming Dr. Biles.  Both cases were resolved after the parties entered into a Settlement Agreement that included promises to refrain from disparaging each other and to keep information relating to the litigation confidential.  The parties also agreed to liquidated damages in the event of a breach of the confidentiality clause.

This case arises because Mr. Schneider breached the confidentiality and non-disparagement clauses of the Settlement Agreement by publically posting his attorneys' interview notes ("Bonner Stinson Interviews") and other disparaging content on a website (healthcare-malpractice.com) owned by his company, MedPort, LLC ("MedPort").  The Court has already held that Mr. Schneider violated the confidentiality clause of the Settlement Agreement, entered judgment for liquidated damages against Mr. Schneider, and enjoined Mr. Schneider and MedPort from further violating the confidentiality clause.  Plaintiff now moves for partial summary judgment asking the Court to: (1) hold that MedPort is jointly liable for the liquidated damages because MedPort owned healthcare-malpractice.com, which Mr. Schneider used to disseminate the confidential materials;[1] and (2) enjoin Mr. Schneider from further violating the non-disparagement clause.  Plaintiff anticipates voluntarily dismissing any further claims for damages.

I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court has already held that the materials posted on healthcare-malpractice.com violated the confidentiality clause of the Settlement Agreement and triggered the liquidated damages clause.  ECF # 92, Order Granting MSJ (nonpublic document); ECF # 93, Judgment.

---

[1]     MedPort filed a cross motion for summary judgment on July 17, 2020 (ECF # 98).  The arguments set forth below in this Motion largely mirror the argument already set forth in Plaintiff's response in opposition to that motion (ECF # 103).

Thus, the only issues presented in this Motion are whether MedPort is bound by the Settlement Agreement, and therefore jointly liable for the liquidated damages, and whether Mr. Schneider should be permanently enjoined from violating the non-disparagement clause.

The following undisputed material facts are relevant to those determinations:

1.      On May 9, 2012, Mr. Schneider, his family partnership, Schneider Limited Partnership ("Schneider LP"), and several other individuals and entities signed a Settlement Agreement to resolve *Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) and *Biles v. Fallon,* No. 2:11-cv-00294-NDF (D. Wyo. dismissed June 18, 2012).  ECF # 74-1, Settlement Agreement (filed under seal).  The Settlement Agreement contained a confidentiality clause, and the parties agreed to liquidated damages in the event of a breach of the confidentiality clause.  *Id.* at ¶ 3.

2.      The Settlement Agreement also included a non-disparagement clause, whereby the parties agreed not to disparage each other or use surrogates or other entities to disparage each other:

> The parties agree not to disparage each other personally or professionally or to use surrogates or other entities to do the same.  The Settlement Agreement fully ends their dispute and puts this matter behind them.

*Id.* at ¶ 6.

3.      Mr. Schneider, the sole owner and sole officer of MedPort,[2] at all times since July 5, 2018, represented to this Court that: "despite incorporation, MedPort, LLC is nothing more than an alter ego of John H. Schneider."  ECF # 21, Answer, at ¶ 15; *see* ECF # 103-10, MedPort Resp. to RFA 1 (admitting that "at all times since July 5, 2018, Defendant Schneider has been

---

[2]      MedPort was administratively dissolved on May 28, 2019 for failing to retain a registered agent.  ECF # 103-11.  MedPort has since executed its own "articles of dissolution."  Ex. A, MedPort Artic. Dissolution.

the sole owner of MedPort.") & RFA 2 (admitting that "at all times since July 5, 2018, Defendant Schneider has been the sole officer of MedPort.").

4.      MedPort owned healthcare-malpractice.com until June 19, 2020, when it distributed healthcare-malpractice.com to Mr. Schneider as part of its dissolution.  Ex. A, MedPort Artic. Dissolution, ¶ 4 (demonstrating, in a sworn document, that only a few weeks ago, on June 19, 2020, MedPort distributed "Healthcare-Malpractice.com, etc. . . . to John H. Schneider, as sole remaining Member of the Company."); *but see* ECF # 98-2, Schneider Aff., at ¶ 11 ("I owned the website Healthcare-Malpractice.com at the time of the alleged breach [February/ March 2019] of contract with Biles.").

