Granite Peak Law, PLLC
Gregory G. Costanza, Esq.
Adam H. Owens, Esq.
201 W. Madison Ave
Suite 450
Belgrade, MT 59714
T: 406.530.9119
F: 406.794.0750
adam@granitepeaklaw.com
gregory@granitepeaklaw.com
Attorneys for Defendant Medport, LLC
Limited Scope Attorneys for Defendant Schneider

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., MD, | Cause No. 19-CV-48-F |
| Plaintiff | |
| v. | |
| JOHN HENRY SCHNEIDER, JR.; and MEDPORT, LLC, | |
| Defendants | |

**DEFENDANTS' RESPONSE BRIEF TO PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM**

Defendants John H. Schneider and MEDPORT, LLC, by and through counsel, Gregory G. Costanza, of Granite Peak Law, LLC, hereby file their response to Plaintiff's Second Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim. For the reasons set forth herein, this Court should deny Plaintiff's Motion.

## I.   BACKGROUND

This matter arises from the alleged breach of a Settlement Agreement that arose after the publication of certain information and materials pertaining to the medical practice of Dr. Jimmie Biles (hereinafter "Biles") that were deemed offensive by him. On March 26, 2020 Biles filed suit

against Defendants John H. Schneider ("Schneider") and Medport LLC ("Medport"), ultimately asserting claims for breach of contract, intentional infliction of emotional distress and joint enterprise, with a request for injunctive relief (*see* ECF # 92 Order, pg. 3, June 18, 2020). On June 18, 2020, this Court granted Plaintiff's motion for partial summary judgment and granted the request for permanent injunction (*see* ECF # 92). Judgment in a Civil Action was entered on that Order on June 19, 2020 (*see* ECF # 93, Judgment, June 19, 2020) and on July 17, 2020 Defendants timely filed an appeal regarding the June 19, 2020 Order and Judgment. (*See* ECF # 99 Notice of Appeal, July 17, 2020). Medport then filed a cross motion for summary judgment (*see* ECF #113 Motion for Summary Judgment, August 14, 2020).

Plaintiff now seeks a second partial summary judgment motion to (1) hold Medport, LLC jointly liable for the liquidated damages clause in the Settlement Agreement and (2) enjoin Mr. Schneider from further violating the non-disparagement clause. Defendants disagree; Medport is not jointly liable under the Settlement Agreement and an injunction is unnecessary under these circumstances.

## II.  LEGAL STANDARDS

### 1.  Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is inappropriate when genuine issues of material fact remain in dispute. Whether a fact is "material" rests squarely on substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is also inappropriate when the dispute about a material fact is "genuine," that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The relevant inquiry here is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*, at 251-52.

Federal Rule of Civil Procedure Rule 56(c) requires the moving party to cite to particular items in the record when showing the lack of a genuine dispute, or show that materials cited do not establish a genuine dispute or that facts alleged cannot be supported by admissible evidence. According to the Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is reviewed from the viewpoint most favorable to the party opposing the judgment." *Treemont, Inc., v. Hawley*, 886 P.2d 589, 592 (Wyo 1994) (quoting *Knadler v. Adams*, 661 P.2d 1052, 1053 (Wyo. 1983).

### 2. Contract Interpretation in Wyoming

"In cases requiring the interpretation of a contract, summary judgment is appropriate only if the contract is clear and unambiguous." *Kirkwood v. CUNA Mutual Insurance Society*, 937 P.2d 206, 208 (Wyo. 1997); *see also Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo. 1994). A Settlement Agreement, "like any other contract, is subject to construction as a matter of law, and the intent of the parties is to be gathered from the four corners of the instrument." *Ludvik v. James S. Jackson Co, Inc.*, 635 P.2d 1135, 1143 (Wyo 1981) (quoting *Shepard v. Top Hat Land & Cattle Co., Wyo.*, 562 P.2d 730 (1977).

### 3. Injunctions

An extraordinary remedy, preliminary injunctions are never awarded as of right, and may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 376 (2008); *see also Munaf v. Geren*, 553 U.S. 674 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). An injunction is a form of equitable relief and granted in the Court's discretion. *See Rialto Theatre v. Commonwealth Theatres, Inc.*, 714 P.2d 328,332-33 (Wyo 1986).

