R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, JR., M.D.,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HENRY SCHNEIDER, JR.; and MEDPORT, LLC,<br><br>Defendants. | Civ. No. 19-CV-48-F |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MEDPORT'S SECOND MOTION FOR SUMMARY JUDGMENT [ECF # 113]**

Plaintiff Jimmie G. Biles, Jr., M.D., by and through his counsel, R. Daniel Fleck, M. Kristeen Hand, and Sarah A. Kellogg of THE SPENCE LAW FIRM, LLC, hereby files Plaintiff's Response in Opposition to MedPort's Second Motion for Summary Judgment, and states as follows:

This case arises from the breach of a Settlement Agreement resolving the defamation claims brought by Plaintiff Jimmie G. Biles, M.D. against Defendant John Henry Schneider, Jr.

and others in the lawsuits *Biles v. Schneider,* No. 2:11-cv-00366-NDF (D. Wyo. dismissed June 18, 2012) and *Biles v. Fallon,* No. 2:11-cv-00294-NDF (D. Wyo. dismissed June 18, 2012). The Court has already held that Mr. Schneider violated the Settlement Agreement's confidentiality clause when he posted his attorneys' notes from their witness interviews ("Bonner-Stinson Interviews") on his website healthcare-malpractice.com. The Court then awarded liquidated damages under the confidentiality clause and enjoined Defendants from further disseminating the materials.

In the present motion, Defendants raise belated First Amendment, Fifth Amendment due process, and statutory defenses to enforcement of the Settlement Agreement's confidentiality and non-disparagement clauses. These defenses are untimely because Defendants did not raise them in response to Plaintiff's Motion for Partial Summary Judgment, which was filed approximately five months ago. Moreover, Defendants never pled their statutory affirmative defense of immunity under the Communications Decency Act. The Court should decline to consider these untimely defenses, which also lack merit, and deny Defendants' motion.

I. FACTS

The facts of this case are well known to the Court and Plaintiff incorporates by reference the statement of undisputed facts set forth in his March 26, 2020 Motion for Summary Judgment (ECF #74) and August 6, 2020 Motion for Summary Judgment (ECF # 109). For purposes of this Motion, the following undisputed facts are also relevant:

1. The Settlement Agreement contained a confidentiality clause (ECF # 74-1, Settlement Agreement (filed under seal), at ¶ 3) and a nondisparagement clause (*id.* at ¶ 6).

2. Mr. Schneider admits that he had the opportunity to consult counsel prior to signing the Settlement Agreement. ECF # 74-2, Request for Admission 2.

3. Mr. Schneider signed the Settlement Agreement *under oath,* swearing that "the terms of the Settlement Agreement have been **completely read** and are **fully understood** and **voluntarily accepted** . . . ."  ECF # 74-1, Settlement Agreement at ¶ 7 (filed under seal) (emphasis added).

4. Mr. Schneider's counsel, Bradley Bonner, also signed the agreement to signify his approval.  ECF # 74-1, Settlement Agreement, at p. 14.

5. Mr. Schneider admits that he posted a link to his attorneys' confidential work product (previously provided under seal as an exhibit to ECF # 86-1) on the website, healthcare-malpractice.com, owned by his now defunct company, MedPort, LLC.  ECF # 113-1, Schneider "Aff." at ¶ 7–8 (stating that Mr. Schneider exercised his "moral judgment" in deciding to publish the interviews).

6. The stated goal of healthcare-malpractice.com was to match potential medical malpractice plaintiffs first with expert witnesses, who would review their care and treatment, and then, if a standard of care breach was identified, with trial lawyers.  Ex. A, Overview HC-MP.  Apparently, the website planned to feature curated "storyline examples and blogs," to educate the public and drive traffic to the website.  *Id.; see* Ex. B, HC-MP flowchart.

7. Defendants have not previously disclosed the testimony presented in Mr. Schneider's unsworn "affidavit" that "over 350 clients and bloggers" "provided content for" healthcare-malpractice.com, "naming providers and hospital systems where quality of care was a concern."  ECF # 113-1, Schneider Aff. at ¶ 4.  Rather (following a motion to compel), Defendants Rule 26 disclosure of Mr. Schneider merely stated:

> Dr. Schneider has information pertaining to Biles' professional and personal conduct stemming from the time that Dr. Schneider worked in the Wyoming and Montana region.

