**FILED**



*2:18 pm, 9/10/20*

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

JIMMIE BILES, JR., MD,

          Plaintiff,

vs.

JOHN H. SCHNEIDER and MEDPORT,
LLC,

          Defendants.

Case No.  19-CV-48-F

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND TO ALTER OR AMEND JUDGMENT (Docs. 98, 109 and 113)

---

This matter comes before the Court on three motions:  Defendant MedPort's motion for summary judgment and to alter or amend judgment, CM/ECF Document [Doc.] 98; Plaintiff Biles' motion for partial summary judgment filed August 6, 2020, Doc. 109; and Defendants Schneider and MedPort's motion for summary judgment filed August 14, 2020, Doc. 113. The Court heard oral argument on the motions on September 8, 2020. For the reasons that follow, the Court denies Defendants' motions and grants Plaintiff's motion.

### BACKGROUND

The Court assumes the parties' familiarity with the pertinent facts of this case but shall recite them here briefly. Approximately eight years ago, this Court entertained a set of cases titled *Biles v. Schneider*, No. 2:11-cv-00366-NDF ("Biles v. Schneider I") and *Biles v. Fallon*, No. 2:11-cv-00294-NDF. Both cases featured allegations that Defendant

John Schneider and his wife, Michelle Schneider, had conspired with Lisa Fallon to defame Dr. Jimmie Biles. Biles claimed those defendants paid Fallon to mail defamatory fliers to 14,239 homes across northern Wyoming. (Biles v. Schneider I, Doc. 1); (Biles v. Fallon, Doc. 1).

Plaintiff Jimmie Biles and Defendant John H. Schneider, along with Michelle Schneider and Lisa Fallon, and the parties' associated entities Northern Rockies NeuroSpine, P.C. and Schneider Limited Partnership eventually settled these matters in 2012. As relevant here, that Settlement Agreement provided that all parties agreed "not to disparage each other personally or professionally" and "to kee[p] all matters not currently in the public record ... confidential." (Doc. 74-1, at 4, 5). Alleged violations of the Settlement Agreement form the basis for this suit.

According to Biles, Schneider and/or Medport, a now-defunct LLC of which Schneider is the sole owner and member, have posted defamatory interviews ("Bonner Stinson Interviews") and other content on the internet in violation of the Settlement Agreement. (Doc. 1). Based on these events, on March 8, 2019, Biles filed suit in this Court for breach of contract, intentional infliction of emotional distress, and joint enterprise. (Id.).[1]

Pursuant to its June 18, 2020 Order Granting Plaintiff's Motion for Partial Summary Judgment and Granting Request for Preliminary Injunction (Doc. 92, the "June 18 Order"),

---

[1] Originally, in addition to suing Schneider and Medport, Plaintiff also named Michelle Schneider as a defendant.  Plaintiff voluntarily dismissed his claims against Ms. Schneider without prejudice. Doc. 40.  Upon a favorable ruling on his motion, Plaintiff "anticipates voluntarily dismissing any further claims for damages."  Doc. 109 at 2.

the Court granted partial summary judgment in favor of Plaintiff on his claim that Defendant Schneider violated the confidentiality clause of the Settlement Agreement. Accordingly, the Court awarded liquidated damages to Plaintiff Biles against Defendant Schneider, as contemplated by the confidentiality clause. Further, the Court ordered a permanent injunction prohibiting both Defendants "from posting, publicizing, or disseminating information about Plaintiff not in the public record, including the Bonner Stinson Interviews, information contained in the Bonner Stinson Interviews, or materials quoting or referencing the Bonner Stinson Interviews." (June 18 Order, at 18).

A.    **Defendant Medport's Motion for Summary Judgment and to Amend or Alter Judgment (Doc. 98)**

Medport moves the Court for summary judgment in its favor on Plaintiff's claims for breach of the Settlement Agreement, including to alter or amend the June 18 Order, because, according to Medport, "Medport was not a signatory to the settlement agreement signed by the Parties, does not have privity to the settlement agreement, and is not bound to the agreement as a third-party beneficiary."[2] (Doc. 98, at 1-2). On this basis, Medport requests either summary judgment in its favor or to be dismissed as a party to this suit.[3]

---

[2] Medport seeks relief from the Court's issuance of a permanent injunction on Medport in spite of the fact that Medport is apparently a legally and operationally defunct corporation, having formally dissolved on June 19, 2020. (Doc. 98-2). At the hearing, Plaintiff's counsel indicated uncertainty regarding Medport's current corporate status, as it has apparently sought reinstatement. Defendants' counsel did not address this issue.