5.      On or around March 2019, Mr. Schneider posted his attorneys' interview notes to healthcare-malpractice.com.  *See* ECF # 86-1, Jordan Aff.

6.      MedPort was not expressly listed as a party to the Schneider-Biles Settlement Agreement, but was incorporated by reference, in paragraph 12, which states that the Settlement Agreement is binding on the signatories' affiliates:

> The Settlement Agreement **shall be binding upon** and shall inure to the benefit of the respective representatives, wards, agents, owners, directors, officers, employees, servants, **affiliates**, successors and assigns of the parties hereto.

ECF # 74-1, Settlement Agreement, ¶ 12 (emphasis added).

7.      MedPort was also incorporated by reference in the non-disparagement clause, which binds the signatories' "surrogates" and "other entities."  *Id.* at ¶ 6.

8.      Mr. Schneider and Schneider LP had the authority to bind MedPort to the Settlement Agreement on May 9, 2012.  MedPort was formed on May 1, 2012, just a few days before the Settlement Agreement was signed, by Mr. Schneider's sister, Kathleen Burrows.  ECF # 103-1, Articles of Org.  That same day, Ms. Burrows attended a meeting of Schneider LP, where Mr. Schneider, his wife Michelle Schneider, and their attorney, Michael D. Greer,

discussed the upcoming settlement with Dr. Biles.  ECF # 103-2, Minutes.  At the same meeting, Schneider LP voted to fund MedPort with a "loan" of up to $5,000,000.  *Id.*; ECF # 103-3, Promissory Note; ECF # 103-4, Security Agreement; ECF # 103-5, Amended Promissory Note (demonstrating that MedPort was not required to make payments on the note until Sep. 2018).

9.      Although Mr. Schneider was not a shareholder or manager of MedPort in May 2012, he was employed by the company.  As of May 2012, MedPort employed Mr. Schneider as a "medical litigation consultant" and shortly thereafter (sometime between May 1, 2012 and January 8, 2013), Mr. Schneider was appointed as MedPort's "Chief Medical Officer.  ECF # 103-6, MED 0130-134 (medical litigation consultant); ECF # 103-7, MED 0234 (chief medical officer); *see* ECF # 103-8, MED 0292, Payroll Letter (demonstrating that as of March 1, 2014, Mr. Schneider was employed as "director" of MedPort).

10.      Moreover, as MedPort's Manager on May 9, 2012, Ms. Burrows understood Mr. Schneider to have "the authority to bind MedPort to a contract, including any agreement to settle the lawsuits:  *Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) and *Biles v. Fallon,* No. 2:11-cv-00294-NDF (D. Wyo. dismissed June 18, 2012)."  ECF # 103-9, Burrows Aff. ¶ 4. It was Ms. Burrows' understanding that Mr. Schneider contractually "agreed not to disparage Dr. Jimmie Biles or disseminate confidential materials from the  . . . litigation personally or through any of his entities, including MedPort."  *Id.* at ¶5.

11.      MedPort was also Mr. Schneider's affiliate and surrogate in February 2019, when Mr. Schneider posted his attorney's interviews on healthcare-malpractice.com.  As of July 5, 2018, Mr. Schneider was the sole owner and officer of MedPort.  ECF # 103-10, MedPort Resp. to RFA 1–2.  MedPort's 2018 Operating Agreement gave Mr. Schneider the express authority to bind MedPort to contracts.  ECF # 83-1, July 2018 Operating Agreement, ¶ 6.2 (stating "All

third parties may rely on a document executed by the director or duly appointed officer as binding the Company.").

II.   LEGAL STANDARDS

**1. Standards governing summary judgment**

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

> The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett,* 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).

> Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute.  *See id.*

* * *

> When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

*Nat'l Union Fire Co. of Pittsburgh, PA. v. Toland*, 164 F.Supp.3d 1330, 1333–34 (D. Wyo. 2016).