When an injunction is sought, it is the Court's responsibility to "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief." *Winter, supra, at* 377 (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). A prerequisite to a Court issuing an injunction is that there is no adequate remedy at law. *Crawford v. City of Sheridan, Wyo.,* 392 P.2d 519 (1964). A Plaintiff seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.*; *see also Munaf v. Geren,* 553 U.S. 674, 689-690 (2008); *Amoco, supra*; *Weinberger v. Romero-Barcelo,* 456 US 305, 311-312 (1982). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *See Amoco, supra,* at 546.

Further, alternatives to injunctions exist when the circumstances warrant, "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *See Steffel v. Thompson,* 415 U.S. 452, 466 (1974). "Specifically, it has been noted that where an award of monetary damages would provide adequate compensation, injunctive relief is inappropriate." *Lee v. Brown, Wyo.,* 357 P.2d 1106 (1960); *Holly Sugar Corporation v. Goshen County Cooperative Beet Growers Association,* 725 F.2d 564 (10th Cir. 1984).

### III.   DISCUSSION

### 1.  SUMMARY JUDGMENT IS INAPPROPRIATE HERE BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAIN IN DISPUTE

Summary judgment is appropriate when no genuine issues of material fact remain in dispute, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, when the evidence produces a sufficient disagreement to require submission to a jury, summary judgment is not the solution. *See Anderson, supra,* at 248 (1986).

Plaintiff brings this motion for partial summary judgment on the issues of (1) whether Medport is bound by Settlement Agreement and jointly liable for the liquidated damages; and (2) whether Plaintiff is entitled to an injunction, requiring Mr. Schneider to abide by the non-disparagement clause. Plaintiff contends these questions "turn on undisputed facts" (ECF # 109,

Motion for Partial Summary Judgment, pg. 8), however Defendants disagree. Indeed, one undisputed fact is that discovery is not complete in this matter, and Defendants believe the forthcoming facts will further support the following: as discussed below, under agency principles, Medport cannot be bound to the Settlement Agreement by either its principal or others because neither Medport nor an authorized Medport representative was present during the Settlement Agreement Negotiations or ensuing execution; Medport was neither an "affiliate" nor "surrogate," certainly not liable as either under the Settlement Agreement; and under 47 U.S. § 230, Medport is not ultimately liable for the allegedly defamatory statements of contributors to the interactive website Healthcare-malpractice.com.

In Wyoming, a contract requires clear, unambiguous terms to support a summary judgment motion, with the parties' intent gathered from the four corners of the instrument. *See Kirkwoood, supra,* at 208; *Treemont, supra,* at 592; *see also Ludvik, supra,* at 1143. In this case, Plaintiff claims Medport is subject to and liable under the terms of a Settlement Agreement that Medport never negotiated for or even signed. *See Dkt. 15-1, Attachment #1, Full and Final Settlement and Mutual Release of All Claims,* Pg. 13 of 14. Plaintiffs argue that the Settlement Agreement should bind Medport under theories of joint liability, however the Settlement Agreement document itself fails to even name Medport as a party. *Id.,* at pg. 1. Defendants believe that if it was the intent of the parties bound by the Settlement Agreement to include Medport as a participant, Medport would have been named, and Medport's representative would have subsequently negotiated in mediation, or at least ultimately executed the document on behalf of Medport. That was not the case here. *Id.*

Medport was organized May 1, 2012 with Kathleen Burrows as 50% member and Manager, and Brandon Schneider as 50% member. *See ECF # 98-2B, ¶¶ 2-3, pg. 1 and ¶ 8, pg. 5 Affidavit of John H. Schneider (and) Articles of Organization for Medport, LLC, June 19, 2020.* At the time the Settlement Agreement was entered, Schneider did not have the authority nor intention to bind Medport to the terms of the Settlement Agreement. *Id, ¶ 7, pg. 2.* In fact, Schneider's ownership

interest in Medport did not occur until July 2018. *See* ECF # 98-2B, ¶ 6, pg. 1; ECF #113-1A, ¶ 5 pg. 2, Declaration of John H. Schneider, August 14, 2020. It seems clear that under these facts, neither Medport's member Manager Kathleen Burrows or other member Brandon Schneider were present to negotiate or execute the Settlement Agreement in 2012. *See* ECF # 15-1, pg. 1. Schneider was not authorized to bind Medport until his ownership interest occurred in 2018, six years after the Agreement was executed. Medport was not intended to be a party to the Settlement Agreement, nor liable under it.