Ex. C, MedPort 2nd Suppl. Respon. at p. 1; ECF # 88, Order Granting Mtn to Compel, at 5–7 (requiring MedPort to "sufficiently explain the subject of discoverable information that each individual listed in the initial disclosures may have."). Relying on this limited disclosure, Plaintiff did not depose Mr. Schneider.

8. Defendants also have not disclosed any blogs or other content that was published on healthcare-malpractice.com by any users other than Mr. Schneider. In fact, it is Plaintiffs understanding that Mr. Schneider was the only user to post to healthcare-malpractice.com from September 2018 to February 2019. According to the "activity log" for healthcare-malpractice.com that was provided in response to Plaintiff's subpoena to JTech Communications, Inc., the company that hosted heathcaremalpractice.com, it appears that omnineuro@live.com (i.e. Mr. Schneider) was the **only** user that added content to healthcare-malpractice.com from September 15, 2018 through February 19, 2019. Ex. D, Activity Log[1]; Ex. E, MedPort-godaddy login (demonstrating that Mr. Schneider's email address is omnineuro@live.com). During this timeframe, Mr. Schneider was also the sole owner of MedPort, LLC and healthcare-malpractice.com. ECF # 103-10, MedPort Disc. Ans. at Request for Adm. 1–2 (admitting that Mr. Schneider has been the sole owner and officer of MedPort since July 5, 2018).

II. LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the

---

[1] While the formatting (i.e. column width and height) of the activity log provided as Exhibit D has been altered in order to convert the Excel spreadsheet into a readable PDF for electronic filing, no edits or changes of any kind have been made to the substance of the log.

> substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.
>
> The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett,* 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).
>
> Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.*
>
> \* \* \*
>
> When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

*Nat'l Union Fire Co. of Pittsburgh, PA. v. Toland*, 164 F.Supp.3d 1330, 1333–34 (D. Wyo. 2016).

### III.   ANALYSIS

The Court should deny this Motion: (1) Defendants failed to timely raise these arguments in response to Plaintiff's motion summary judgment on the confidentiality clause (or in their subsequent motion for reconsideration); (2) Defendants voluntarily waived any First Amendment rights by entering a confidentiality and non-disparagement agreement; (3) Defendants' First Amendment interest in disparaging Dr. Biles does not serve any legitimate public policy; (4) Fifth Amendment due process concerns are not implicated by the enforcement of a settlement agreement between private parties; and (5) statutory immunity under the Communications Decency Act is an affirmative defense, which Defendants failed to plead, and which does not apply to Defendants' *own* posts on their *own* website.

1. **Defendants did not raise First Amendment, due process, or Communications Decency Act defenses in response to Plaintiff's earlier motion or partial summary judgment or in their subsequent motion for reconsideration.**

First, in granting Plaintiff's motion for partial summary judgment on the confidentiality clause (ECF # 74), the Court has already held that the confidentiality clause is enforceable, that Mr. Schneider breached the confidentiality clause by posting the Bonner Stinson Interviews, and that Plaintiff is entitled to recover liquidated damages for that breach. ECF # 92, Order; ECF # 93, Judgment. Defendants elected not to raise any First Amendment, due process, or statutory defenses in their opposition to Plaintiff's Motion for partial summary judgment. ECF # 82, Def. Response. Defendants then filed a motion to alter or amend that judgment (which was essentially a motion for reconsideration because there is no final appealable order) and still did not raise any First Amendment, due process, or statutory defenses to enforcement of the confidentiality clause. ECF # 98, Def. Motion to Amend. In effect, the present motion serves as Defendants' second motion for reconsideration of the Court's order granting partial summary judgment. But a motion for reconsideration is not a proper vehicle "to make new arguments which were previously available." *Libretti v. Courtney,* No. 14-CV-01070-SWS, 2015 WL 12938931, * 1 (D. Wyo. Mar. 11, 2015). Accordingly, the Court should hold that Defendants waived their First Amendment, due process, and statutory defenses to the confidentiality clause by repeatedly failing to raise them.