[3] The Court construes Defendant Medport's motion as one for summary judgment and to alter the prior summary judgment order, although Medport also seeks to be dismissed as a party to this suit. (Doc. 98, at 1).

Alternatively, Medport asserts the Settlement Agreement is unenforceable as a matter of law because it is a "perpetual obligation" or an "executory contract."

Plaintiff's Response maintains that the Court's prior order granting partial summary judgment was proper, and that Medport is not entitled to summary judgment because Medport is bound to the Settlement Agreement as a "representative," "agent," "affiliate," "successor," or "surrogate" of Schneider. Moreover, Plaintiff contends there are no circumstances warranting reconsideration of the June 18 Order.

**B.**    **Defendants' Joint Motion for Summary Judgment (Doc. 113)**

Medport filed a second motion for summary judgment jointly with Schneider, with counsel for Medport filing as the "limited scope attorney for Defendant Schneider." (Doc. 113 at 21).  In this motion, Medport and Schneider argue the Settlement Agreement's confidentiality and non-disparagement clauses are unenforceable because they violate Schneider's First Amendment rights and the Communications Decency Act.  Defendants also argue they are not liable for breach of the non-disparagement clause because that clause is an agreement "not to repeat similar defamatory statements about" Biles as were the subject of Biles' previous claims of defamation. Defendants contend "the Bonner-Stinson Interviews that w[ere] later published by Schneider on Healthcare-Malpractice.com did not contain these defamatory statements." Defendants also filed a reply (doc. 116) reiterating the arguments of their motion.  Defendants waived their oral argument in support of this motion, and the Court accepted the reply.

C.     **Plaintiff's Motion for Partial Summary Judgment (Doc. 109)**

Plaintiff's Motion for Partial Summary Judgment seeks a judgment holding MedPort jointly liable for the Court's award of liquidated damages against Defendant Schneider. Plaintiff also requests the Court find Defendant Schneider liable for violating the non-disparagement clause of the Settlement Agreement, which provided:

> The parties agree not to disparage each other personally or professionally or to use surrogates or other entities to do the same. The Settlement Agreement fully ends their dispute and puts this matter behind them.

(Doc. 71, at ¶ 6). Plaintiff further requests that the Court permanently enjoin Schneider from further violations of the non-disparagement clause. At the hearing, Plaintiff explained that he does not seek to enjoin Medport regarding the non-disparagement clause only because it is Plaintiff's understanding that Medport is a dissolved entity and as such cannot act except to the extent necessary for winding up its dissolution.

### STANDARD OF REVIEW

A.     **Motion for Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), summary judgment is warranted if the pleadings and admissible evidence produced during discovery, together with any affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *W. Diversified Serv., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.*

The non-moving party is entitled to all reasonable inferences from the factual record, which is viewed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, to defeat summary judgment, a nonmovant must support the claim with more than conjecture and speculation. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006). The burden of persuasion rests squarely on the moving party. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002).

At the summary judgment stage, the Court's function is "not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* Thus, while there is no requirement that the trial judge make findings of fact, summary judgment may be granted if the evidence is "merely colorable" or is not "significantly probative." *Anderson*, 477 U.S. at 250.

## B.     Motion to Alter or Amend Judgment

Medport moves the Court to alter or amend its prior summary judgment order and entry of judgment (Docs. 92, 93) under Federal Rules of Civil Procedure 52(b) and 59(b). Under Rule 52(b), on motion by a party, the Court may amend a prior judgment upon making amended or additional findings. FED. R. CIV. P. 52(b). Under Rule 59(e), the Court is also permitted to alter or amend a prior judgment "if the court in the original judgment has failed to give relief on a certain claim on which it has found that the party is entitled to relief." 11 Wright, Miller & Kane, FED. PRAC. & PROC. CIV. § 2810.1 (3d ed.). Under Rule

59(e), the movant carries the burden of demonstrating that the Court should alter or amend a judgment. *See, e.g., Beaty v. Kansas Athletics, Inc.,* -- F. Supp. 3d --, 2020 WL 1862562, at *5 (D. Kan. April 14, 2020). Rule 59(e) relief is appropriate if there is new controlling law, new evidence not available previously, or a "need to correct clear error or prevent manifest injustice." *Ankeney v. Zavaras,* 524 F. App'x 454, 458 (10th Cir. 2013) (quoting *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000)). Rule 59(e) does not permit a losing party to "revisit issues already addressed or advance argument that could have been raised in prior briefing." *Servants of the Paraclete,* 204 F.3d at 1012.