Importantly, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Daniels v. Kerr McGee Coal Corp.*, 841 F. Supp. 1133, 1134 (D. Wyo. 1993) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## 2. Standards governing the interpretation of a settlement agreement

"A settlement agreement is a contract and, therefore, subject to the same legal principles that apply to any contract." *Western Mun. Const. of Wyo., Inc. v. Better Living, LLC*, 234 P.3d 1223, 1227 (Wyo. 2010) (quoting *Mueller v. Zimmer,* 124 P.3d 340, 350 (Wyo. 2005)). "The elements are the same as the elements of any contract: offer, acceptance, and consideration, and establishment of the existence of these elements leads the courts to conclude that mutual assent has occurred." *Id.* at 1228. "A compromise and settlement agreement is, also like other contracts, subject to construction as a matter of law." *Id.* Courts "will not look behind a settlement agreement to see who would have prevailed in a dispute out of which the settlement agreement arises. If the settlement agreement itself meets contractual requirements, it will be enforced." *Id.*

To that end, Wyoming applies the following rules of contract interpretation:

The Court's "primary focus in contract interpretation is the parties' intent." *Carlson v. Flocchini Invs.*, 2005 WY 19, ¶ 15, 106 P.3d 847, 854 (Wyo.2005). The "language of the parties expressed in their contract must be given effect in accordance with the meaning which that language would convey to reasonable persons at the time and place of its use." *Moncrief v. Louisiana Land Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993).

In following this guidance, therefore, the first inquiry is whether the contract is clear and unambiguous, and if it is, the Court must confine its review to the four comers of the document to determine the parties' intent. *Prudential Preferred*

*Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993). A contract is ambiguous if the agreement is obscure in its meaning because of indefiniteness of expression or because a double meaning is present. *Brockway v. Brockway*, 921 P.2d 1104, 1106 (Wyo. 1996) (quoting *Carlson v. Water Unlimited, Inc.*, 822 P.2d 1278, 1281 (Wyo.1991)). In making such determination, the court considers the contract as a whole and reads each provision in light of all the others to find the plain meaning of the words. *Martin v. Farmers Ins. Exchange*, 894 P.2d 618, 620 (Wyo.1995).

In addition, "[c]ommon sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts." *Double Eagle Petroleum & Min. Cor. v. Questar Exploraion & Production Co.*, 78 P.3d 679, 681 (Wyo. 2003) (citation omitted). "We have also recognized that the language of a contract is to be construed within the context in which it was written, and the court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made." *Id.* (citing, *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo. 1998)). However, a court may not consider extrinsic evidence to contradict the plain meaning of an unambiguous contract, and the intent of the parties, as stated in their agreement, must be given effect. *J and J Ventures, Inc.*, 859 P.2d at 1271 (citing *Wyoming Bd. of Certified Public Accountants v. Christensen*, 800 P.2d 853, 856 (Wyo. 1990)).

*Belmont v. BP Am. Prod. Co.*, No. 13-CV-63-F, 2014 WL 11456765, at *3 (D. Wyo. Mar. 13, 2014).

## III.   ANALYSIS

The Court has already held the posting of the Bonner Stinson Interviews violated the Settlement Agreement's confidentiality clause, triggering liquidated damages, and that Mr. Schneider and MedPort are enjoined from further violating the confidentiality clause.  Thus, the only questions for the Court on this Motion are: (1) whether MedPort is bound by Settlement Agreement and jointly liable for the liquidated damages; and (2) whether Plaintiff is entitled to an injunction, requiring Mr. Schneider to abide by the non-disparagement clause.  Because these questions turn on undisputed facts, Plaintiff respectfully requests that the Court grant summary judgment on these issues.

1. **The Court should award liquidated damages against MedPort because Mr. Schneider and Schneider LP bound MedPort to the Settlement Agreement, having actual authority to do so.**

First, the court should hold that MedPort is jointly liable for liquidated damages as a result of MedPort and Mr. Schneider's breach of the confidentiality clause.

Although not a signatory to the Settlement Agreement, MedPort is expressly bound to the Agreement. Black's Law Dictionary defines "affiliate" as business related through a common means of control:

> 1. A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.