### 2.   UNDER AGENCY PRINCIPALS MEDPORT CANNOT BE BOUND TO THE TERMS OF THE SETTLEMENT AGREEMENT FOR LACK OF PRIVITY

**A.  Medport is not bound under the terms of the Settlement Agreement because neither the principal nor those with authority to bind Medport were parties or signatories.**

The existence and scope of the agency relationship are "questions of fact to be determined by the jury following proper instruction." *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57 (1995); *Henderson v. Coleman*, 19 Wyo 115 P. 439, 445-46 (1911). A principal may be bound by an agent with actual or apparent authority. *Ulen v. Knecttle*, 50 Wyo 94, 103-04 (1936). Actual authority may be express or implied. *Id.* Agents have express actual authority when a principal, orally or in writing, "specifically grants the agent the power to bind the principal." *United State v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir.), cert. denied, 502 US 1005 (1991). The course of dealings between the parties along with the case circumstances establishes implied actual authority. *Ulen*, 58 P.2d at 449.

Apparent authority, however, requires the principal to hold an agent out as *possessing the authority to bind the principal*, or when a principal allows an agent to claim such authority. *Id*, (emphasis added). Binding a principal under the theory of apparent authority requires a party to "establish personal knowledge of, and reliance on, the apparent authority of the agent." *Id.* In *Cargill*, the Wyoming Supreme Court articulated the test from *Herbert Const. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993-94 (2nd Cir. 1991) which requires the third party to establish two facts: (1) the principal "was responsible for the appearance of authority in the agent to conduct the transaction in

question," and (2) the third party reasonably relied on the representations of the agent. *See also Ford v. Unity Hospital*, 32 N.Y.2d 464, 473 (1973); *Hallock v. State*, 64 N.Y.2d 224, 231 (1984).

Plaintiff argues Schneider and/or Schneider LP had authority to bind Medport, and therefore Medport should be jointly liable for alleged breaches of the Settlement Agreement. However, at the Settlement Agreement negotiations, neither Medport's member Manager Kathleen Burrows, Medport's member Brandon Schneider, nor an agent of Medport was present to negotiate. *See ECF # 15-1, pg. 1*. In fact, The Articles of Organization in effect for Medport at the time the Settlement Agreement was executed gave only Kathleen Burrows the authority to bind Medport. *See* ECF # 98-2B ¶ 7, pg. 2. *Aff. John H. Schneider*; *see also pg. 4-5, Articles of Organization of Medport, LLC effective April 26, 2012*. However, Kathleen Burrows was not a signatory to the 2012 Settlement Agreement on behalf of Medport, and there is no other written document evidencing Medport or Kathleen Burrows contemporaneously granting Schneider, Schneider LP, or any other signatory the written or oral authority to act as Medport's agent to enter into the Settlement Agreement.

There is no evidence in the record to show anyone who could have portrayed the appearance of authority representing Medport at the Settlement Agreement negotiations, or that Plaintiff reasonably relied on such agent's apparent authority or representations of authority. Because there were no Medport principals or agents present at the Settlement Agreement negotiations or execution, under the principles of agency Medport is not bound to the terms of the Settlement Agreement.

**B. Schneider did not have the actual authority, express or implied, to bind Medport to the Settlement Agreement.**

Plaintiff argues that Schneider had "express authority" or "implied actual authority" to bind Medport to the Settlement Agreement. However, this argument fails because there is no evidence of any authority conveyed by Medport or its managers to any third-party to bind Medport to the

Settlement Agreement. As discussed above, the Articles of Organization in effect for Medport at the time the Settlement Agreement was executed gave only Kathleen Burrows the authority to bind Medport to the terms of the Settlement Agreement. *See* ECF # 98-2B ¶ 7, pg. 2., *Aff. John H. Schneider*; *see also pg. 4-6, Articles of Organization of Medport, LLC effective April 26, 2012.* Kathleen Burrows was not a signatory to the Settlement Agreement on behalf of Medport and there is no written document evidencing Medport or Kathleen Burrows contemporaneously granting Schneider, Schneider LP, or any other signatory the written or oral authority to act as Medport's agent to enter the Settlement Agreement. If there was authority conveyed to allow Medport to enter the Settlement Agreement, *somebody* would have actually signed the Settlement Agreement on Medport's behalf.