2. **Defendants voluntarily waived any First Amendment right to disparage Dr. Biles when they signed the Settlement Agreement.**

To the extent that the Court reaches Defendants' belated First Amendment argument, Defendants waived any First Amendment protections by voluntarily entering a non-disparagement and confidentiality agreement with Dr. Biles.

This question was firmly settled by the United States Supreme Court in *Cohen v. Cowles Media, Co.*, 501 U.S. 663 (1991), where the Court held that the First Amendment did not bar the plaintiff's promissory estoppel claim against a newspaper for breaking its promise not to identify him as a source. *Id.* at 666; *id.* at 672 ("[T]he First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law . . . ."). The Court remarked that enforcement of the promise "simply requires those making promises to keep them."[2] *Id.* at 670–71. After all, "[t]he parties themselves . . . determined the scope of their legal obligations, and any restrictions that may be placed on the publication of truthful information are self-imposed." *Id.*.

Relying on *Cohen*, courts routinely uphold confidentiality and non-disparagement agreements as enforceable waivers of the First Amendment. *See e.g. Malem Medical, Ltd. v. Theos Medical Systems, Inc.*, 761 Fed.Appx. 762, 764–65 (9th Cir. 2019) (enforcing a non-disparagement clause and holding that a party waived his First Amendment rights); *Peirce v. St. Vrain Valley School District,* 981 P.2d 600, 604 (Col. 1999) (en banc) ("Enforcement of [a] settlement agreement does not violate the First Amendment, but merely applies the law of Colorado, which 'simply requires those making promises to keep them.'") (quoting *Cohen,* 501 U.S. at 671); *Estate of Barber v. Guilford County Sheriff's, Dept.*, 589 S.E.2d 433 (N.C. App. 2003) (holding that a non-disparagement clause in a settlement agreement was an enforceable waiver of First Amendment rights). In fact, Defendants cite *Leonard v. Clark*, in which the Ninth Circuit held that a labor union waived certain First Amendment rights in its collective bargaining agreement. 12 F.3d 885, 890 (9th Cir. 1993). Noting that the union consulted

---

[2]  The Court also remarked on the appropriateness of liquidated damages in confidentiality agreements, stating "If the contract between the parties in this case had contained a liquidated damages provision, it would have been clear that the payment would represent a cost of acquiring newsworthy materials to be published at a profit . . . ." *Id.* at 670.

competent counsel before signing the agreement, the court explained that the union's waiver of First Amendment rights was enforceable because it was "knowing, voluntary, and intelligent." *Id.*; *see id.* ("[i]f the Union felt that First Amendment rights were burdened by [its collective bargaining agreement], it should not have bargained them away and signed the agreement.").

      Unlike *Cohen*, however, *Leonard* adds a requirement that evidence of waiver must be shown "upon clear and convincing evidence." *Id.* at 889. Other jurisdictions have not adopted this heightened burden. *See Erie Telecommunications, Inc. v. City of Erie, Pa.,* 853 F.2d 1084, 1096 (10th Cir. 1988) ("constitutional rights, like rights and privileges of lesser importance, may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver."). In fact, some jurisdictions place the burden on the party resisting waiver to prove the invalidity of the waiver. *See Perricone v. Perricone*, 972 A.2d 666, 681 (Ct. 2009) (holding that waivers of First Amendment rights "are presumptively enforceable and the burden of proving their invalidity is on the party seeking to avoid waiver."); *Estate of Barber v. Guilford County Sheriff's Department*, 589 S.E.2d 433, 437–38 (N.C. App. 2003) (remarking "plaintiffs offered no evidence to show that their First Amendment right to freedom of speech was ***not*** knowingly, voluntarily, and intelligently waived.") (emphasis added).

      The Tenth Circuit has not fully addressed the proper burden to apply when analyzing whether a party waived his First Amendment rights. In its lone decision bearing on this issue, *Cary v. Board of Education of Adams-Arapahoe School District,* the Tenth Circuit analyzed the plain language of a collective bargaining agreement and simply concluded that the agreement did not "deliberate[ly]" waive the union's First Amendment rights. 598 F.2d 535, 539 (10th Cir. 1979). More recently, however, the Tenth Circuit has addressed contractual waiver of another

important constitutional right — the Seventh Amendment right to a jury trial.  Much like in *Cary,* to determine if parties agreed to waive their Seventh Amendment right and submit to arbitration, the Tenth Circuit applies ordinary contract principals.  *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) ("To determine whether a party has agreed to arbitrate a dispute, we apply ordinary state-law principles that govern the formation of contracts.") (internal quotations omitted).  Based on this analysis, it is likely that the Tenth Circuit would reject the Ninth Circuit's heightened burden and simply analyze the language of the Settlement Agreement to determine if Defendants waived their asserted First Amendment "right" to disparage Dr. Biles and publish confidential information.