As used in both Rules 52(b) and 59(e), "judgment" refers to "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Generally, an order is an appealable, final decision if it "is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs,* 571 U.S. 177, 183 (2014) (internal citation and quotation marks omitted). Therefore, an order that resolves fewer than all claims—such as the June 18 Order—does not convey a basis to bring motions under Rules 52(b) or 59(e).

Although Medport does not raise Rule 54(b) as a basis for its motion, Rule 54(b) would authorize the Court to consider whether to amend a prior interlocutory order. Rule 54(b) provides in part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b). "The Tenth Circuit has not cabined district courts' discretion beyond what Rule 54(b) provides: '[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.'" *Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1024 (D.N.M. 2019) (quoting *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). However, the decision to review or amend an interlocutory order pursuant to Rule 54(b) is strictly under the discretion of the district court judge. *See Elephant Butte Irr. Dist. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008) (noting "every order short of a final decree is subject to reopening at the discretion of the district judge").

### DISCUSSION

Defendant filed two motions — both of which appear to discuss both the confidentiality and non-disparagement clauses, and neither of which clearly distinguishes between issues for reconsideration versus new issues. This presentation needlessly complicates the analysis. The Court will first address the arguments regarding the enforceability of the Settlement Agreement, the breach of the confidentiality clause, and liquidated damages thereon. The Court will then address the parties' arguments regarding the non-disparagement clause.

The Court turns first to Medport's contention that it is entitled to summary judgment because the Settlement Agreement was not binding on Medport. This argument has two components. First, Medport asserts the Settlement Agreement is void or voidable because of its perpetual duration. Second, Medport asserts it was not a signatory to the Settlement Agreement and that, at the time of execution of the Settlement Agreement, Defendant Schneider did not have authority to bind Medport to the terms of the Agreement.

8

A.   <u>Whether the Settlement Agreement is Void as a "Perpetual Contract" or Executory Contract (Doc. 98)</u>

Medport argues the Wyoming Supreme Court has "found that contracts of perpetual duration are void and unenforceable," citing three cases. *See Jewell v. N. Big Horn Hosp. Dist.*, 953 P.2d 135, 138 (Wyo. 1998); *Mariano & Assoc., P.C. v. Bd. of Cty. Comm'rs*, 737 P.2d 323 (Wyo. 1987); *Police Protective Ass'n of Casper v. City of Casper*, 575 P.2d 1146, 1149 (Wyo. 1978).  As a preliminary issue, the Court rejected this argument in its June 18 Order.  Doc. 92 at 18, n.10.  Medport does not show any proper grounds for reconsideration.  But even treating the argument as if it were new and timely, Medport's cited cases lend no support to its position.  All three discussed the ability of governmental entities to contract in perpetuity and do not apply to the enforcement of contracts among private parties.

Medport identifies no applicable law to demonstrate that contracts outside the governmental context are subject to the same restrictions, nor can the Court locate any such instruction from Wyoming courts.  Rather, the clear intent of the parties in entering the Settlement Agreement was to "pu[t] this matter behind them" with the understanding that each party would permanently forbear from disparaging the other and from disclosing the contents of that agreement.  This contract does not violate any clearly established public policies regarding contract duration, and the Court shall give effect to the parties' intent. The Court will not reconsider the June 18 Order on this issue, and Medport is not entitled to summary judgment.

**B.**   <u>Whether the Settlement Agreement is Binding on Medport, LLC</u>

Medport asserts it is entitled to summary judgment because it was not a signatory to the Settlement Agreement and therefore is not bound by it.  Although it is undisputed that Medport was not a signatory to the Settlement Agreement, Plaintiff submits that Medport is bound as Schneider's "affiliate." Indeed, the Agreement states:

> The Settlement Agreement shall be binding upon and shall inure to the benefit of the respective representatives, wards, agents, owners, directors, officers, employees, servants, affiliates, successors, and assigns of the parties hereto.

(Doc. 74-1, at 6 ¶ 12). The Merriam Webster Dictionary defines "affiliate" as someone or something "closely associated with another typically in a dependent or subordinate position." MERRIAM-WEBSTER.COM,   https://www.merriam-webster.com/dictionary (definitions of affiliate and affiliated, last accessed September 9, 2020).