AFFILIATE, Black's Law Dictionary (11th ed. 2019). Merriam-Webster defines "affiliate" as someone "closely associated with another typically in a dependent or subordinate position." *Affiliate Definition,* Merriam-Webster.com https://www.merriam-webster.com/dictionary/affiliated (last visited July 29, 2020). "Surrogate" is defined as "one that serves as a substitute." *Surrogate Definition,* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/surrogate (last visited July 30, 2020). Applying these definitions, MedPort was indisputably Schneider LP's affiliate and surrogate because at the time Schneider LP signed the Settlement Agreement they shared a common manager and Schneider LP provided all of MedPort's funding. Likewise, MedPort was Mr. Schneider's affiliate and surrogate in 2019 because he was MedPort's sole owner and officer, and self-proclaimed "alter ego" and in May 2012 because Mr. Schneider served as medical litigation consultant and was "authorized the act as an agent, affiliate, and/or representative of MedPort, LLC." *See* ECF # 103-9, Burrows Aff. at ¶ 3.

Moreover, both Schneider LP and Mr. Schneider had the authority to bind MedPort. An agent may bind a principal to a contract if the agent has actual or apparent authority to do so.

*Kindered Healthcare Op., Inc. v. Boyd,* 2017 WY 122, ¶ 16, 403 P.3d 1014, 1019 (Wyo. 2017). "An agent has express actual authority to bind the principal when the principal, orally or in writing, specifically grants the agent the power to bind the principal." *Id.* "Implied actual authority is established by the course of dealings between the parties and the circumstances surrounding the case." *Broderick v. Dairyland Ins. Co.*, 2012 WY 22, ¶ 17, 270 P.3d 684, 691 (Wyo. 2012).

Ms. Burrows has provided her understanding, as MedPort's Manager, that Mr. Schneider had express actual authority on May 9, 2012 to bind MedPort to the Settlement Agreement.  ECF # 103-9, Burrows Aff. at ¶¶ 3–4.   Moreover, the "circumstances surrounding the case" demonstrate that Schneider LP had, at the very least, implied actual authority to bind MedPort to the Settlement Agreement.  MedPort's Manager attended the May 1, 2012 Schneider LP meeting, where Schneider LP discussed the upcoming settlement with Dr. Biles and how it would be funded.  Finally, it is undisputed that Mr. Schneider had express actual authority to bind MedPort in 2018, when he became the sole shareholder and officer of MedPort.  ECF # 103-10, MedPort Resp. to RFA 1-2.  The 2018 operating agreement specifically states "[a]ll third parties may rely on a document executed by the director [i.e. Mr. Schneider] or duly appointed officer [Mr. Schneider] as binding the Company."  ECF # 83-1.

Because MedPort was bound to the Settlement Agreement, the Court should find that MedPort and Mr. Schneider are jointly liable for the liquidated damages incurred because they posted the Bonner Stinson Interviews on healthcare-malpractice.com.  *See* Restatement (Second) Contracts, § 289 (2) (1981) ("Where two or more parties to a contract promise the same performance to the same promisee, **each is bound for the whole performance** thereof, whether his duty is joint, several, or joint and several.") (emphasis added); *Ultra Resources, Inc. v.*

*Hartman,* 2010 WY 36, ¶ 139, 226 P.3d 889, 993 (Wyo. 2010) (demonstrating that the law presumes a joint obligation but the obligation will be joint and several if the parties so intended).

**2. The Court should extend its injunction, enjoining Mr. Schneider from further violating the nondisparagement clause.**

Second, to prevent future harm to Dr. Biles, and in the hopes of resolving this litigation and avoiding future litigation, the Court should also grant injunctive relief, enjoining Mr. Schneider from further violating the non-disparagement clause.