Despite the fact that Kathleen Burrows may have claimed that Schneider had the "authority" to bind Medport to "any agreement to settle the lawsuits", Schneider was not a member, manager, or officer of Medport, and therefore he had no authority to bind Medport to the Settlement Agreement. Additionally, there is no evidence reflecting Schneider had the "express authority" to bind Medport to the Settlement Agreement in 2012. To the extent there was any "implied actual authority conveyed by Kathleen Burrows to Schneider, such implied authority would solely have been within the scope of services Schneider provided to Medport, as described in ¶ 4 of his affidavit. *Dkt. 103.* Schneider developed other intellectual property in association with Medport, including the Neuromodulation Project, Doctor's Black Bag, Healthcare-malpractice.com, etc. *Id.,* ¶ 4, pg. 7 of the *Articles of Dissolution of Medport, LLC.* Schneider's involvement in these projects did not give him any express or implied authority to bind Medport to the Settlement Agreement.

**3. BECAUSE MEDPORT WAS NOT AN AFFILIATE OR SURROGATE, MEDPORT IS NOT SUBJECT TO THE SETTLEMENT AGREEMENT**

**A. Medport was not an "affiliate" of Schneider LP or John H. Schneider at any time.**

Plaintiff argues Medport, as an "affiliate" to John H. Schneider and Schneider LP, is bound to the Settlement Agreement and that Medport was an intended "surrogate or other entit[y]" of the

Settlement Agreement's signatories. *Dkt. 103, p.8.* Defendant has previously argued against holding Medport directly liable as a "surrogate" under ¶ 6 of the Settlement Agreement and will not repeat its argument here. *See* ECF # 98, p.5.

Plaintiff cites to Black's Law Dictionary's definition of "affiliate" as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." AFFILIATE, Black Law's Dictionary (9th ed. 2009). Plaintiff's preferred definition is vague, imprecise, and is not met in these circumstances.

First, Schneider had no means of control over Medport until 2018 and had no intention to bind Medport to the Settlement Agreement at any time. *See* ECF # 98-2B, ¶ 7, pg. 2. As part of Medport's dissolution process beginning in late 2018, Healthcare-malpractice.com was distributed to Schneider, prior to the alleged breach of contract by Biles. *Id.,* at ¶¶ 8-11. At the time of the alleged breach of the Settlement Agreement in 2019, Medport no longer owned or derived any income from Healthcare-malpractice.com. *Id.,* at ¶¶ 11-12.

It is an undisputed fact that neither Schneider, nor Schneider LP had any ownership interests in Medport in 2012. Schneider LP was merely a lender to Medport, and there was no relation "by shareholdings" between Medport and Schneider LP to meet Plaintiff's definition of "affiliate" mentioned above. Further, because Schneider lacked an ownership interest in Medport in 2012, he could not be "related" to Medport "by shareholdings" at the time the Settlement Agreement was entered.

Merriam-Webster's definition of "affiliate" focuses on a "dependent or subordinate" status between the entities, which also fails here. Medport consistently operated independently of both Schneider and Schneider LP up until its dissolution in 2018.

There is no reason that Plaintiff's suggested definition of "affiliate" should control. *Carmichael v. The Payment Ctr., Inc.,* 336 P.3d 636, 639-40 (7th Cir. 2003). Schneider offers a clearer

and more conclusive definition of "affiliate" which derives from U.S. law, rather than Plaintiff's definitions which dilute the protections afforded to non-signatories by ordinary principles of contract and agency law. The Securities and Exchange Commission defines "affiliate" as follows: "[a]n affiliate of, or person affiliated with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified." 17 C.F.R. ¶ 230.405. Under this definition, Schneider or Schneider LP would need to directly or indirectly, control, be controlled by, or be under common control with Medport to be an affiliate. However, Plaintiff presents no evidence that Medport controlled, was controlled by, or acted under common control with Schneider or Schneider LP at the time the Settlement was entered in 2012. In fact, Medport was managed only by Kathleen Burrows and not Schneider LP at the time the Settlement Agreement was entered. *See* ECF # 15-1, Pg. 13 of 14. Kathleen Burrows did not establish a "common control" relationship between Medport and Schneider LP for purposes of binding Medport to the Settlement Agreement simply by attending a meeting where the capitalization of Medport by Schneider LP was discussed.