Ultimately, however, this discussion about burden of proof is purely academic — even under the Ninth Circuit's clear and convincing burden, Mr. Schneider knowingly, intelligently, and voluntarily relinquished Defendants' First Amendment rights when he signed the Settlement Agreement.  Like the Defendant in *Leonard,* Mr. Schneider had the opportunity to consult with counsel prior to signing the Agreement.  ECF # 74-2, Request for Admission 2 (admitting "[Mr. Schneider] had the opportunity to consult with counsel prior to signing the Settlement Agreement.").  He signed the Settlement Agreement ***under oath*** swearing that "the terms of the Settlement Agreement have been **completely read** and are **fully understood** and **voluntarily accepted** . . . ."  ECF # 74-1, Settlement Agreement at ¶ 7 (filed under seal) (emphasis added).  Mr. Schneider's counsel also signed the agreement to signify his approval.  *Id.*; *see Erie Telecommunications, Inc.*, 853 F.2d at 1096 (Waiver is found "where parties to the contract have bargaining equality and have negotiated the terms of the contract, and where the waiving party is advised by competent counsel and has engaged in other contract negotiation.").  No matter what

burden applies, Defendants waived their First Amendment rights by signing a Settlement Agreement containing a confidentiality and non-disparagement clause.

### 3. Defendants' breaches of the confidentiality and non-disparagement clauses serve no legitimate public policy objectives.

Defendants next argue that the Court should not enforce their waiver of First Amendment "rights" to disparage Dr. Biles because the interest in enforcement of the contract is outweighed by Wyoming public policy concerns. Defendants assert that a public policy in favor of disparaging physicians is embodied in Wyoming's physician licensing statutes. Even assuming that the Bonner Stinson Interviews contained true information implicating the Wyoming physician licensing statutes (which they do not), Defendants fail to recognize that Wyoming has adopted a public policy of protecting the privacy and reputation of physicians, until and unless there is an adjudication of wrongdoing. For example, Wyoming Board of Medicine documents are statutorily privileged. *See* W.S. § 33-26-408. This specifically includes, "witness statements" and "correspondence." *Id.* But even more fundamentally, after reviewing the disparaging and confidential information at the preliminary injunction hearing (which Mr. Schneider chose not to attend), the Court held "there is nothing in the record to suggest that any of these statement are true and made for purposes of protecting the public." ECF # 19, Order on Prelim. Inj. at 4. That finding remains sound. There is no Wyoming public policy that would justify dismantling the contract to which Defendants freely agreed.

### 4. Defendants' Fifth Amendment due process argument is without merit.

Defendants next argue that enforcement of the non-disparagement clause violates their Fifth Amendment due process rights because they did not intend to be bound in perpetuity by the non-disparagement clause and because the clause is too vague. Curiously, to support this argument, Defendants rely on cases invalidating vague ***laws*** or ***regulations*** under the Fifth

Amendment.  *See F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239 (2012); *Reno v. A.C.L.U.,* 521 U.S. 844 (1997).  The Fifth Amendment vagueness doctrine is primarily a creature of *criminal* law, which provides that "[a] conviction fails to comport with due process if the statue under which it is obtained fails too provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *U.S. v. Williams,* 553 U.S. 285, 304 (2008).  Defendants have not cited to any cases extending the Fifth Amendment vagueness doctrine to the civil enforcement of a contract between two private parties.  And in fact, unlike vague laws and regulations, courts do not simply decline to enforce "vague" (i.e. ambiguous) contracts.  Rather, courts follow well accepted rules of contract interpretation to determine the parties' intent.  *See Belmont v. BP Am. Prod. Co.*, No. 13-CV-63-F, 2014 WL 11456765, at *3 (D. Wyo. Mar. 13, 2014) (setting forth Wyoming's rules of contract interpretation).  Applying those rules, the Court has already rejected Defendants argument about that they did not agree to the Settlement Agreement's perpetual duration.  ECF # 92, Order on SJ, at 18.  The Court should not revisit that analysis — Defendants unambiguously agreed to forever refrain from disparaging Dr. Biles or publishing confidential information.