In addition, Plaintiff maintains that the Settlement Agreement is binding on Medport to the extent that Schneider has used Medport as a surrogate entity to accomplish the alleged violations. The Agreement states:

> The parties agree not to disparage each other personally or professionally or to use surrogates or other entities to do the same. This Settlement Agreement fully ends their dispute and puts this matter behind them.

(Doc. 74-1, at 5 ¶ 6).

Finally, in the alternative, Plaintiff contends Schneider possessed actual authority, either express or implied, to directly bind Medport to the Settlement Agreement in 2012, or at the latest by 2018.

The Court finds no dispute of fact as to Medport's affiliation with Schneider. Plaintiff's exhibits demonstrate that Schneider had significant involvement with Medport since its inception. Medport was formed on May 1, 2012, one week before the Settlement Agreement was executed, when Michael D. Greear filed its Articles of Organization naming Schneider's sister, Kathleen Burrows, as manager. (Doc. 103-1) (Pl. Ex. A). Medport was funded with a $5,000,000.00 loan from Schneider's personal and family partnership, Schneider Limited Partnership. (Docs. 103-2, 103-3) (Pl. Exs. B, C). While Medport's Articles of Organization state its purpose was to engage in "all lawful business," Medport's primary business was investing in, developing, and providing intellectual support for healthcare products and services. In 2012, Schneider was a "medical litigation consultant" aiding Medport in this mission. (Doc. 103-6, at 2) (Pl. Ex. F). (Pl. Ex. B). Plaintiff's exhibits demonstrate that in 2013, Schneider was also a board member in Medport (Doc. 103-7) (Pl. Ex. G) and in 2014, Schneider was a paid employee of Medport. (Doc. 103-8) (Pl. Ex. H). Finally, on July 5, 2018, Schneider became Medport's sole member. (Doc. 83-1).

Schneider's significant involvement with Medport at its inception tends to contravene his position that he had "no means of control" over Medport at the time he entered the Settlement Agreement. *See, e.g., Broderick v. Dairyland Ins. Co.*, 270 P.3d 684, 691 (Wyo. 2012) (implied authority). However, Schneider maintains there is no genuine dispute that he had no authority at that time to bind Medport to the Settlement Agreement. Schneider submits his affidavit in support of that contention. (Doc. 98-2) (Def. Ex. B). Plaintiff, however, offers a competing affidavit on this point from Ms. Burrows,

who attests to her understanding that Schneider did indeed possess authority to bind Medport to any agreements at the time, and her understanding that one purpose of the Settlement Agreement was to ensure Schneider did not continue to disparage Plaintiff through any alias entities, including Medport. (Doc. 103-9) (Pl. Ex. I). Plaintiff also offers documents showing that Burrows attended the May 1, 2012 Schneider LP meeting in her capacity as Medport's manager, at which the parties discussed funding Schneider's settlement with Biles.

The Court need not and does not reach the question of whether Schneider had authority to bind Medport to the Settlement Agreement in 2012. It is not genuinely disputed that Medport became bound by the terms of the Settlement Agreement as Schneider's "surrogate" or "affiliate" at the latest when the disparaging posts about Biles appeared on healthcare-malpractice.com in 2019. In 2018, Schneider became the sole shareholder and officer of Medport. Moreover, the 2018 Operating Agreement specifically states "[a]ll third parties may rely on a document executed by the director or duly appointed officer as binding on the Company." This language, in tandem with the language of the 2012 Settlement Agreement binding affiliates and surrogates, clearly caused Medport to be bound at the latest when Schneider became the sole shareholder and officer in 2018.

Medport's attempt to avoid liability on the basis that it had no ownership interest in healthcare-malpractice.com at the time of the disputed conduct is also unavailing. Although Schneider states in his affidavit that he owned the website at the time of the alleged incidents, he attaches Medport's Articles of Dissolution to his affidavit. The Articles of Dissolution indicate that Medport did not transfer ownership of the site to Schneider until

June 19, 2020. (Doc. 98-2, at 7) (Def. Ex. B). If anything, Defendant's proffer of this exhibit demonstrates there is no genuine dispute that Medport did own healthcare-malpractice.com at the time of the events at issue in this suit.

In short, the Court rejects Medport's motion for summary judgment in its favor and grants Plaintiff's motion for summary judgment.  Medport is jointly liable with Schneider on the breach of confidentiality clause and the liquidated damages thereon.