"To get a permanent injunction, a party must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1011 (10th Cir. 2018) (internal quotations omitted).  Irreparable harm is shown by "a significant risk that [the plaintiff] will experience harm that cannot be compensated after the fact by money damages." *Id.*  When future damages are difficult to ascertain, the Tenth Circuit holds that the "plaintiff suffers irreparable injury." *Id.* at 1012.  Critically, "[d]amages flowing from anticipated future injury to one's livelihood or business interests are especially difficult to calculate." *Id.* ("because it is so difficult to prove the value of goodwill . . . the potential for the defendant to deal incalculable damage to that good will can constitute irreparable harm.") (internal quotations omitted).  Numerous Courts hold that injunctive relief is appropriate to enforce a non-disparagement clause.  *See Taylor v. DeRosa*, No. 03-08-00199-CV, 2010 WL 1170228, *3 (Tex. App. March 24, 2010) ("[T]he injunction in the present case merely serves to enforce a bargained-for provision of the parties' settlement contract- the non-disparagement clause.") (listing cases); *Adult Corp. v Roach,* 2009 Ohio 948, ¶ 10 (Ohio App. 2009) (Slip Op.) (enforcing a non-disparagement clause through injunctive relief).

Here, the Court has already held an evidentiary hearing, finding all but one element for injunctive relief — actual success on the merits.   ECF # 19, Order on Prelim. Inj. at 2.   The Court found: (1) that Dr. Biles faced a threat of irreparable harm; (2) that Dr. Biles' interest in enforcing the settlement agreement outweighed Mr. Schneider's interest in breaching the agreement; and (3) that public had no interest in access to disparaging statements.   *Id.* at 2-3.   Now, Mr. Schneider has admitted the authenticity of the Settlement Agreement — which unambiguously requires the parties to refrain from making disparaging comments.  ECF# 74-2, at RFA 1 (admitting authenticity).   Accordingly, Plaintiff respectfully requests that the Court extend its injunction, and order Mr. Schneider to refrain from making disparaging comments about Dr. Biles in any public forum.

## IV.   CONCLUSION

Mr. Schneider and Schneider LP agreed that their affiliates, surrogates, and other entities would be bound by the Settlement Agreement and had actual authority to bind MedPort. Therefore MedPort, Mr. Schneider's self-described "alter ego," is jointly liable with Mr. Schneider for the liquidated damages triggered by their breach of the confidentiality clauses. Moreover, there is no question of fact that Mr. Schneider agreed not to disparage Dr. Biles. Accordingly, Plaintiff respectfully request that the Court enter injunctive relief, requiring Mr. Schneider to abide by this agreement.  Plaintiff anticipates dismissing further claims for damages and hopes that this Motion will substantially end the parties' dispute before this Court.[3]

For all these reasons, Plaintiff respectfully requests that this Court grant summary judgment and: (1) join MedPort in the judgment previously entered against Mr. Schneider for

---

[3]     Upon the entry of a final appealable order, Plaintiff anticipates filing a motion for attorneys' fees pursuant to Paragraph 11 of the Settlement Agreement.  Plaintiff also anticipates asking to Court to enter an order requiring appeal bonds pursuant to Federal Rules of Appellate Procedure 7 and (if appropriate) 8.

liquidated damages (ECF # 93) and (2) enjoin Mr. Schneider (personally or through his surrogates or other entities) from disparaging Dr. Biles in any public forum.

Dated this 6th day of August, 2020.

/s/ Sarah A. Kellogg_____
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2020 I electronically filed the foregoing Motion

for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will

send notifications of such filing to the following addresses:

       Adam H. Owens
       Gregory G. Costanza
       Granite Peak Law LLC
       201 W. Madison Ave., Ste. 450
       Belgrade, MT 59714
       adam@granitepeaklaw.com
       gregory@granitepeaklaw.com

       *Attorneys for Defendants MedPort, LLC & John H. Schneider*[4]

                     /s/ Sarah A. Kellogg _____
                     R. Daniel Fleck (WSB # 6-2668)
                     M. Kristeen Hand (WSB # 6-3544)
                     Sarah A. Kellogg (WSB # 7-5355)
                     THE SPENCE LAW FIRM, LLC
                     15 South Jackson Street
                     P.O. Box 548
                     Jackson, WY 83001
                     (307) 733-7290
                     (307) 733-5248 (Fax)
                     fleck@spencelawyers.com
                     hand@spencelawyers.com
                     kellogg@spencelawyers.com

---

[4]     Pursuant to Mr. Costanza's representation during the July 20, 2020 status conference that he represents Mr. Schneider, the Court's corresponding instructions on that topic, and Wyo. R. Prof. Conduct 4.2, Plaintiff is not serving Mr. Schneider directly.