The 10th Circuit District Court defined "affiliate" as "[o]ne of two legal entities **owned and controlled** by the same group of individuals, each individual owning and controlling approximately the same share of proportion of each entity." *Mahalaxmi Amba Jewelers et al v. Johnson et al.,* No. 15-3214, (10th Cir, 2016); 8 C.F.R. § 204.5(j)(2)(B) (emphasis added). Here, Medport was owned equally by Brandon Schneider and Kathleen Burrows, not by Defendant Schneider, or Schneider LP. *See* ECF # 98-2B, ¶ 3. Medport was therefore not "owned and controlled" by Schneider LP or Schneider to constitute an "affiliate" under the Settlement Agreement, and Plaintiff's argument fails.

### 4. MEDPORT IS IMMUNE FROM LIABILITY FOR STATEMENTS MADE ON HEALTHCARE-MALPRACTICE.COM UNDER THE COMMUNICATIONS DECENCY ACT OF 1996, 47 USC § 230.

**A. Medport is not liable for the content displayed on Healthcare-malpractice.com because the content on the interactive site originated with third parties.**

47 U.S.C. § 230 provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service." In *Ben Ezra, Weinstein & Co., v. America Online Inc.,* 206 F.3d 980, 986 (10th Cir. 2000), the Court determined that "[i]mposing liability...would "treat" Defendant as the "publisher or speaker," a result § 230 specifically proscribes." *Id.* In *Zeran v. America Online Inc.,* 129 F.3d 327, 330 (1997) the Fourth Circuit Court held "§ 230 barred a plaintiff's suit seeking to hold AOL liable for defamatory speech initiated by a third party." There, the Court refused to cast AOL in the same position as the party who originally posted the allegedly defamatory statements. *Id,* at 333.

The reason Congress enacted § 230 was to "forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Ben Ezra, supra,* at 986, quoting *Zeran, supra,* at 331. "Congress enacted § 230 to give interactive service providers "a reasonable way to...help them self-regulate themselves without penalty of law." *Id.,* (quoting 141 Cong. Rec. H8460-01, H8470 (1995) (statement of Rep. Barton)).

Medport here, is in a position similar to AOL in *Zeran.* Healthcare-malpractice.com was an asset developed by Medport that published newsworthy information relevant to the licensure of physicians arising from physician misconduct. *See ECF # 113-1A,* ¶¶ 4, 8. Healthcare-malpractice.com collected stories of incidents from various contributors that implicated physicians' misconduct. *Id.* Schneider continued the website's purpose when he gained legal ownership over it as part of Medport's efforts to wind down its affairs. *Id.* at ¶¶ 5-6. The information posted on Healthcare-malpractice.com was relevant to the licensure and competency of the physicians the contributors commented and blogged about, making the information newsworthy for the purposes

advanced by the site. *Id.* at ¶¶ 13-14. Even Schneider's publications regarding competency and fitness for licensure were in furtherance of this website's mission.

Holding Medport liable does not comport with § 230 because it would require the Court to treat Medport as the "publisher or speaker", the very situation Congress tried to prevent by enacting § 230. *Ben Ezra, supra,* 206 F.3d at 986. "By its plain language, § 230 created a federal immunity to any cause of action that would make service providers liable for information originating with a third party." *Id.* Here, Medport cannot be liable for third party statements made on an interactive website because in fact the third parties who contributed to the site are the publisher or speaker, under § 230, not Medport.

### 5. INJUNCTION IS AN EXTREME REMEDY, AND IS INAPPROPRIATE AT THIS TIME BECAUSE LEGAL REMEDIES ARE NOT INADEQUATE

Injunctions are an extraordinary remedy and are never awarded as of right. Plaintiffs must clearly show they are entitled to such discretionary equitable relief. *See Winter v. Natural Resources Defense Council, Inc.,* 129 S. Ct. 365, 376 (2008); *see also Munaf v. Geren,* 553 U.S. 674 (2008); *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam); *see also Rialto Theatre v. Commonwealth Theatres, Inc.,* 714 P.2d 328,332-33 (Wyo 1986). It is the Court's responsibility to balance competing claims of injury, including how the injunction will affect each party. *See Winter, supra, at* 377 (quoting *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987)). Inadequate legal remedy is a prerequisite to a Court issuing an injunction. *Crawford v. City of Sheridan, Wyo.,* 392 P.2d 519 (1964).