5. **Defendants belated affirmative defense of the Communications Decency Act does not bestow immunity to Defendants for their *own posts* on *their own website*.**

Finally, the Communications Decency Act of 1996 ("CDA") does not bar Plaintiff's claims.  The CDA provides limited immunity through Section 230(c)(1), which states:

> No provider or user of an **interactive computer service** shall be treated as the **publisher or speaker** of any information provided by ***another* information content provider**.

47 U.S.C. § 230(c)(1) (emphasis added).  This language does not impart immunity on Defendants in this case because: (1) Defendants did not plead the CDA as an affirmative

defense; (2) Defendants have not shown that healthcare-malpractice.com was an "interactive computer service"; (3) the disparaging and confidential posts did not originate with "another information content provider" — they originated with Mr. Schneider and his lawyers; and (4) Defendants' liability arises out of a contract, not through their role as a "publisher or speaker."

First, immunity under the CDA is an affirmative defense, which is waived if not properly pled. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any. . . affirmative defense."); *Burke v. Regaldo,* 953 F.3d 960, 1040 (10th Cir. 2019) ("As a general rule, a defendant waives an affirmative defense by failing to plead it."); *Silva v. Quora, Inc.*, 666 Fed.Appx. 727, 728 (10th Cir. 2016) (treating the CDA as an affirmative defense); *Therion, Inc. v. Media by Design, Inc.*, No. CV 08-5256 TCP ETB, 2010 WL 5341925, at *9 (E.D.N.Y. Nov. 10, 2010), *report and recommendation adopted*, No. 08-CV-5256 TCP ETB, 2010 WL 5341920 (E.D.N.Y. Dec. 16, 2010) (holding that CDA immunity defense was waived because the defendant failed to properly plead). Defendants did not raise the affirmative defense of CDA immunity until the present motion. Discovery is now closed and Plaintiff would be prejudiced by the late disclosure of this immunity defense, on which the parties have conducted no discovery. *Bentley v. Cleveland Cnty Bd. Of Cnty Com'rs,* 41 F.3d 600, 605 (10th Cir. 1994) ("Permitting the [defendant] to raise this issue at this stage of the proceedings would be extremely unfair to the [plaintiff], who may have been able to prove some exception to the [immunity] if he had notice of the defense."). Accordingly, the Court should hold that Defendants waived any CDA defense.

Second, CDA immunity only applies to "interactive computer services", defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that

provides access to the Internet." 47 U.S.C. § 230(f)(2).  The "prototypical" example is "an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others."  *Silva*, 666 F. App'x at 730.  Defendants assert that healthcare-malpractice.com is[3] an interactive computer service because it "allows personal testimonials to be posted about difficult interactions that the public and practitioners have had with physicians."  ECF # 113, at p. 19–20.  The only evidence to support this conclusory statement is the unsworn (and previously undisclosed) affidavit of Mr. Schneider.  Defendants provide no documents demonstrating that any users (other than Mr. Schneider) ever posted to healthcare-malpractice.com.  To the contrary, according to the activity log for healthcare-malpractice.com, Mr. Schneider was the only user that added content to healthcare-malpractice.com from September 15, 2018 through February 19, 2019 (a time when he was also the sole owner).  Ex. D, Activity Log.

Third, the CDA does not impart immunity on Defendants in their capacity as "information content provider[s]," defined as "any person or entity that is **responsible**, in whole or in part, for the creation or **development** of information provided through the internet."  47 U.S.C.A. § 230(f)(3) (emphasis added).  A provider need not author content to be considered a developer of content.  Rather, the Tenth Circuit holds that a provider may "develop" content obtained from another source simply by making the content accessible to the public.  *See F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009).  In *F.T.C. v. Accusearch Inc.* the Tenth Circuit explained that "when confidential telephone information was exposed to public view through [a website], that information was 'developed.'"  *Id.*  Here, even if Defendants did

---

[3] As far as Plaintiff can discern, healthcare-malpractice.com is no longer a functioning URL.

not author the Bonner-Stinson Interviews, they "developed" the content by posting a link on healthcare-malpractice.com.