## C.   Defendants' Arguments Regarding the Confidentiality Clause, Liquidated Damages, and Request to Stay the June 18 Order for Further Discovery

Defendants argue several additional theories for why neither of them should be liable for breach of the confidentiality clause.  Medport presents some of these arguments under Federal Rules of Civil Procedure 52(b) and 59(e) for alteration or amendment of the Court's June 18 Order and judgment thereon. (Docs. 92, 93).  Other arguments are only raised in Defendants' second motion (Doc. 113) for summary judgment.  But as discussed above, the June 18 Order is interlocutory and therefore does not support a motion under Rules 52(b) or 59(e). Nor do Defendants show proper grounds for reconsideration more generally.  There is no newly available evidence, no intervening change of law, no clear error or manifest injustice.  All of Defendants' arguments, to the extent they have merit, were available to Defendants when they responded to Plaintiff's first partial motion for summary judgment.  On this basis, the Court denies Defendants' motions regarding the confidentiality clause, the breach thereof, the liquidated damages awarded thereon, and the permanent injunctive relief entered.

Medport nonetheless requests a stay of the Court's judgment awarding liquidated damages against Defendant Schneider until discovery is completed.  To this end, Medport offers an affidavit under Federal Rule of Civil Procedure 56(d) from Medport's attorney, Gregory Costanza, stating there is a genuine dispute whether the Settlement Agreement's liquidated damages clause is an accurate pre-estimate of loss and enforceable. At the hearing, Defendants' counsel further argued that they received only objections to a set of their discovery requests, and they intend to confer and potentially file a motion to compel.

Defendant's request suffers from several issues.  First, as to reconsideration of the Court's award of damages against Defendant Schneider, counsel for Medport did not enter a written appearance for Defendant Schneider to seek relief on his behalf. Generously, counsel's full representation[4] of Schneider began only upon the Court's instruction to Mr. Costanza at the July 20, 2020 status conference that he and his co-counsel had impliedly assumed that representation through his course of conduct. As the motion to amend was filed prior to that conference, counsel's ability to bring that motion on behalf of Schneider was precarious.

Second, Medport's request for further discovery is belated.  Medport now offers an affidavit to the effect that more discovery is necessary for *Schneider* to defend against summary judgment on liquidated damages.  It argues that at the time of briefing on the prior motion, counsel lacked sufficient information to show that the liquidated damages

---

[4] Counsel previously filed a supplement to Schneider's second amended answer in compliance with the professional rule requiring disclosure to the Court of counsel's limited-scope assistance in drafting that pleading. (Doc. 75).  As that document expressly states, such assistance and disclosure do not constitute representation of Schneider for any other purpose.

clause did not genuinely pre-estimate Biles' damages in the event of breach.  However, the safe harbor protection afforded by Rule 56(d) is an *alternative* to a response in opposition to summary judgment and is designed to safeguard against a premature or improvident grant of summary judgment.  10B Wright, Miller, & Kane, FEDERAL PRACTICE AND PROCEDURE § 2740 (4th ed.).  Following a thirty (30)-day extension of time in which to respond, Medport filed a joint response with Schneider rather than invoking the protections of Rule 56(d).  As the Court observed in its order on the matter:

> In short, the nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) and *Celotex [Corp. v. Catrett*, 477 U.S. 317 (1986)] or explain why it cannot pursuant to Rule 56(f) [now 56(d)]. *See* Fed. R. Civ. P. 56(e), (f). Otherwise, the nonmovant acts, or fails to act, at its peril. The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

Finding no good cause to reconsider its prior judgment, the Court will not exercise its discretion to alter or amend its prior judgment finding Schneider violated the confidentiality clause and awarding liquidated damages against Defendant Schneider; nor will the Court stay its order.

**D.    Plaintiff's Claim for Breach of Non-Disparagement Clause (Docs. 98, 109, 113)**

Plaintiff seeks summary judgment on its claim for breach of the non-disparagement clause against Schneider, and apparently against Medport to the extent Medport is seeking reinstatement as an entity.  (Doc. 109; September 8, 2020 hearing).  The non-disparagement clause provides: "The parties agree not to disparage each other personally or professionally or to use surrogates or other entities to do the same.  The Settlement Agreement fully ends

their dispute and puts this matter behind them." Plaintiff asserts there are no material facts in dispute that Schneider violated the non-disparagement clause in posting the Bonner-Stinson interviews on healthcare-malpractice.com.