A Plaintiff seeking preliminary injunctive relief must establish (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of such preliminary relief, (3) that the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Id.; see also Munaf v. Geren,* 553 U.S. 674, 689-690 (2008); *Amoco, supra*; *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311-312 (1982). For permanent injunctive relief, Plaintiff here must establish "actual success" on the merits, rather than just a likelihood of that success. *See Amoco, supra,* at 546. However, the United States Supreme Court has offered alternatives to injunctive relief when the circumstances

warrant, including declaratory relief. *See Steffel v. Thompson, supra,* at 466. "Specifically, it has been noted that where an award of monetary damages would provide adequate compensation, injunctive relief is inappropriate." *Lee v. Brown, Wyo.,* 357 P.2d 1106 (1960); *Holly Sugar Corporation v. Goshen County Cooperative Beet Growers Association,* 725 F.2d 564 (10th Cir. 1984).

On June 18, 2020 this Court awarded Plaintiff a permanent injunction upon the following conclusions: that Schneider indeed posted materials on Healthcare-malpractice.com; Plaintiff Biles had succeeded on the merits and that Plaintiff suffered an irreparable injury from the conduct. In that injunction, Schneider and Medport are prohibited from "posting, publicizing, or disseminating information about Plaintiff not in the public record, including the Bonner Stinson Interviews, information contained in the Bonner Stinson Interviews, or materials quoting or referencing the Bonner Stinson Interviews." *See* ECF # 92, pg. 19, and pg. 18, fn 10.

Under these circumstances, because an injunction is already in place, the balance of the equities supports an alternative approach. *See Steffel, supra.* Here, Defendants maintain that there is a genuine dispute about the material facts involved, and injunction is an untimely, unwarranted, extreme remedy for relief while this case is still pending. Discovery in this case is not complete, and Defendants contend, as argued above, that Medport is not liable under the Settlement Agreement. Further, at this time in the discovery phase, there is no evidence that a legal remedy would be inadequate and that an injunction is warranted to prevent Schneider from disparaging Plaintiff under the terms of the Settlement Agreement.

## IV.    CONCLUSION

Plaintiff's motion for partial summary judgment must fail because summary judgment is inappropriate when genuine issues of material fact remain in dispute. Here, there are a multitude of facts that are currently still in dispute. Though Plaintiff would hold Medport liable under the terms of the Settlement Agreement, the Agreement itself does not include Medport as a party or signatory. Both Plaintiff and Defendants disagree on whether the parties intended Medport to be included and bound to the terms of the Settlement. Additionally, though Plaintiff argues

otherwise, under agency principles, the lack of privity between Medport, Schneider and Schneider LP further precludes Medport's liability to the terms of the Settlement Agreement because Medport was neither a party, signatory or third-party beneficiary to the Settlement Agreement and Schneider did not intend nor have the authority to bind Medport to the Settlement Agreement at the time it was executed. Regardless, "whether an agency relationship exists and the scope of the agent's authority are questions of fact to be determined by the jury following proper instructions. *See Cargill, supra, at 33, and Henderson, supra, at 183.* Finally, Medport was not an affiliate or surrogate to Schneider or Schneider LP as Plaintiff suggests, and under 47 U.S.C. § 230 Medport cannot be held liable for the communications of third parties on an interactive website.

For these reasons, Medport cannot be held jointly liable under the Settlement Agreement, and an injunction is inappropriate at this time and under these circumstances. Therefore, summary judgment is inappropriate here because genuine issues of material fact remain in dispute, and Defendants request their resolution to be determined by a jury.

Respectfully submitted this 20th day of August, 2020.

/s/ Gregory Costanza
Gregory G. Costanza, Esq.
201 W. Madison Ave
Suite 450
Belgrade, MT 59714
Gregory@granitepeaklaw.com
(o) (406) 404-6533
(c) (307) 264-2994
Attorney for Medport, LLC and Limited Scope Attorney for
Defendant Schneider

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2020, a copy of the foregoing document was served

on the following persons via CM/ECF:

Anna Reeses Olson #6-3692
Park Street Law Office
242 S. Park Street
Casper, WY 82601
T: (307) 265-3843
F: (307) 235-0243
aro@parkstreetlaw.com
Attorneys for Counter-Defendant
Jimmy Biles

R. Daniel Fleck
M. Kristeen Hand
THE SPENCE LAW FIRM, LLC
15 South Jackson
P.O. Box 548
Jackson, WY 83001
T: 307.733.7290
F: 307.733.5248
Attorneys for Plaintiff Jimmy Biles

/s/ Gregory Costanza