Arguably every provider "develops" the content of their website, simply by hosting the URL. Thus, to be considered an "information content provider," exempt from CDA immunity, a provider must also be "responsible" for the offensive content — i.e. "more than a neutral conduit for that content." *Id.* at 1199. For example, an individual "who builds a highway is [not] 'responsible' for the use of that highway by a fleeing bank robber, even though the culprit's escape was facilitated by the availability of the highway." *Id.* Here, Defendants were not simply neutral conduits. Rather, Mr. Schneider freely admits that he posted the Bonner Stinson Interviews to healthcare-malpractice.com at a time when he was the sole owner of the website. ECF # 113-1, Schneider "Aff.", at ¶ 7–8. In doing so, he apparently selected specific "excerpts," which according to his "moral judgment," he felt were newsworthy and "relevant to the website." *Id.* at ¶ 8. Therefore, Defendants are "information content providers," exempt from any immunity under the CDA.

Finally, CDA immunity only provides immunity from liability "when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009). Although the Tenth Circuit has not reached this question, other jurisdictions hold that claims sounding in contract do not trigger CDA immunity because they are derived from the breach of a promise, not the duties of publisher or speaker. *See id.* at 1109 ("insofar as [plaintiff] alleges a breach of contract claim under the theory of promissory estoppel, subsection 230(c)(1) of the Act does not preclude her cause of action."); *Enhanced Athlete, Inc. v. Google LLC*, No. 19-CV-08260-HSG,

2020 WL 4732209, * 4 (N.D. Cal. Aug. 14, 2020) (holding that Section 230(c)(1) does not impart immunity for breach of the implied covenant of good faith and fair dealing).

In short, Defendants claim to CDA immunity rests on hollow facts, a belated disclosure of testimony and legal theories, and a misunderstanding of the statute's scope. The Court should reject Defendants' request for immunity.

## IV.   CONCLUSION

Defendants entered a binding Settlement Agreement promising not to disparage Dr. Biles or publish confidential information. In doing so, they waived any First Amendment rights to the contrary. Then they broke that promise — apparently exercising a "moral" judgment to further attack Dr. Biles' reputation. The Court has already decided that the confidentiality clause is enforceable and that Dr. Biles is entitled to liquidated damages. Defendants failed to raise any First Amendment, due process, or statutory defenses in response to Plaintiff's earlier motion for summary judgment or in their first motion for reconsideration. Accordingly, Plaintiff respectfully requests that the Court deny this Motion, allow its previous order and entry of judgment to stand, and grant Plaintiff pending motion for partial summary judgment.

Dated this 28th day of August, 2020.

/s/ Sarah A. Kellogg
R. Daniel Fleck (WSB # 6-2668)
M. Kristeen Hand (WSB # 6-3544)
Sarah A. Kellogg (WSB # 7-5355)
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
(307) 733-7290
(307) 733-5248 (Fax)
fleck@spencelawyers.com
hand@spencelawyers.com
kellogg@spencelawyers.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of August, 2020 I electronically filed the foregoing Response in Opposition to Defendants' Motion for Partial Summary Judgment (ECF # 113) with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following addresses:

    Adam H. Owens
    Gregory G. Costanza
    Granite Peak Law LLC
    201 W. Madison Ave., Ste. 450
    Belgrade, MT 59714
    adam@granitepeaklaw.com
    gregory@granitepeaklaw.com

    *Attorneys for Defendants MedPort, LLC & John H. Schneider*

    /s/ Sarah A. Kellogg_____
    R. Daniel Fleck (WSB # 6-2668)
    M. Kristeen Hand (WSB # 6-3544)
    Sarah A. Kellogg (WSB # 7-5355)
    THE SPENCE LAW FIRM, LLC
    15 South Jackson Street
    P.O. Box 548
    Jackson, WY 83001
    (307) 733-7290
    (307) 733-5248 (Fax)
    fleck@spencelawyers.com
    hand@spencelawyers.com
    kellogg@spencelawyers.com