Defendants contend the posted interviews did not contain "similar" disparagement of Biles as was at issue in the settled cases. But the non-disparagement clause expressly prohibits any disparagement of the other party, personally or professionally, as Defendants appear to recognize at times. (Doc. 113 at 2) ("Schneider agreed to not participate in the disclosure of untrue and inaccurate information about Biles"). It is not limited to disparagement that is similar to the disparagement alleged in the underlying cases. Nor have Defendants refuted that Schneider posted the Bonner-Stinson interviews on Medport's internet site, and that Medport maintained that post.

Defendants also provide no evidence that the Bonner-Stinson interviews were entirely free of disparaging statements regarding Plaintiff. As filed under seal in this case, these interviews consist of 60 pages of a paralegal's notes of witness interviews regarding Plaintiff for use in the 2011-12 action. The interviewed witnesses include Defendant Schneider, apparently for use in preparing counterclaims against Plaintiff. The interview materials also include a memo and correspondence relating to Plaintiff. Plaintiff filed the Bonner-Stinson interviews under seal in support of his first motion for summary judgment, and the Court found they contain information disparaging to Plaintiff. June 18 Order at 6. Defendants do not present any proper grounds for reconsidering that finding. At the September 8, 2020 hearing, Defendants' counsel represented that at least *some* of the interviews contain at least *some* statements regarding Plaintiff that were not disparaging.

But the question is not whether the interviews consist solely of disparagement. The salient question is instead whether they contain *any* disparaging statements regarding Plaintiff, and the answer to that question is decidedly yes. There are no material fact disputes regarding Plaintiff's claim that Schneider violated the non-disparagement clause in posting the Bonner-Stinson interviews.

Nonetheless, according to Defendants' joint motion for summary judgment (Doc. 113), the non-disparagement clause of the Settlement Agreement is unenforceable because it violates Schneider's First Amendment rights, due process rights under the Fifth Amendment, Wyoming public policy, and the Communications Decency Act.[5] The Court takes these arguments in turn.

As to Schneider's First Amendment rights, although Defendants attempt to recharacterize Plaintiff's claim as a tort claim (for which the First Amendment, if violated, could provide a defense to liability), it is nonetheless a contract claim between private parties. "[T]he Free Speech Clause prohibits only governmental abridgment of speech. The Free Speech Clause does not prohibit *private* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Even if Defendants had argued Biles should be considered a state actor in entering or seeking to enforce the Settlement Agreement, they present no facts to support such a contention under the governing caselaw. *Id.* Although the parties do not cite any Tenth Circuit authority on this point, the Court's enforcement of the non-disparagement clause does not appear to

---

[5] To the extent Defendants also seek to show the Confidentiality Clause is unenforceable, the Court considers that argument among Defendants' arguments for amending the prior judgment.

constitute such state action.  *See, e.g., Youngblood-West v. Aflac Inc.,* 796 F. App'x 985, 992 (11th Cir. 2019), *petition for cert. docketed* (enforcing nondisclosure clause in settlement agreement between private parties); *Democratic Nat'l Comm. v. Republican Nat'l Comm.,* 673 F.3d 192, 205 (3rd Cir. 2012) (enforcing consent decree in some cases can constitute state action for purposes of First Amendment challenge).

Moreover, even if there were state action for purposes of the First Amendment, as Plaintiff points out Schneider waived his free speech rights to the extent they were implicated in the Settlement Agreement.  A party's promise to restrict his speech is enforced like any other agreement under state law.  *Cohen v. Cowles Media Co.,* 501 U.S. 663, 671 (1991) ("[t]he parties themselves . . . determine the scope of their legal obligations, and any restrictions that may be placed on the publication of truthful information are self-imposed.").  Regardless of what standard of proof is required – a preponderance or clear and convincing – as long as the waiver of a constitutional right is knowing, voluntary and intelligent, it is enforceable.  *Leonard v. Clark,* 12 F.3d 885, 889 (9th Cir. 1993), as amended (Mar. 8, 1994) (citing *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 187 (1972)); *Erie Telecomms., Inc. v. City of Erie,* 853 F.2d 1084, 1096 (3rd Cir. 1988) (enforcing contractual waiver of the right to challenge a franchise agreement).  It appears the Tenth Circuit has not yet addressed the waiver of free speech rights in a contractual context.  The court has narrowly construed a plaintiff's waiver in filing a suit alleging injury to First Amendment right.  *Grandbouche v. Clancy,* 825 F.2d 1463, 1467 (10th Cir. 1987).

There is no material fact dispute that Schneider signed the Settlement Agreement restricting his speech regarding Biles and that he did so after being advised by counsel. By signing the agreement, Schneider represented that

> the terms of the Settlement Agreement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final accord and satisfaction and compromise of any and all claims, disputed or otherwise, ... arising out of said controversies, disputes, differences and claims... and that each of [the parties] shall sign and execute the same as its own free act and deed.

Settlement Agreement ¶ 7 (Doc. 15-1). Schneider's counsel signed the agreement as well. Schneider does not present any evidence that would raise a material fact dispute that the Settlement Agreement – including the non-disparagement clause – was a knowing, voluntary and intelligent waiver of his free speech rights regarding Biles. Schneider argues that he was unaware of the Bonner-Stinson interviews when he signed the agreement, but the agreement is not limited to only the disparaging statements of which Schneider was aware at the time. Narrowly construing the non-disparagement clause, Schneider unambiguously promised to not disparage Plaintiff personally or professionally going forward.

Nor have Defendants shown the non-disparagement clause violated due process under the Fifth Amendment. The Fifth Amendment protects against the deprivation of "life, liberty or property, without due process of law." Defendants argue the enforcement of the non-disparagement clause eight years after the Settlement Agreement was "fully performed" and "without any language confirming its survivability, and without any action

over the past 8 years by Plaintiff to confirm their belief in the survivability of rights under the Settlement Agreement" is vague and did not give Defendants fair notice of the claims.

Defendants do not explain how they have been deprived of life, liberty or property in violation of the Fifth Amendment.  They cite no legal authority applying constitutional due process rights to a settlement agreement between private parties.  Their argument is actually one of contract law – that the Settlement Agreement is ambiguous regarding its duration.  This, at best, rehashes Defendants' argument that they did not agree to the Settlement Agreement's perpetual duration. In the June 18 Order, the Court rejected the argument that the Settlement Agreement was ambiguous whether the non-disparagement clause survived execution of the contract.  June 18 Order at 18, n.10.

Defendants do not show any proper grounds for reconsideration of that issue, and even if they had, the Settlement Agreement is not ambiguous regarding the duration of the non-disparagement clause.  The paragraph states it "fully ends their dispute and puts this matter behind them."  The next paragraph expressly provides that each party entered it "for the express purpose of precluding forever any further or additional claims arising out of said controversies, disputes, differences and claims." Settlement Agreement ¶ 7.  Although Schneider submits a declaration regarding what he now describes as his intentions and understandings of the Settlement Agreement at the time he entered it (doc. 113-1), this does not raise any material fact disputes.  The Court is to construe the Settlement Agreement according to its unambiguous language without considering such extrinsic evidence. *See, e.g., Jones v. Castellucci*, 618 F. App'x 374, 378 (10th Cir. 2015); *Hopkins v. Bank of the*

*West,* 2013 WY 129, ¶¶ 18-19, 311 P.3d 151, 156–57 (Wyo. 2013).  In short, Defendants' due process argument fails.

Likewise, Defendants do not show the non-disparagement clause is void as against Wyoming public policy.  The public policy they identify is the state's "concern in the fitness of professionals to hold the public trust that a professional license bestows," citing grounds that can disqualify a physician from being licensed in W.S. § 33-26-402. Defendants conclude that this state interest makes the non-disparagement clause unenforceable because the Bonner-Stinson interviews contain information that is relevant to the licensing requirements.

Defendants' argument is not persuasive.  As Plaintiff points out, one of the sister provisions of § 33-26-402 protects the privacy and reputation of physicians, unless and until there is a final order of the board. W.S. § 33-26-408(c).  The board can also make its final orders non-public.  Investigative notes, attorney's notes, witness statements and correspondence are among the types of materials that the statute expressly provides are not public documents, cannot be disclosed by the board, and are not even subject to discovery except in narrow circumstances. *Id.* § 33-26-408(f).  The non-disparagement clause does not violate the public policy embodied in Wyoming's licensing statutes or the public's interest more generally in the professionalism of physicians.

Finally, the Communications Decency Act, 47 U.S.C. § 230, is an affirmative defense that had to be pled. Fed. R. Civ. P. 8(c).  Plaintiff correctly points out that Defendants did not plead this affirmative defense and cannot wait until a summary judgment motion to raise it.  Defendants argued their affirmative defense no. 9 – that third

parties may be responsible for Plaintiff's alleged injuries – was sufficient to raise this defense, but this generic affirmative defense does not give fair notice to Plaintiff that either Defendant intended to rely on a statutory privilege.   The Court accordingly does not consider the Communications Decency Act argument.[6]

Plaintiff seeks a permanent injunction prohibiting Schneider (and to the extent Medport is seeking and obtains reinstatement as an active entity, also Medport) from further violating the non-disparagement clause.  As the Court noted in the June 18 Order,

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test
> before a court may grant such relief. A plaintiff must demonstrate: (1) that
> [he] has suffered an irreparable injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to compensate for that injury; 3)
> that, considering the balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4) that the public interest
> would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

For the same reasons the Court found Plaintiff met the standard with respect to the breach of confidentiality clause in the June 18 Order, so Plaintiff has shown irreparable injury, remedies at law are inadequate to compensate that injury, the balance of hardships lies in favor of enjoining Schneider (and to the extent Medport resumes corporate existence, also Medport) from further violating the non-disparagement clause, and the public interest will not be disserved by same.  There is no public interest in allowing

---

[6] At the hearing, Defendants also raised for the first time W.S. §§ 1-29-104 and 1-29-105 as privileging their conduct at issue.  Defendants waived this argument by failing to brief it. Even if it had been briefed, privilege is an affirmative defense that must be pled.  Defendants did not plead these statutes as affirmative defenses.  The Court therefore does not consider this argument.

Schneider to evade his promise to not disparage Biles.  Biles and Schneider entered the Settlement Agreement to put their disputes behind them.  As Defendants point out, the former disputes between Biles and Schneider, were already well-publicized.[7]  Medport is equally subject to the non-disparagement clause as it is to the confidentiality clause.

Enjoining Schneider (and Medport, to the extent it resumes corporate existence) from further violating the non-disparagement clause will have no effect on the public's interest in knowing whether physicians have committed malpractice, are otherwise unfit for the practice of medicine, or whether there are disputes regarding the same.  This interest is already served by other means.  Most notably, the procedures and authority established for state licensing apply to Biles as a physician, and the State Board of Medicine appears fully able to carry out its duties without Schneider's (or Medport's) input regarding Plaintiff.[8]  Defendants have presented no evidence that if Plaintiff's employers or patients wish for more information regarding his compliance with licensing requirements, or the quality of his medical services, they would be unable to adequately investigate for themselves without Defendants' input.

---

[7] Defendants cite to four Wyoming news articles on the internet relating to the parties' former disputes and to a bankruptcy trustee's accusation that Schneider engaged in bankruptcy fraud. Doc. 113 at 2, nn. 1-4.  Defendants request the Court take judicial notice of these articles apparently in support of Schneider's First Amendment argument.  Plaintiff does not appear to address this request.  Federal Rule of Evidence 201 permits judicial notice of facts that are not subject to reasonable dispute because they are generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  The Court takes judicial notice only that the four articles are available online and makes no finding as to the truth or accuracy of the articles' contents.

[8] At the hearing, Defendants' counsel referred to the filing of the Bonner-Stinson interviews in a Board of Medicine proceeding.  However, Defendants present no evidence regarding the proceeding.  Nor do Defendants present evidence that the Board of Medicine has any future need of Defendants' statements regarding Plaintiff in its duties.

In sum, the non-disparagement clause is enforceable, there is no material fact dispute that Schneider and Medport violated it, and that he (and Medport) should be permanently enjoined from further violations of that clause.

<u>CONCLUSION</u>

For each of the reasons stated above, IT IS ORDERED THAT Defendant Medport's motion for summary judgment and to amend or alter judgment (Doc. 98) is DENIED.

IT IS FURTHER ORDERED THAT Defendants' second motion for summary judgment (Doc. 113) is DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's Second Motion for Partial Summary Judgment is GRANTED. The Clerk's office shall enter an amended judgment to join Medport in the judgment entered against Mr. Schneider for liquidated damages (Doc. 93).

IT IS FURTHER ORDERED THAT Defendant Schneider (and Medport, to the extent it resumes corporate existence) are enjoined from disparaging Plaintiff Mr. Biles in any public forum (including the internet, newspaper, radio, or mail) or from using surrogates to do the same.

Dated this _10th_ day of September, 2020.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE